1
2
3
4
5
6

**McGUIREWOODS LLP**
DAVID C. POWELL SBN #129781
dpowell@mcguirewoods.com
ALICIA A. BAIARDO SBN #254228
abaiardo@mcguirewoods.com
ANTHONY Q. LE SBN #300660
ale@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA  94111-3821
Telephone:  415.844.9944
Facsimile:  415.844.9922

7
8

Attorneys for Defendants
Wells Fargo & Company and Wells Fargo Bank, N.A.

9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17
18
19
20
21
22
23

THOMAS W. MCNAMARA, as
the Court-Appointed Receiver for
Triangle Media Corporation,
Apex Capital Group, LLC; and
their successors, assigns,
affiliates, and subsidiaries,

        Plaintiff,

    vs.

WELLS FARGO & COMPANY,
a corporation, WELLS FARGO
BANK, N.A., a national banking
association,

        Defendants.

CASE NO. 3:21-cv-01245-LAB-LL

The Hon. Larry A. Burns

Complaint Filed: July 8, 2021

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
WELLS FARGO'S MOTION TO
DISMISS COMPLAINT**

*[Filed concurrently with Notice of Motion
to Dismiss; Request for Judicial Notice]*

Hearing Date: N/A per July 30, 2021
Order [Dkt. 12]

24
25
26
27
28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL ALLEGATIONS ......................................................................... 2

    A. The Underlying Scheme Perpetrated by the Non-Party Bad Actors. .......................................................................................... 2

    B. Wells Fargo's Alleged Involvement and Plaintiff's Claims. ................. 3

III. LEGAL STANDARD .................................................................................. 4

IV. ARGUMENT ............................................................................................. 5

    A. Plaintiff Cannot Maintain Any Aiding and Abetting Claims Against Wells Fargo ............................................................................. 5

        (1) Plaintiff's Aiding and Abetting Fraud Claim Fails. .................. 6

            i. Wells Fargo Had No Actual Knowledge of Fraud ........... 7

            ii. Wells Fargo Did Not Provide Substantial Assistance ..... 10

        (2) No Aiding and Abetting a Breach of Fiduciary Duty. .............. 11

        (3) No Aiding and Abetting Conversion. ....................................... 12

        (4) No Aiding and Abetting Fraudulent Transfer/Voidable Transaction ............................................................................... 12

    B. There Is No "Conspiracy to Commit Fraud" Because There Was No Agreement Between Wells Fargo and the Bad Actors ................. 13

    C. Plaintiff Cannot Identify Any Breach of Fiduciary Duty ................... 14

    D. Plaintiff's Two Alternative Negligence Claims Must Be Dismissed ........................................................................................ 15

    E. Plaintiff Fails to Identify Any Violation of California Penal Code § 496 ................................................................................................ 17

    F. Plaintiff Fails to State a Claim for Violation of the UCL ................... 18

        (1) Plaintiff's Bootstrapped UCL Claim Fails for The Same Reasons His Underlying Claims Fail. ........................................ 18

        (2) Plaintiff's UCL Claim Must Be Dismissed Because He Has Otherwise Has an Adequate Remedy at Law. ................... 18

        (3) Plaintiff Lacks Standing to Maintain a UCL Claim. ............... 20

        (4) No Extra-Territorial Application of UCL. ............................... 21

    G. Plaintiff's Unjust Enrichment Claim Must Be Dismissed ................. 22

# TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| (1) | Unjust Enrichment is not a Stand-Alone Claim. | 22 |
| (2) | Plaintiff Has Not Alleged the Non-Existence of a Contract. | 23 |
| (3) | The Complaint Does Not Allege Wells Fargo Was Unjustly Enriched. | 24 |
| H. | Plaintiff's Accounting Claim Must Be Dismissed. | 24 |
| V. | CONCLUSION | 25 |

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*In re 3com Sec. Litig.*,
   761 F.Supp. 1411 (N.D. Cal. 1990) .................................................................. 14

*A.B. Concrete Coating, Inc. v. Wells Fargo Bank, N.A.*,
   491 F. Supp. 3d 727 (E.D. Cal. 2020) ............................................................. 14

*In re Agape Litig.*,
   773 F. Supp. 2d 298 (E.D.N.Y. 2011) ............................................................. 10

*Anderson v. Apple Inc.*,
   500 F. Supp. 3d 993 (N.D. Cal. 2020) ............................................................. 20

*Andreoli v. Youngevity Int'l, Inc.*,
   No. 16-CV-02922-BTM-JLB, 2018 WL 1470264 (S.D. Cal. Mar.
   23, 2018) ........................................................................................................... 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 4, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 4

*Bledsoe v. US Bancorp*,
   No. SACV 13-374-JST, 2013 WL 12129951 (C.D. Cal. June 12,
   2013) ................................................................................................................... 8

*Brock v. Concord Auto. Dealership LLC*,
   No. 14-CV-01889-HSG, 2016 WL 829074 (N.D. Cal. Mar. 3, 2016) ............... 5

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ........................................................................... 5

*In re Calif. Gasoline Spot Mkt. Antitrust Litig.*,
   No. 20-cv-03131-JSC, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ............. 19

*Chance World Trading E.C. v. Heritage Bank of Com.*,
   438 F. Supp. 2d 1081 (N.D. Cal. 2005), *aff'd*, 263 F. App'x 630 (9th
   Cir. 2008) ............................................................................................................ 5

*Chang v. Wells Fargo Bank, N.A.*,
  No. 19-CV-01973-HSG, 2020 WL 1694360 (N.D. Cal. Apr. 7,
  2020) ......................................................................................................... 6

*Clark v. Am. Honda Motor Co., Inc.*,
  No. 20-cv-03147-AB-MRWx, 2021 WL 1186338 (C.D. Cal. Mar.
  25, 2021) ................................................................................................... 19

*Cotton v. Wells Fargo Bank N.A.*,
  No. SA CV 10-01758-CJC (RNB), 2011 WL 13227816 (C.D. Cal.
  Feb. 22, 2011) ........................................................................................... 11

*Cty. of Santa Clara v. Astra USA, Inc.*,
  No. C 05-03740 WHA, 2006 WL 2193343 (N.D. Cal. Jul. 28, 2006) .............. 25

*Diaz v. Intuit, Inc.*,
  No. 5:15-CV-01778-EJD, 2018 WL 2215790 (N.D. Cal. May 15,
  2018) .................................................................................................. 6, 9, 12

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ....................................................................... 8

*Evans v. ZB, N.A.*,
  779 F. App'x 443 (9th Cir. 2019) ................................................................. 5

*Farias v. FCM Corp.*,
  No. 10cv260 L (CAB), 2010 WL 4806894 (S.D. Cal. Nov. 18,
  2010) ......................................................................................................... 25

*In re First All. Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ............................................................ 5, 11, 12

*Freeney v. Bank of Am. Corp.*,
  No. CV 15-2376-GB-PJWx, 2016 WL 5897773 (C.D. Cal. Aug. 4,
  2016) ......................................................................................................... 17

*Gerlinger v. Amazon.Com, Inc.*,
  311 F. Supp. 2d 838 (N.D. Cal. Mar. 23, 2004) .......................................... 23

*Gibson v. Jaguar Land Rover N. Am., LLC*,
  No. CV-20-00769-CJC, 2020 WL 5492990 (C.D. Cal. Sept. 9,
  2020) ......................................................................................................... 19

iv

*In re GSM Wireless, Inc.,*
    No. 2:12-ap-01350 RK, 2013 WL 4017123 (Bankr. C.D. Cal. Apr.
    5, 2013) ...................................................................................................24

*Haynish v. Bank of Am., N.A.,*
    284 F. Supp. 3d 1037 (N.D. Cal. 2018)................................................21

*Heredia v. Sunrise Senior Living LLC,*
    No. 8:18-cv-01974-JLS-JDE, 2021 WL 819159 (C.D. Cal. Feb. 10,
    2021) ......................................................................................................19

*Hongying Zhao v. JPMorgan Chase & Co.,*
    No. 17 CIV 8570 (NRB), 2019 WL 1173010 (S.D.N.Y. Mar. 13,
    2019), *appeal dismissed* (July 15, 2019) .............................................11

*Hueso v. Select Portfolio Servicing, Inc.,*
    No. 18-cv-01892-BAS-WVG, 2021 WL 1102452 (S.D. Cal. Mar.
    23, 2021) ................................................................................................25

*Impac Warehouse Lending Grp. v. Credit Suisse First Bos. Corp.,*
    No. SA CV 04-1234 AHS, 2006 WL 6935318 (C.D. Cal. June 20,
    2006), *aff'd sub nom. Impac Warehouse Lending Grp. v. Credit
    Suisse First Bos. LLC,* 270 F. App'x 570 (9th Cir. 2008)....................6

*Isaiah v. JPMorgan Chase Bank, N.A.,*
    No. 16-CIV-21771, 2017 WL 5514370 (S.D. Fla. Nov. 15, 2017),
    *aff'd sub nom. Isaiah v. JPMorgan Chase Bank,* 960 F.3d 1296
    (11th Cir. 2020) ....................................................................................10

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ................................................................5

*Khomich v. Bank of Am., N.A.,*
    No. CVI S-10-1866, 2011 WL 1087858, at *8-9 (E.D. Cal. Mar. 23,
    2011), *report and recommendation adopted* at 2011 WL 13371309
    (E.D. Cal. Sept. 6, 2011) ......................................................................24

*Litson-Gruenber v. JPMorgan Chase & Co.,*
    No. 7:09–CV–056–0, 2009 WL 4884426 (N.D. Tex. Dec. 16, 2009)................9

*Liu Yao-Yi v. Wilmington Tr. Co.,*
    301 F. Supp. 3d 403 (W.D.N.Y. 2017) ................................................10

*Lloyd v. Navy Fed. Credit Union*,
  No. 17-cv-1280-BAS-RBB, 2018 WL 1757609 (S.D. Cal. Apr. 12,
  2018) ................................................................................................. 23, 24

*Lopez v. Bank of Am., N.A.*,
  505 F. Supp. 3d 961 (N.D. Cal. 2020) .................................................. 24

*Lopez v. Washington Mut. Bank, F.A.*,
  No. 1:09-cv-1838-AWI-JLT, 2010 WL 1558938 (E.D. Cal. Apr. 19,
  2010) ........................................................................................................ 23

*Lorenz v. E. W. Bancorp, Inc.*,
  No. 2:15-CV-06336-CAS(FFMx), 2016 WL 199392 (C.D. Cal. Jan.
  14, 2016) ............................................................................................. 9, 10

*Lusk v. Kellogg*,
  No. SACV 11-00087 JVS (RNBx), 2011 WL 13225140, *4 (C.D.
  Cal. Aug. 10, 2011) ................................................................................. 6

*Luxul Tech. Inc. v. NextarLux, LLC*,
  No. 14-cv-03656-LHK, 2016 WL 3345464 (N.D. Cal. Jun. 16,
  2016) ........................................................................................................ 25

*In re MacBook Keyboard Litig.*,
  No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13,
  2020) ........................................................................................................ 19

*McFall v. Stacy & Witbeck, Inc.*,
  No. 14-CV-04150-JSC, 2016 WL 6248882 (N.D. Cal. Oct. 26,
  2016) ........................................................................................................ 11

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*,
  No. 12-4457 SC, 2013 WL 3357929 (N.D. Cal. July 3, 2013) .......................... 21

*In re Meridian Asset Mgmt., Inc.*,
  296 B.R. 243 (Bankr. N.D. Fla. 2003) ................................................. 11

*Merrit v. JP Morgan*,
  No. 17-CV-06101-LHK, 2018 WL 1933478 (N.D. Cal. Apr. 24,
  2018) ........................................................................................................ 25

*Mosier v. Stonefield Josephson, Inc.*,
  No. CV 11-2666 PSG (Ex), 2013 WL 4859635 (C.D. Cal. July 30,
  2013), *aff'd*, 815 F.3d 1161 (9th Cir. 2016) .......................................... 6

vi

*Mosier v. Stonefield Josephson, Inc.*,
   No. cv-11-2666-PSG-Ex, 2011 WL 5075551 (C.D. Cal. Oct. 25,
   2011) ................................................................................................ 20

*Moss v. Infinity Ins. Co.*,
   197 F. Supp. 3d 1191 (N.D. Cal. 2016) .......................................... 15

*Namer v. Bank of Am., N.A.*,
   No. 16-cv-3024 JM(WVG), 2017 WL 4391710, at *3 (S.D. Cal.
   Oct. 2, 2017) .................................................................................... 12

*Neilson v. Union Bank of California, N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........................................... 10

*Paskenta Band of Nomlaki Indians v. Crosby*,
   No. 15-CV-00538-MCE-CMK, 2016 WL 6094468 (E.D. Cal. Oct.
   19, 2016), *aff'd sub nom. Paskenta Band of Nomlaki Indians v.
   Associated Pension Consultants, Inc.*, 854 F. App'x 872 (9th Cir.
   2021) ................................................................................................ 16

*Paskenta Band of Nomlaki Indians v. Umpqua Bank*,
   846 F. App'x 589 (9th Cir. 2021) ........................................... 6, 7, 16

*Petersen v. Cty. of Stanislaus*,
   No. 1:12-CV-00933-AWI, 2012 WL 4863800 (E.D. Cal. Oct. 12,
   2012) ................................................................................................ 16

*Pour v. Wells Fargo Bank*,
   No. 20-cv-02447 SBA, 2021 WL 1134419, at *7 (N.D. Cal. Feb. 22,
   2021) ................................................................................................ 25

*River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*,
   287 F. Supp. 2d 1213 (S.D. Cal. 2003) ............................................. 9

*Sanders v. America's Wholesale Lender*,
   No. ED CV 16-2597-DOC, 2017 WL 8181263 (C.D. Cal. Feb. 24,
   2017) ................................................................................................ 18

*Simi Mgmt. Corp. v. Bank of Am., N.A.*,
   930 F. Supp. 2d 1082 (N.D. Cal. 2013) ........................................... 14

*Solano v. America's Servicing Co.*,
   No. 2:100-cv-02426-GEB-GGH, 2011 WL 1669735 (E.D. Cal. May
   3, 2011) ............................................................................................ 23

WELLS FARGO'S MOTION TO DISMISS COMPLAINT

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .................................................................. 18, 19, 20

*Sotelo v. Rawlings Sporting Goods Co.*,
    No. CV 18-9166-GW(MAAx), 2019 WL 4392528 (C.D. Cal. May
    8, 2019) ........................................................................................................ 22

*Sub Corp., Ltd. v. Best Buy Co., Inc.*,
    No. CV-07-5822(CTx), 2008 WL 11451196 (C.D. Cal. Aug. 5,
    2008), *aff'd*, 365 F. App'x 767 (9th Cir. 2010) ........................................ 18

*Thieme v. Cobb*,
    No. 13-CV-03827-MEJ, 2016 WL 3648531 (N.D. Cal. July 8, 2016) ............. 20

*Uecker v. Wells Fargo Cap. Fin., LLC (In re Mortg. Fund '08 LLC)*,
    527 B.R. 351 (N.D. Cal. 2015) .............................................................. 11, 12

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ...................................................... 21

*Warren v. Wells Fargo & Co.*,
    No. 3:16-cv-2872-CAB (NLS), 2017 WL 4876212 (S.D. Cal. Oct.
    27, 2017) ........................................................................................................ 25

*Wasco Prods., Inc. v. Southwall Tech., Inc.*,
    435 F.3d 989 (9th Cir. 2006) .................................................................... 14

*Wise v. Wells Fargo Bank, N.A.*,
    850 F. Supp. 2d 1047 (C.D. Cal. 2012) ...................................................... 24

*In re Woodbridge Investments Litig.*,
    No. CV 18-103-DMG, 2020 WL 4529739 (C.D. Cal. Aug. 5, 2020) ............... 6

**State Cases**

*Bell v. Feibush*,
    212 Cal. App. 4th 1041 (2013) .................................................................. 17

*Cal. Grocers Ass'n v. Bank of Am.*,
    22 Cal. App. 4th 205 (1994) ...................................................................... 20

*Casey v. U.S. Bank Nat. Ass'n.*,
    127 Cal. App. 4th 1138 (2005) ........................................................ 5, 7, 9, 11

*Chazen v. Centennial Bank*,
    61 Cal. App. 4th 532 (1998) ................................................................ 6, 8, 15, 16

*Choate v. Cty of Orange*,
    86 Cal. App. 4th 312 (2000), *as modified on denial of reh'g* (Jan.
    17, 2001) ........................................................................................................ 14

*Copesky v. Superior Ct.*,
    229 Cal. App. 3d 678 (1991) ........................................................................ 15

*Das v. Bank of America, N.A.*,
    186 Cal. App. 4th 727 (2010) ....................................................................... 15

*De Havilland v. FX Networks, LLC*,
    21 Cal. App. 5th 845 (2018) ......................................................................... 22

*Delfino v. Agilent Techs., Inc.*,
    145 Cal. App. 4th 790 (2006) .................................................................. 15, 16

*Grover v. Bay View Bank*,
    87 Cal. App. 4th 452 (2001) ......................................................................... 15

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ..................................................................... 22

*Holder v. Howe*,
    No. B260967, 2016 WL 7229833 (Cal. Ct. App. Dec. 14, 2016) ................. 13

*Kidron v. Movie Acquisition Corp.*,
    40 Cal. App. 4th 1571 (1995) ....................................................................... 14

*Kurtz-Ahlers, LLC v. Bank of Am., N.A.*,
    48 Cal. App. 5th 952 (2020) ........................................................................... 8

*Lacagnina v. Comprehend Sys., Inc.*,
    25 Cal. App. 5th 955 (2018), *as modified* (Aug. 14, 2018) ......................... 17

*Michaely v. Frey*,
    No. B243203, 2014 WL 721505 (Cal. Ct. App. Feb. 26, 2014) .................... 13

*Norwest Mortg., Inc. v. Sup. Ct.*,
    72 Cal. App. 4th 214 (1999) ......................................................................... 21

WELLS FARGO'S MOTION TO DISMISS COMPLAINT

*Siry Inv., L.P. v. Farkhondehpour,*
    45 Cal. App. 5th 1098 (2020), *as modified on denial of reh'g* (Mar.
    23, 2020) ...................................................................................... 17

*Walker v. Countrywide Home Loans, Inc.,*
    98 Cal. App. 4th 1158 (2002) ........................................................ 20

*Z.V. v. Cty. of Riverside,*
    238 Cal. App. 4th 889 (2015) ........................................................ 16

**State Statutes**

Cal. Civ. Code § 3439.08 (2) ................................................................ 13

Penal Code § 496 ..................................................................... 17, 18

**Rules**

Cal. R. Ct. 8.1115(e)(1) ......................................................................... 17

Fed. R. Civ. P. 8 ................................................................................ 7, 8

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

Trying to exploit Wells Fargo's prior "sales practices" issues, Thomas McNamara, in his role as receiver of Apex Capital Group, LLC ("Apex") and Triangle Media Corporation ("Triangle"), ("Plaintiff"), brings this lawsuit against Wells Fargo in a transparent effort to extract funds from Wells Fargo's "deep pockets."  But Wells Fargo was not involved with the alleged fraud at the center of the Complaint.  Plaintiff does not state facts that plausibly allege Wells Fargo's actual knowledge of any underlying fraud, and his potpourri of claims do not withstand scrutiny.

Plaintiff seeks to hold Wells Fargo responsible for opening bank accounts that Plaintiff now identifies as shell accounts—conduct Plaintiff acknowledges deceived Wells Fargo.  At its core, Plaintiff's Complaint would require this Court to impose an unrecognized duty on Wells Fargo to affirmatively monitor its customers' business deposit accounts.  Plaintiff cannot pursue these claims against Wells Fargo.

- Plaintiff's four Aiding and Abetting claims all fail because the Complaint does not—and cannot—plausibly allege facts showing Wells Fargo *actually knew* about the bad actors' schemes and substantially assisted with those schemes.  Indeed, the facts alleged underscore that Apex and Triangle were attempting to deceive Wells Fargo by partnering with individuals to open multiple accounts for different companies.  Moreover, with respect to the Aiding and Abetting Fraudulent/Voidable Transfers claim, Wells Fargo is not a "transferee" under the statute.
- The Conspiracy to Commit Fraud claim fails for the fundamental reason that Plaintiff has not alleged any agreement between Wells Fargo and the bad actors.
- The Breach of Fiduciary Duty claim fails because a mere depository relationship does not establish a fiduciary duty on the part of Wells Fargo.

1

- The Negligent Supervision and Negligence claims, pled in the alternative, fail because the contractual bank/depositor relationship does not involve any duty to supervise account activity or to inquire into the purpose for which funds are being used.  Nor has Plaintiff alleged that Wells Fargo knew of its employees' alleged unfitness.

- Plaintiff's Penal Code § 496 claim fails because the Complaint does not adequately allege Wells Fargo is in receipt of any "stolen" property as defined by the statute, nor does it show that Wells Fargo had actual knowledge that it received stolen property.

- Plaintiff's § 17200 claim fails because: (1) the underlying claims fails; (2) the Complaint admits an adequate remedy at law exists, thus precluding relief under the Unfair Competition Law; (3) Plaintiff lacks standing to pursue a UCL claim against Wells Fargo; and (4) the UCL cannot be applied extra-territorially.

- Plaintiff's Unjust Enrichment claim fails because: (1) it is not a standalone claim; (2) there is a valid express contract that governs the payments at issue; and (3) there are no allegations Wells Fargo was unjustly enriched.

- Finally, Plaintiff's claim for an accounting fails because Plaintiff has not shown that an ordinary action for damages is impracticable.

Accordingly, Wells Fargo requests the Court dismiss the Complaint.

## II.    FACTUAL ALLEGATIONS

In June 2018 and November 2018, the FTC brought lawsuits against Apex and Triangle, each of which was operating online "free trial" offer schemes.  Compl. ¶ 16.  Plaintiff is the Court-appointed receiver in both actions.  *Id*. ¶¶ 17, 22.

### A.    The Underlying Scheme Perpetrated by the Non-Party Bad Actors.

Phillip Peikos, David Barnett, and Brian Phillips (collectively, the "Bad Actors") separately operated two online "free trial" subscription scams.  *Id*. ¶¶ 19,

24.[1]  Very generally speaking, the alleged frauds were premised on ads offering "risk-free" trials to consumers for the cost of shipping, but the Bad Actors continued charging consumers for products unless the subscription was affirmatively canceled. *Id*. ¶ 49-50.  The Bad Actors opened deposit accounts at Wells Fargo in the names of various companies.  *Id*. ¶ 3, 58.  Plaintiff alleges the Bad Actors paid individuals to open these accounts, and falsely represented to Wells Fargo that these individuals were 100% owners of the entities that held the accounts—despite what they and their documentation represented to the Bank.  *Id*. ¶¶ 63-64.  Plaintiff alleges the Bad Actors used the Wells Fargo accounts to receive funds from merchant processors and other financial institutions.  *Id*. ¶ 3, 52.  Given that many consumers disputed their card charges ("chargebacks"), Plaintiff contends the Bad Actors would not have been able to continue their fraud without the large number of companies and accounts they maintained.  *Id*. ¶¶ 63-64, 144.  Indeed, the Bad Actors' sophisticated scheme avoided detection for years by merchant processors, numerous financial institutions, consumers, law enforcement, *and* Wells Fargo.  *Id*. ¶¶ 58, 147. [2]

### B.    Wells Fargo's Alleged Involvement and Plaintiff's Claims.

Wells Fargo's alleged role in the Bad Actors' fraudulent schemes was limited to opening depository accounts for different entities.  *Id*. ¶ 3 (Bad Actors used Wells Fargo bank accounts "to accept consumers' credit and debit card payments").  Nevertheless, Plaintiff alleges in conclusory fashion that Wells Fargo knowingly provided substantial assistance to the Bad Actors' fraudulent schemes.  *Id.* ¶ 13.  Plaintiff's allegations are premised on the assumption that Wells Fargo employees

---

[1] For purposes of this Motion only, Wells Fargo addresses the two schemes together. As Plaintiff's Complaint concedes, these are two completely separate groups of entities with wholly unrelated Bad Actor principals who ran different "schemes".

[2] In *Apex*, the FTC recently acknowledged the merchant processors' role in "manipulating…chargeback levels to help [the Bad Actors] avoid detection."  RJN, Ex. A at 3:15.

used "atypical banking procedures" to assist Triangle and Apex in their frauds. *Id.* ¶¶ 13, 28. Specifically, Plaintiff alleges that Wells Fargo bankers:

- interacted directly with the Bad Actors through its bank employees regarding deposit accounts (*Id.* ¶¶ 78-79, 81-84, 105-128, 152-169);
- opened and closed fraudulent business banking accounts. Plaintiff alleges these businesses should have generated red flags because they were shell companies for high-risk internet businesses, generated a high number of chargebacks, were funded with minimal deposits, contained information discrepancies regarding beneficial ownership, and shared PO Box addresses in places like Wyoming (*Id.* ¶¶ 70-71, 74-75, 80-82, 84, 117, 136, 152-154, 156-157);
- accepted deposited funds that were fraudulently obtained through other financial institutions from consumers (*Id.* ¶¶ 13, 68, 205);
- failed to follow its "know your customer" policies to ascertain the true owners of the Triangle and Apex accounts (*Id.* ¶¶ 87, 90, 167);
- provided "reference letters,"[3] which stated only the existence of Wells Fargo accounts, that the Bad Actors used to open merchant accounts with other financial institutions (*Id.* ¶¶ 66, 71, 74, 88-89, 93, 95. 152- 154);
- ignored the transfer of funds to other financial institutions that had chargebacks from consumers (*Id.* ¶¶ 85-86, 98-102); and
- ignored BSA/AML laws and requirements which furthered suspicious bank activity and fraud by Triangle and Apex (*Id.* ¶¶ 73, 79-80, 87, 182).

Plaintiff also alleges that Wells Fargo would have discovered the fraud if it had implemented its "know your customer" and AML requirements. *Id.* ¶ 87 (noting that Wells Fargo policies and procedures required enhanced scrutiny "***(in theory)***") (emph. added); *Id.* ¶ 90 (stating the Bad Actors' fraudulent activity "***should have*** set off alarm bells" but "[i]t did not") (emph. added); *Id.* ¶ 94 (explaining that it is possible that Wells Fargo employees were "clueless" as to the most obvious signs of fraud). Based on these allegations, Plaintiff brings twelve separate claims.

## III.   **LEGAL STANDARD**

A court must dismiss a complaint if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires more "than a sheer

---

[3] Plaintiff refers to certain letters given to Triangle and Apex as "reference letters," but Wells Fargo notes these types of letters are "verification of deposit" letters.

possibility that a defendant has acted unlawfully." *Brock v. Concord Auto. Dealership LLC,* No. 14-CV-01889-HSG, 2016 WL 829074, at *1 (N.D. Cal. Mar. 3, 2016) (citing *Iqbal*, 556 U.S. at 678).

Claims sounding in fraud, including aiding and abetting fraud, require a plaintiff to satisfy Rule 9(b) and "state with particularity the circumstances constituting fraud," and absent such specificity, the claim must be dismissed. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing Fed. R. Civ. P. 9(b)); *see also U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (the "who, what, when, where, and how" required).

## IV.   ARGUMENT

### A.   Plaintiff Cannot Maintain Any Aiding and Abetting Claims Against Wells Fargo

Plaintiff alleges Wells Fargo aided and abetted the Bad Actors' fraud, breach of fiduciary duty, conversion, and fraudulent/voidable transfers.  But Plaintiff does not allege facts that plausibly allege Wells Fargo's ***actual*** knowledge of any of these underlying torts perpetuated by the Bad Actors or its substantial assistance as required to maintain an aiding and abetting claim against a bank.  *Chance World Trading E.C. v. Heritage Bank of Com.*, 438 F. Supp. 2d 1081, 1084 (N.D. Cal. 2005), *aff'd*, 263 F. App'x 630 (9th Cir. 2008).

"[A]iding and abetting liability under California law… requires a finding of actual knowledge," which "requires more than a vague suspicion of wrongdoing." *In re First All. Mortg. Co.,* 471 F.3d 977, 993, n.4 (9th Cir. 2006). "[T]o satisfy the knowledge prong, [Plaintiff must plausibly allege] the defendant…[had] 'actual knowledge of the specific primary wrong the defendant substantially assisted.'" *Id.* at 993 (quoting *Casey v. U.S. Bank Nat. Ass'n.*, 127 Cal. App. 4th 1138, 1145 (2005)); *Evans v. ZB, N.A.*, 779 F. App'x 443, 445 (9th Cir. 2019) (must include "specific supporting facts that make their allegations of actual knowledge plausible").  Knowledge may not be presumed; rather, "[u]nder California law, an

1    aider and abettor to a fraud must have ***actual and not merely constructive***

2    ***knowledge*** of the fraud at the time the alleged assistance is rendered." *Impac*

3    *Warehouse Lending Grp. v. Credit Suisse First Bos. Corp.*, No. SA CV 04-1234

4    AHS (CWx), 2006 WL 6935318, at *7 (C.D. Cal. June 20, 2006), *aff'd sub nom.*

5    *Impac Warehouse Lending Grp. v. Credit Suisse First Bos. LLC*, 270 F. App'x 570

6    (9th Cir. 2008) (emph. added); *Lusk v. Kellogg*, No. SACV 11-00087 JVS (RNBx),

7    2011 WL 13225140, *4 (C.D. Cal. Aug. 10, 2011) (dismissing aiding and abetting

8    claim because plaintiff alleged conclusory facts constituting legal conclusions

9    insufficient to show knowledge).[4]

10       Next, to establish the second element of his aiding and abetting claims,

11   Plaintiff must allege that Wells Fargo's conduct was a "substantial factor" in

12   causing the alleged injury. *Mosier v. Stonefield Josephson, Inc.*, No. CV 11-2666

13   PSG (Ex), 2013 WL 4859635, *3 (C.D. Cal. July 30, 2013), *aff'd*, 815 F.3d 1161

14   (9th Cir. 2016); *see also Diaz v. Intuit, Inc.*, No. 5:15-CV-01778-EJD, 2018 WL

15   2215790, at *8 (N.D. Cal. May 15, 2018).  Because the Complaint's cursory

16   allegations do not adequately allege the critical elements of (1) actual knowledge

17   <u>*and*</u> (2) substantial assistance by Wells Fargo, each of Plaintiff's aiding and abetting

18   claims fail.

19                    **(1)    Plaintiff's Aiding and Abetting Fraud Claim Fails.**

20       Plaintiff's aiding and abetting fraud claim is impermissibly predicated upon

21   what he believes Wells Fargo *should have known*.  *See* Compl. ¶ 13 ("(i) authorizing

22   _____

23   [4] Despite this mandate, a few district courts have drifted from this high standard. *In*

24   *re Woodbridge Investments Litig.*, No. CV 18-103-DMG, 2020 WL 4529739 (C.D.
     Cal. Aug. 5, 2020); *Chang v. Wells Fargo Bank, N.A.*, No. 19-CV-01973-HSG,

25   2020 WL 1694360 (N.D. Cal. Apr. 7, 2020).  These rulings are inconsistent with

26   long-standing law, and the Ninth Circuit recently reaffirmed the actual knowledge
     standard.  *Paskenta Band of Nomlaki Indians v. Umpqua Bank*, 846 F. App'x 589,

27   590 (9th Cir. 2021). Actual knowledge is only present in "extreme circumstances."

28   *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998).

or allowing the use of atypical banking procedures…(ii) counseling [Triangle and Apex] on how to set up deceptive bank accounts with straw owners…(iii) accepting deposits obtained through the fraud, and (iv) authorizing suspicious inter-company transfers…"); *id.* ¶ 64 ("The Enterprises would orchestrate the formation of the shell companies, the opening of the necessary Wells Fargo bank accounts, and the completion of applications for merchant processing in the shell companies' names.").  These conclusory allegations do not translate to Wells Fargo's *actual knowledge* of the Bad Actors' fraud, let alone substantial assistance.

### i.    *Wells Fargo Had No Actual Knowledge of Fraud*

None of Plaintiff's allegations demonstrate Wells Fargo's *actual knowledge* of any fraud.  California courts have *repeatedly emphasized* that the standard for pleading an aiding and abetting claim against a bank based on its customers' fraudulent conduct is very high.[5]  This is especially true given the plausibility requirement imposed by Fed. R. Civ. P. 8.  Indeed, the Ninth Circuit recently affirmed the dismissal of aiding and abetting claims at the pleading stage, reiterating the gatekeeping function that Rule 8's plausibility requirement imposes and how mere allegations of "various irregularities [that] require[] further investigation" do not plausibly suggest a bank's actual knowledge.  *See Paskenta*, 846 F. App'x at

---

[5] With good reason.  Today's banking system takes this approach to strike a balance between the vital public function filled by, and expected of, banks and financial institutions to serve as depositories for funds and processors of hundreds of millions of transactions initiated every day by consumers and businesses.  These responsibilities, practically and logically, bring with them the expectation that banks have no duty to police accounts, supervise banking activity, or inquire into the purpose for which funds are used.  *Casey*, 127 Cal. App. 4th at 1145.  While California law permits consumers to seek relief against banks for the fraudulent actions of a third party in limited circumstances, they may only proceed if they can satisfy the extremely high burden of plausibly alleging that the bank had **actual knowledge** that its depositor was committing a specific tort and nonetheless consciously decided to substantially assist with that tortious activity.  *Id.* at 1144-45.

590.  Thus, while Plaintiff's allegations might be *consistent* with the ultimate averment that Wells Fargo had the requisite knowledge, more is required under Rule 8.  *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) (allegations "merely consistent" with liability are insufficient; rather "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible").

For Plaintiff's theories to be actionable, the Court would have to impose on Wells Fargo a duty to monitor the Bad Actors' accounts for fraud because Plaintiff predicates his allegations on what Wells Fargo *should have known* from a review of the Bad Actors' accounts.  It is well settled that banks do not owe depositors, let alone third parties, any such duty.  *See e.g. Kurtz-Ahlers, LLC v. Bank of Am., N.A.*, 48 Cal. App. 5th 952, 961 (2020) (banks do not owe account holders a duty to "polic[e]" their accounts for fraud because it "would imperil both customer privacy and the expedited processing of banking transactions so crucial to a modern economy"); *see also Bledsoe v. US Bancorp*, No. SACV 13-374-JST (MLGx), 2013 WL 12129951, at *5 (C.D. Cal. June 12, 2013) ("case law has made clear that banks do not owe their depositors a duty to monitor or police their accounts"); *Chazen*, 61 Cal. App. 4th at 537 (noting the "well-established principle…that a bank has no duty to monitor trust accounts").  This invalidates Plaintiff's conclusion that Wells Fargo aided and abetted the fraud because there were "suspicious [] transfers," "indicia of fraud," and "obvious red flags."  Compl. ¶¶ 13, 78, 102.

The Complaint identifies various factors that purportedly establish Wells Fargo's actual knowledge of the Bad Actors' fraud.  These include Wells Fargo "knowing" that Triangle and Apex "were high-risk relationships," "round-dollar" transactions were "suspicious," their account activity was "a huge red flag," and requests for reference letters "should have set off alarm bells."  *Id*. ¶¶ 90, 97, 219, 221.  In the same vein, Plaintiff contends Wells Fargo should have known about that fraud "given the Bank's [Know Your Customer] and Enhanced Due Diligence

obligations for these high-risk customers" and Wells Fargo employees' alleged "deviat[ion] from accepted banking practice." *Id.* ¶ 90.  None of Plaintiff's allegations rises to the level of ***actual knowledge*** required for an aiding and abetting claim.  Rather, the alleged facts of a high-risk business, suspicious transactions, and indicia of fraud show, at best, constructive knowledge.  *See e.g. Diaz*, 2018 WL 2215790, at *6 ("Although Plaintiffs' allegations may support an inference that Intuit was suspicious of potential fraud or knew that there was a risk of fraud, the allegations are insufficient to show that Intuit had 'actual knowledge' of fraud…"); *Litson-Gruenber v. JPMorgan Chase & Co.*, No. 7:09–CV–056–0, 2009 WL 4884426, at *3 (N.D. Tex. Dec. 16, 2009) ("Plaintiff's factual narrative is, at best, merely a story of suspicious activity that Plaintiff contends should have provided Defendant notice of the Ponzi scheme.").  This is especially true considering that banks owe depositors no duty to investigate suspicious activities.  *See*, *e.g.*, *Casey*, 127 Cal. App. 4th at 1151.  Likewise, "deviat[ion] from accepted banking practice" falls far short of demonstrating that any Wells Fargo employee *actually discovered* the Bad Actors' fraud.[6]  Instead, Plaintiff effectively contends that Wells Fargo *should have discovered* the fraud.

Constructive knowledge of a fraudulent scheme is insufficient.  *Lorenz v. E. W. Bancorp, Inc.*, No. 2:15-CV-06336-CAS(FFMx), 2016 WL 199392, at *8 (C.D. Cal. Jan. 14, 2016) (general allegations that enhanced due diligence procedures

---

[6] Plaintiffs allege that certain Wells Fargo bankers colluded with the Bad Actors in violation of bank policy.  Compl. ¶¶ 109, 123, 139, 169.  To the extent any rogue bankers had knowledge of the underlying fraud, such knowledge may not be imputed to Wells Fargo.  *River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1227 (S.D. Cal. 2003) ("The purpose of the [imputation of knowledge] rule is to protect third parties who deal with an agent by allowing the third parties to assume that the agent will faithfully communicate with his or her principal.  The intention of the rule, however, is only to protect agents acting in good faith; it is not a shield for unfair dealings.").

1   "*would have* set off alarm bells" is insufficient standing alone to allege actual

2   knowledge) (emph. in original); *Neilson v. Union Bank of California, N.A.*, 290 F.

3   Supp. 2d 1101, 1118–19 (C.D. Cal. 2003) ("should have known" not actual

4   knowledge); *Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771, 2017 WL

5   5514370, at *4 (S.D. Fla. Nov. 15, 2017), *aff'd sub nom. Isaiah v. JPMorgan Chase*

6   *Bank*, 960 F.3d 1296 (11th Cir. 2020) ("detect[ion] of suspicious activity…only

7   demonstrates knowledge of the symptoms of the Ponzi scheme, not [] actual

8   knowledge."); *Liu Yao-Yi v. Wilmington Tr. Co.*, 301 F. Supp. 3d 403, 420

9   (W.D.N.Y. 2017) (know your customers obligations at most could only create a

10   plausible inference of *constructive* knowledge); *In re Agape Litig.,* 773 F. Supp. 2d

11   298, 311 (E.D.N.Y. 2011) ("conclusory allegation that 'no legitimate business'

12   would have the pattern of account activity" at most could support constructive

13   knowledge).  Because Plaintiff's allegations amount to, at most, constructive

14   knowledge, the Court should dismiss this claim.[7]

15              ii.    *Wells Fargo Did Not Provide Substantial Assistance*

16              Setting aside the Complaint's hyperbolic and conclusory language, Plaintiff

17   generically alleges Wells Fargo provided substantial assistance by creating accounts,

18   accepting consumer payments, and transferring funds to the account holders—in

19   other words, engaging in "ordinary business transactions."  Compl. ¶¶ 13, 74.  But

20

21   _____

22   [7] Plaintiff devotes several pages of his Complaint to describing Wells Fargo's
     alleged prior sales practices issues.  Compl. ¶¶ 39-48.  But these issues are separate

23   and distinct from whether Wells Fargo actually knew about (and actively
     participated in) *these particular schemes*.  *See Lorenz*, 2016 WL 199392, at *8.

24   Plaintiff makes no attempt to connect any prior sales practice to the specific conduct
     at issue here.  Moreover, as the Complaint admits, the sales practices issues arose

25   out of the opening of accounts that were "not requested by customers."  *Id*. ¶ 39.
     Here, Plaintiff alleges the inverse: the Bad Actors requested that accounts be

26   opened, and Wells Fargo complied with their instructions.  The Court should
     disregard these superfluous allegations.

27

28

1   "ordinary business transactions" can only satisfy the "substantial assistance"

2   requirement where the bank **actually knew** "the transactions assisted the

3   commission of the specific tort." *Uecker v. Wells Fargo Cap. Fin., LLC (In re*

4   *Mortg. Fund '08 LLC)*, 527 B.R. 351, 365 (N.D. Cal. 2015); *see also First Alliance*,

5   471 F.3d at 995 (quoting *Casey*, 127 Cal. App. 4th at 1145) ("'[O]rdinary business

6   transactions'…can satisfy the substantial assistance element of an aiding and

7   abetting claim if the bank actually knew those transactions were assisting the

8   customer in committing a specific tort.  Knowledge is the crucial element.").  Here,

9   Plaintiff fails to allege Wells Fargo's *actual* knowledge of the specific underlying

10   fraud.  Thus, ordinary business transactions are not the "substantial assistance"

11   sufficient for aiding and abetting liability.

12   **(2)    No Aiding and Abetting a Breach of Fiduciary Duty.**

13           To maintain an aiding and abetting breach of fiduciary duty claim, Plaintiff

14   "must allege both that [Wells Fargo] had actual knowledge of the primary violator's

15   status as a fiduciary" *and* that Wells Fargo had "actual knowledge that the primary

16   violator's conduct contravened a fiduciary duty." *McFall v. Stacy & Witbeck, Inc.*,

17   No. 14-CV-04150-JSC, 2016 WL 6248882, at \*6 (N.D. Cal. Oct. 26, 2016)

18   (requiring actual knowledge of fiduciary duty and that fiduciary's "efforts were

19   aimed at breaching his fiduciary duty"); *Cotton v. Wells Fargo Bank N.A.*, No. SA

20   CV 10-01758-CJC (RNB), 2011 WL 13227816, at \*2 (C.D. Cal. Feb. 22, 2011); *In*

21   *re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 264 (Bankr. N.D. Fla. 2003) ("fatal

22   flaw" that bank "did not have knowledge of the fiduciary status" and so bank "did

23   not have knowledge of the breach"); *Hongying Zhao v. JPMorgan Chase & Co.*,

24   No. 17 CIV. 8570 (NRB), 2019 WL 1173010, at \*5 (S.D.N.Y. Mar. 13, 2019),

25   *appeal dismissed* (July 15, 2019) (where bank not alleged to know underlying

26   fiduciary relationship, "these 'red flag' allegations … fall short.

27           Here, the Complaint concludes "Wells Fargo had actual knowledge of [the

28   Bad Actors'] breaches of fiduciary duty."  Compl. ¶ 255.  But crucially the

1  Complaint fails to provide any facts supporting this conclusion, including *who* at
2  Wells Fargo knew the Bad Actors owed a fiduciary duty to Triangle and Apex,
3  *when* they knew, or *how* they knew, let alone whether Wells Fargo was aware of the
4  *breach* of any purported fiduciary duty.  This is insufficient.  *See* Section III, *supra.*

5    As to Wells Fargo's alleged "substantial assistance" by "affording [the Bad
6  Actors] special privileges, by enabling and allowing continuous, suspicious, and
7  obviously fraudulent banking activity, and by failing to adhere to federal, local and
8  internal regulatory banking procedures and policies" [Compl. ¶ 255], these ordinary
9  business transactions still do not satisfy the "substantial assistance" requirement.

10    **(3)    No Aiding and Abetting Conversion.**

11    Like the above claims, Plaintiff's aiding and abetting conversion claim must
12  allege that Wells Fargo actually knew of the Bad Actors' *conversion.  See Diaz,*
13  2018 WL 2215790, at *6 (citing *First Alliance,* 471 F.3d at 993).  The Complaint
14  insufficiently concludes that "Wells Fargo had actual knowledge…because those
15  funds were wrongfully transferred into, between, and out of accounts held by Wells
16  Fargo."  Compl. ¶ 259.  It is devoid of facts indicating *how* Wells Fargo *actually*
17  *knew* the Bad Actors were converting funds from the Receivership Entities, or *what*
18  transactions purportedly gave actual notice to Wells Fargo of the conversion.
19  *Namer v. Bank of Am., N.A.*, No. 16-cv-3024 JM(WVG), 2017 WL 4391710, at *3
20  (S.D. Cal. Oct. 2, 2017) ("routine commercial transaction[s]" "insufficient to
21  establish BANA's actual contemporaneous knowledge of [the] fraudulent scheme,
22  and thus fail to state a cause of action for aiding and abetting conversion").  As to
23  substantial assistance, the Complaint again relies upon ordinary business
24  transactions which are insufficient.  Compl. ¶ 260 ("Wells Fargo rendered
25  substantial assistance to [the Bad Actors]…by executing their transactions.").
26  *Uecker*, 527 B.R. at 365; *First Alliance*, 471 F.3d at 995.

27    **(4)    No Aiding and Abetting Fraudulent Transfer/Voidable**
28    **Transaction.**

1    Plaintiff's final aiding and abetting claim is predicated upon his allegation
2    that "Wells Fargo knowingly transferred shell company account funds to other
3    Receivership Entity shell company accounts and then to [the Bad Actors] or to other
4    third parties…without the shell companies receiving a reasonably equivalent value
5    in exchange for the transfers…"  Compl. ¶ 283.  This aiding and abetting claim fails
6    for two independent reasons.  First, the claim is legally deficient as Plaintiff has not
7    adequately alleged actual knowledge of the underlying fraud on the part of Wells
8    Fargo.  *See* Section IV.A.1.i., *supra*.  Second, there is no cognizable cause of action
9    for aiding and abetting a fraudulent transfer under California law.  Indeed, the
10    UVTA/UFTA provides for a limited set of remedies against *a transferee*.  Cal. Civ.
11    Code § 3439.08 (2) ("Recovery…from the asset transferred or its proceeds, or other
12    property of the transferee, as applicable, by levy or otherwise, is available only
13    against a [transferee]").  As Wells Fargo is not a transferee under the UFTA/UVTA,
14    Plaintiff cannot pursue an aiding and abetting claim against it. *Michaely v. Frey*, No.
15    B243203, 2014 WL 721505 at *12 (Cal. Ct. App. Feb. 26, 2014) ("California law
16    does not permit the imposition of a money judgment against a party who was not a
17    transferee under an aiding and abetting theory."); *Holder v. Howe*, No. B260967,
18    2016 WL 7229833 at *7-8 (Cal. Ct. App. Dec. 14, 2016) ("[T]he conduct of
19    a…non-transferee...cannot support a cause of action for aiding and abetting a
20    fraudulent transfer.").

21    **B.    There Is No "Conspiracy to Commit Fraud" Because There Was
22    No Agreement Between Wells Fargo and the Bad Actors**

23    Plaintiff's second claim is for "Conspiracy to Commit Fraud."  In support,
24    Plaintiff alleges "Wells Fargo entered into a conspiracy with Phillips, Barnett, and
25    Peikos to perpetuate their frauds" by "opening accounts," "executing reference
26    letters," "accepting…funds," "transferring those funds to other accounts," and
27    "providing atypical banking services."  Compl. ¶ 244.
28

A plaintiff has "a weighty burden to prove" a claim for conspiracy. *Choate v. Cty of Orange*, 86 Cal. App. 4th 312, 333 (2000), *as modified on denial of reh'g* (Jan. 17, 2001). To establish a conspiracy, a plaintiff must prove that each of the conspirators "agreed to a common plan." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995); *see also Choate*, 86 Cal. App. 4th at 333.

Plaintiff's allegations fall far short of conspiracy to commit fraud. Critically, the Complaint does not allege any actual ***agreement*** between Wells Fargo and the Bad Actors. Because it cannot. At most, Plaintiff notes various interactions between Wells Fargo and the Bad Actors related to ordinary business practices Compl. ¶ 244. But this is not enough. *Kidron*, 40 Cal. App. 4th at 1582 ("[m]ere association" between persons is insufficient to establish a conspiracy). Because the Complaint fails to explain how, when, or where Wells Fargo agreed to a ***common plan*** to defraud consumers, the allegations are inadequate.

Plaintiff's conspiracy to commit fraud claim further fails because it does not satisfy Rule 9(b)'s heightened pleading standard. *Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 990-91 (9th Cir. 2006) (civil conspiracy claims must be plead with particularity where object of the agreement was fraud); *In re 3com Sec. Litig.*, 761 F.Supp. 1411, 1418 (N.D. Cal. 1990) (same). Because Plaintiff fails to allege any agreement between Wells Fargo and the Bad Actors—let alone an agreement with the specificity required by Rule 9(b)—this claim fails.

### C.   Plaintiff Cannot Identify Any Breach of Fiduciary Duty

For his third claim of breach of fiduciary duty, Plaintiff alleges Wells Fargo owed "fiduciary duties to [Apex and Triangle] pursuant to their bank/client relationship." Compl. ¶ 247. This claim is inapplicable where the accounts at issue were merely depository accounts.

"The relationship between [a bank and its customer] is not fiduciary, but rather is contractual in nature." *Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F. Supp. 2d 1082, 1100 (N.D. Cal. 2013); *see also A.B. Concrete Coating, Inc. v. Wells*

*Fargo Bank, N.A.*, 491 F. Supp. 3d 727, 736 (E.D. Cal. 2020) (quoting *Grover v. Bay View Bank*, 87 Cal. App. 4th 452, 456 (2001)); *Copesky v. Superior Ct.*, 229 Cal. App. 3d 678, 692 (1991) ("the relationship between a bank and its depositor is *not* a fiduciary relationship, but that of debtor-creditor"); *Chazen*, 61 Cal. App. 4th at 537 (banks "are not fiduciaries for their depositors").

Plaintiff's unsupported conclusion that "Wells Fargo owed fiduciary duties to [Apex and Triangle] pursuant to their bank/client relationship" is incorrect as a matter of law. *Id.* A simple bank/client relationship is insufficient to establish a bank as a fiduciary. Consequently, the breach of fiduciary claim fails.

### D.    Plaintiff's Two Alternative Negligence Claims Must Be Dismissed

Along the same lines, Plaintiff's two negligence claims—tellingly pled in the alternative—should also be dismissed because Plaintiff is unable to allege the requisite existence of a duty of care. *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790 (2006) (claim for negligent supervision must allege (1) a duty of care owed to the plaintiff with respect to supervision of the employee; (2) breach of that duty; (3) causation; and (4) damages); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1197 (N.D. Cal. 2016). In support, Plaintiff alleges Wells Fargo breached a duty "to detect, investigate and/or prevent the use of Wells Fargo accounts to perpetrate fraud"[8] and "failed to timely stop or take any action to prevent the [Bad Actors'] fraud." Compl. ¶¶ 308, 309.

Plaintiff's alternative negligence claims fail for the same reason his other claims do: Wells Fargo did not owe Plaintiff any duty to monitor the accounts. *Das v. Bank of America, N.A.*, 186 Cal. App. 4th 727, 741-42 (2010). As numerous courts have explained, the "relationship of bank and depositor is founded on contract…This contractual relationship does not involve any implied duty to

---

[8] Plaintiff's negligent supervision claim does not identify any duty. *See* Compl. ¶¶ 298-304.

1    supervise account activity or to inquire into the purpose for which the funds are

2    being used." *Chazen*, 61 Cal. App. 4th at 537, 540 (dismissing negligence claim

3    based upon the plaintiff's allegation that the bank had "actual or constructive notice

4    of the [bad actor's] conversion of [their] funds based upon irregular activities"); *see*

5    *also Paskenta Band of Nomlaki Indians v. Crosby*, No. 15-CV-00538-MCE-CMK,

6    2016 WL 6094468 at *3 (E.D. Cal. Oct. 19, 2016), *aff'd sub nom. Paskenta Band of*

7    *Nomlaki Indians v. Associated Pension Consultants, Inc.*, 854 F. App'x 872 (9th Cir.

8    2021) ("a bank cannot be expected to…intervene in suspicious activities"); *see also*

9    *Paskenta*, 846 F. App'x at 589.  Because Plaintiff premises his negligence claims

10   on the same contention that Wells Fargo owed Plaintiff a duty based upon "irregular

11   activities," his claim must be dismissed because such a duty simply does not exist.

12           To the extent Plaintiff predicates his negligent supervision claim on Wells

13   Fargo's irrelevant "sales practices issues" [Compl. ¶¶ 300-303], this too fails

14   because Plaintiff does not allege Wells Fargo actually knew its employees could not

15   be trusted to act properly or that the employees created a particular risk.  Such

16   knowledge is a prerequisite for a negligent supervision claim.  *Petersen v. Cty. of*

17   *Stanislaus*, No. 1:12-CV-00933-AWI, 2012 WL 4863800 at *9 (E.D. Cal. Oct. 12,

18   2012) ("'there can be no liability for negligent supervision in the absence of

19   knowledge by the principal that the agent or servant was a person who could not be

20   trusted to act properly without being supervised'"); *see also Delfino*, 145 Cal. App.

21   4th at 815 ("Negligence liability will be imposed upon the employer if it 'knew or

22   should have known that hiring the employee created a particular risk or hazard and

23   that particular harm materializes.'"); *Z.V. v. Cty. of Riverside*, 238 Cal. App. 4th

24   889, 902 (2015) ("To establish negligent supervision, a plaintiff must show that a

25   person in a supervisorial position over the act had prior knowledge of the actor's

26   propensity to do the bad act.").  Plaintiff's sales practices allegations are unrelated to

27   the negative option fraud of which Plaintiff complains.  But even if they were

28   related, Plaintiff has not alleged Wells Fargo knew its employees were unfit or

16

1  predisposed to engage in the specific acts alleged.  Accordingly, it fails.

2  **E.      Plaintiff Fails to Identify Any Violation of California Penal Code**

3  **§ 496**

4  Plaintiff next contends Wells Fargo violated Penal Code Section 496 by

5  concealing stolen funds and knowingly transferring wrongfully obtained property to

6  the Bad Actors.  Compl. ¶¶ 266, 267.  While Section 496(c) was recently found to

7  allow a corresponding civil claim [*Bell v. Feibush*, 212 Cal. App. 4th 1041 (2013)],

8  a civil plaintiff must show (1) the particular property was stolen, (2) the defendant

9  received, concealed, or withheld the property from the owner, and (3) the defendant

10 **knew** the property was stolen.  *Lacagnina v. Comprehend Sys., Inc.*, 25 Cal. App.

11 5th 955, 970 (2018), *as modified* (Aug. 14, 2018).  Importantly, "an essential

12 element of a section 496 violation is the defendant's *knowledge* that the property

13 was stolen."  *Lacagnina*, 25 Cal. App. 5th at 971 (emph. in original).

14 Plaintiff's allegations are insufficient to support a Section 496 claim.  As to

15 the first element, the "stolen" funds are funds obtained from consumers by the Bad

16 Actors' alleged fraud.  This is not stolen property for purposes of a 496 claim.  *Siry*

17 *Inv., L.P. v. Farkhondehpour*, 45 Cal. App. 5th 1098, 1135-36 (2020), *as modified*

18 *on denial of reh'g* (Mar. 23, 2020)[9] (no treble damages where theft involves fraud,

19 conversion, breach of fiduciary duty, or other torts); *see also Lacagnina*, 25 Cal.

20 App. 5th at 972.  As to the second element, there are no allegations that Wells Fargo

21 concealed or withheld funds from consumers.  And finally, for the same reasons

22 identified above, Plaintiff does not allege Wells Fargo *actually knew* the funds,

23 which came from other financial institutions, were in fact stolen.  *Freeney v. Bank of*

24 *Am. Corp.*, No. CV 15-2376-GB-PJWx, 2016 WL 5897773, at *12 (C.D. Cal. Aug.

25 4, 2016) (dismissing receipt of stolen property claim since plaintiff failed to plead

26 _____

27 [9] *Siry* may be cited for its "persuasive value" even though the California Supreme

28 Court has granted review.  Cal. R. Ct. 8.1115(e)(1).

that the bank defendant had actual knowledge that funds transferred through its accounts were stolen; "[u]nder § 496, a defendant cannot be convicted of receiving stolen property unless it had actual knowledge that the goods it received or sold were in fact stolen."). As a result, this claim must be dismissed.

**F.  Plaintiff Fails to State a Claim for Violation of the UCL**

For his seventh claim, Plaintiff contends Wells Fargo violated California's UCL by "aiding and abetting fraud, conspiring to commit fraud and violating California Penal Code § 496" and seeks restitution in the form of "all monies wrongfully paid pursuant to the fraudulent schemes aided and abetted by [Wells Fargo]." Compl. ¶¶ 271, 273. The Court should dismiss the UCL claim for four independent reasons: (1) the underlying claims fail; (2) Plaintiff admits an adequate remedy at law exists, thus precluding relief; (3) Plaintiff lacks standing; and (4) the UCL cannot be applied extra-territorially.

**(1)  Plaintiff's Bootstrapped UCL Claim Fails for The Same Reasons His Underlying Claims Fail.**

Plaintiff predicates his UCL claim upon his other deficient claims for aiding and abetting fraud, conspiring to commit fraud, and violating California Penal Code § 496. Compl. ¶ 271. Thus, the UCL claim cannot stand. *Sub Corp., Ltd. v. Best Buy Co., Inc.*, No. CV-07-5822(CTx), 2008 WL 11451196, at *5 (C.D. Cal. Aug. 5, 2008), *aff'd*, 365 F. App'x 767 (9th Cir. 2010); *Sanders v. America's Wholesale Lender*, No. ED CV 16-2597-DOC (DTBx), 2017 WL 8181263, at *10 (C.D. Cal. Feb. 24, 2017) (same).

**(2)  Plaintiff's UCL Claim Must Be Dismissed Because He Has Otherwise Has an Adequate Remedy at Law.**

Just last year, the Ninth Circuit confirmed that a plaintiff cannot bring a UCL claim in addition to legal claims seeking substantively similar remedies because the UCL is inherently equitable in nature. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (plaintiff "must establish that she lacks an adequate remedy

at law" to assert UCL claim); *see also In re Calif. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021) ("The dispositive issue in *Sonner* was the plaintiff's failure to plead inadequate remedies at law or explain why the remedies she requested in the complaint would be inadequate."). Thus, the Court must dismiss these claims at the pleading stage. *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *2-3 (N.D. Cal. Oct. 13, 2020) (dismissing UCL claim for failure to plead inadequate legal remedy); *see also Clark v. Am. Honda Motor Co., Inc.*, No. 20-cv-03147-AB-MRWx, 2021 WL 1186338, at *8 (C.D. Cal. Mar. 25, 2021) ( "Plaintiffs have not pointed to any allegation in the Complaint *pleading* that they lack an adequate remedy at law.  Plaintiffs seek damages, and '[c]ourts generally hold that monetary damages are an adequate remedy'…") (emph. in original); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV-20-00769-CJC, 2020 WL 5492990, at *3-4 (C.D. Cal. Sept. 9, 2020).

The alleged injuries here make clear that legal remedies *are* adequate—a point reinforced by Plaintiff's assertion that "[t]he Receivership Entities suffered injury in fact and lost money as a result of [Wells Fargo's] substantial assistance in the unlawful business acts and practices."  Compl. ¶ 272.  Indeed, just as in *Sonner*, Plaintiff's Complaint is devoid of any suggestion that his remedies at law are inadequate; thus, these claims should be dismissed.  *In re MacBook Keyboard Litig.*, 2020 WL 6047253 at *2-3; *Gibson*, 2020 WL 5492990 at *3-4.

Further highlighting Plaintiff's inability to show an inadequate remedy at law, the requested relief in his UCL claim is based on the same factual predicate as his claim for damages—namely, the return of "all monies wrongfully paid pursuant to the fraudulent schemes aided and abetted by [Wells Fargo]."  Compl. ¶ 273.  If Plaintiff obtained the damages sought under his other claims, he would have equally complete relief as he would through restitution under the UCL.  Accordingly, the Court should dismiss the UCL claim. *Heredia v. Sunrise Senior Living LLC*, No.

8:18-cv-01974-JLS-JDE, 2021 WL 819159, at *4 (C.D. Cal. Feb. 10, 2021) (citing *Sonner*, 971 F.3d at 844 n. 8); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020) (granting motion to dismiss and noting that plaintiffs failed to argue "that the equitable restitution they request would go beyond the damages available to them").

### (3)   Plaintiff Lacks Standing to Maintain a UCL Claim.

Even assuming, *arguendo*, Plaintiff can overcome the *Sonner* bar, his claim additionally fails because he lacks standing.  Standing under the UCL requires; (1) injury-in-fact and (2) lost money or property (3) "as a result of" the UCL violation. *Thieme v. Cobb*, No. 13-CV-03827-MEJ, 2016 WL 3648531, at *6 (N.D. Cal. July 8, 2016).  "In general, a receiver has capacity to bring only such actions as could have been brought by the entity or individual whose property is in a receivership, and thus may sue only to redress injuries to the entity in receivership."  *Mosier v. Stonefield Josephson, Inc.*, No. cv-11-2666-PSG-Ex, 2011 WL 5075551, at *3 (C.D. Cal. Oct. 25, 2011).  Here, Plaintiff sues on behalf of Triangle and Apex.  *See* Compl. ¶ 15 ("[Plaintiff] is therefore seeking to recover damages for the harm proximately caused to the Apex and Triangle Receivership Entities by Wells Fargo...").  But the Complaint does not identify any injury these entities suffered "as a result" of Wells Fargo's actions.  That is, Plaintiff has not articulated *what* money Triangle and Apex allegedly lost, *how* it was lost as a result of Wells Fargo's conduct, or that Triangle or Apex paid any money to Wells Fargo that was either not owed or that Wells Fargo was not legally entitled to under the terms of their business banking relationship.  *See* Compl.

Indeed, California courts have found contractually authorized fees are not unfair under the UCL unless they are unconscionable or violate some independent statutory prohibition.  *Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4th 205, 218 (1994) (reversing injunction under UCL unfairness claim for contractually authorized fee); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158,

1178 (2002) (rejecting UCL unfairness claim for fees imposed by loan servicer). Here, aside from Plaintiff's unsupported conclusion that Wells Fargo's account fees helped to further the Bad Actors' fraud, Plaintiff offers no independent legal basis to conclude that the fees were unlawful or unfair. *See*, *e.g.*, Compl. ¶ 240 ("the fees charged by [Wells Fargo] for their banking services…directly furthered the fraudulent schemes"). The fees Triangle and Apex paid Wells Fargo for banking services are not the type of "injury" that the UCL redresses, and therefore cannot confer standing on Plaintiff. *Haynish v. Bank of Am., N.A.*, 284 F. Supp. 3d 1037, 1052 (N.D. Cal. 2018) (holding that the "UCL's restitution provision 'operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair business practice'"). Because there is no allegation that Wells Fargo wrongfully charged *Triangle or Apex* fees that caused those entities injury in fact, Plaintiff lacks standing to maintain a UCL claim.

### (4)    No Extra-Territorial Application of UCL.

Finally, any UCL claim must be predicated upon **conduct occurring inside California**. *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015) (finding UCL claim fails because California does not permit extraterritorial application of the statute).

Here, the Complaint alleges some of the underlying conduct occurred outside California yet seeks restitution broadly in the form of "all monies wrongfully paid pursuant to the fraudulent schemes aided and abetted by [Wells Fargo]." Compl. ¶¶ 8, 152-156, 189, 273. Extraterritorial conduct cannot support Plaintiff's UCL claim. *See Norwest Mortg., Inc. v. Sup. Ct.*, 72 Cal. App. 4th 214, 222 (1999) (UCL does not apply to "non-California residents for whom [defendant's] conduct of purchasing [force-placed insurance] occurred in states other than California"); *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-4457 SC, 2013 WL 3357929, at *4 (N.D. Cal. July 3, 2013) (barring UCL claims where wrongful conduct occurred in Oklahoma but permitting claims where fraudulent scheme included conduct and loss

in California).  Because Plaintiff 's claim impermissibly encompasses extraterritorial conduct, it should be dismissed.

### G.    Plaintiff's Unjust Enrichment Claim Must Be Dismissed

In support of his ninth claim for Unjust Enrichment, Plaintiff alleges that Wells Fargo "received payments (whether denominated as 'fees,' 'charges,' 'fines,' 'reserves,' or otherwise) from [Triangle and Apex's] accounts used in connection with the processing and maintenance of accounts."  Compl. ¶ 293.  Plaintiff contends that Wells Fargo has been unjustly enriched by these payments.  *Id.* ¶ 294. As a result of the alleged unjust enrichment, Plaintiff seeks an equitable remedy requiring it to hold in constructive trust the amount of the payments.  *Id.* ¶ 296.

Plaintiff's Unjust Enrichment claim fails for three independent reasons: (1) unjust enrichment is generally not recognized as a stand-alone claim, (2) an unjust enrichment claim cannot stand when there is an underlying contract between the parties, and (3) Plaintiff does not allege receipt of a benefit or unjust retention of the benefit at the expense of another.

### (1)    Unjust Enrichment is not a Stand-Alone Claim.

As an initial matter, Plaintiff's unjust enrichment claim must be dismissed because unjust enrichment cannot serve as a stand-alone claim for relief.  *Sotelo v. Rawlings Sporting Goods Co.*, No. CV 18-9166-GW(MAAx), 2019 WL 4392528, at *8 (C.D. Cal. May 8, 2019) ("unjust enrichment [is] not [an] independent cause[] of action under California law" but rather "may be requested in conjunction with a cognizable cause of action that permits a court to grant such relief"); *see also De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) (unjust enrichment is a "restitution claim" and not "a cause of action" and dismissing unjust enrichment claim where other claims failed); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim.  There being no actionable wrong, there is no basis for the relief.").  The fatal

1   deficiencies of Plaintiff's other claims therefore preclude restitution under a theory

2   of unjust enrichment.

3              **(2)    Plaintiff Has Not Alleged the Non-Existence of a Contract.**

4          Because unjust enrichment is a quasi-contractual claim seeking restitution, a

5   plaintiff must allege there was no valid contract governing the payments at issue.

6   *Andreoli v. Youngevity Int'l, Inc.*, No. 16-CV-02922-BTM-JLB, 2018 WL 1470264,

7   at *8 (S.D. Cal. Mar. 23, 2018) (Ninth Circuit "construes an unjust enrichment cause

8   of action as a quasi-contract claim seeking restitution"); *Gerlinger v. Amazon.Com,*

9   *Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. Mar. 23, 2004) ("An action based on

10  quasi-contract cannot lie where a valid express contract covering the same subject

11  matter exists between the parties."); *Solano v. America's Servicing Co.*, No. 2:100-

12  cv-02426-GEB-GGH, 2011 WL 1669735, at *7 (E.D. Cal. May 3, 2011)

13  (dismissing unjust enrichment claim where "none of Plaintiff's allegations plausibly

14  suggest that valid contracts did not exist between the parties"); *Lopez v. Washington*

15  *Mut. Bank, F.A.*, No. 1:09-cv-1838-AWI-JLT, 2010 WL 1558938, at *10-11 (E.D.

16  Cal. Apr. 19, 2010) (dismissing unjust enrichment claim where "complaint allege[d]

17  Plaintiff and Defendants entered into the Loan, and no allegations in the complaint

18  support[ed] a claim that no contract exist[ed] between the parties").

19         Here, there is a contract—the account agreements.  Indeed, the filings in the

20  underlying FTC action reflect the existence of these valid account agreements,

21  which govern the alleged unjust payments at issue.  *See*, *e.g.*, RJN, Ex. B at p. 41

22  ("The Customer's use of any Bank deposit account, product or service will confirm

23  the Customer's receipt of, and agreement to be bound by, the Bank's applicable fee

24  and information schedule and account agreement."); RJN, Ex. C at p. 430 (same).

25  Notably, in *Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2018 WL

26  1757609, at *13 (S.D. Cal. Apr. 12, 2018), the Court found that "Account

27  Agreements undoubtedly govern the subject matter of overdraft fees, including the

28  assessment of the fees, the amount of the fees and the consequences of failure to pay

---

23

an overdraft fee."  Just as the Court in *Lloyd* found the "unjust enrichment claims [were] therefore subject to dismissal," the Court here should similarly dismiss Plaintiff's unjust enrichment claim.  *Id*.

### (3)   The Complaint Does Not Allege Wells Fargo Was Unjustly Enriched.

A restitution claim under an unjust enrichment theory must allege (1) receipt of a benefit and (2) unjust retention of the benefit at another's expense.  *Khomich v. Bank of Am., N.A.*, No. CVI S-10-1866, 2011 WL 1087858, at *8-9 (E.D. Cal. Mar. 23, 2011), *report and recommendation adopted* at 2011 WL 13371309 (E.D. Cal. Sept. 6, 2011).  Here, Plaintiff only alleges that Wells Fargo received and retained fees in exchange for services rendered.  Compl. ¶ 293.  Since Wells Fargo was paid fees for providing services to Apex and Triangle, Plaintiff cannot plausibly allege that Wells Fargo *unjustly* retained a benefit at their expense.  *Khomich*, 2011 WL 1087858, at *8-9 (complaint did not allege facts showing defendants received and retained money to which they were not entitled); *In re GSM Wireless, Inc.*, No. 2:12-ap-01350 RK, 2013 WL 4017123, at *46 (Bankr. C.D. Cal. Apr. 5, 2013) (unjust enrichment claim failed because was exchange of value); *Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 974 (N.D. Cal. 2020) ("BANA's retention of its SBA lender fees…was not 'unjust.'").

### H.   Plaintiff's Accounting Claim Must Be Dismissed.

Finally, Plaintiff seeks an accounting from Wells Fargo identifying accounts owned/controlled by Triangle, Apex or their principals, the amounts received from those accounts and fees Wells Fargo received on the accounts. Compl. ¶ 312. Plaintiff's accounting claim is legally deficient and should be dismissed.

An accounting claim is proper where: (1) a fiduciary relationship exists between the parties; or (2) if no fiduciary relationship exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable. *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1055 (C.D. Cal. 2012);

*Luxul Tech. Inc. v. NextarLux, LLC*, No. 14-cv-03656-LHK, 2016 WL 3345464, at *18 (N.D. Cal. Jun. 16, 2016).  Neither element is present here.

First, Plaintiff has not alleged the existence of a fiduciary relationship between the Receivership Entities and Wells Fargo that would entitle Plaintiff to an accounting.  *See generally*, Compl.; *see also Farias v. FCM Corp.*, No. 10cv260 L (CAB), 2010 WL 4806894, at *4 (S.D. Cal. Nov. 18, 2010) (because complaint does not identify any fiduciary duty, "plaintiff has failed to state a claim for an accounting.").  Further, generally speaking, no such relationship exists between a bank and its depositors.  *Pour v. Wells Fargo Bank*, No. 20-cv-02447 SBA, 2021 WL 1134419, at *7 (N.D. Cal. Feb. 22, 2021) ("The relationship between bank and customer is not fiduciary, but rather contractual in nature.").

Second, Plaintiff has not alleged that an ordinary legal action demanding a fixed sum is impracticable.  *See Merrit v. JP Morgan*, No. 17-CV-06101-LHK, 2018 WL 1933478, at *9-10 (N.D. Cal. Apr. 24, 2018) ("An action for accounting is not available where plaintiff alleges the right to recover a sum certain."); *Warren v. Wells Fargo & Co.*, No. 3:16-cv-2872-CAB (NLS), 2017 WL 4876212, at *15 (S.D. Cal. Oct. 27, 2017).  To the contrary, Plaintiff has an adequate remedy at law because the sum due—*i.e.*, the amount of fees paid to Wells Fargo for processing transactions—can be ascertained by reviewing account statements and other bank records that will be produced in discovery.  *Cty. of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2006 WL 2193343, at *5-6 (N.D. Cal. Jul. 28, 2006) (no need for an accounting where plaintiff has remedy at law); *Hueso v. Select Portfolio Servicing, Inc.*, No. 18-cv-01892-BAS-WVG, 2021 WL 1102452, at *18 (S.D. Cal. Mar. 23, 2021).  Accordingly, the accounting claim is deficient and should be dismissed.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint against Wells Fargo with prejudice.

1

2    DATED: August 25, 2021          Respectfully submitted,

3                                    MCGUIREWOODS LLP

4

5

6                              By:   */s/ Alicia A. Baiardo*
                                     David C. Powell
7                                    Alicia A. Baiardo
8                                    Anthony Q. Le
                                     Attorneys for Defendants, Wells Fargo &
9                                    Company and Wells Fargo Bank N.A.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WELLS FARGO'S MOTION TO DISMISS COMPLAINT