UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS W. MCNAMARA, as the Court-Appointed Receiver for Triangle Media Corporation; Apex Capital Group, LLC; and their successors, assigns, affiliates, and subsidiaries,<br><br>Receiver,<br><br>v.<br><br>WELLS FARGO & COMPANY; and WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case No.: 21-CV-1245-LAB-WVG<br><br>**ORDER ON DISCOVERY DISPUTES** |

Pending before the Court are Thomas W. McNamara ("Receiver") and Wells Fargo & Company and Wells Fargo Bank, N.A.'s ("Defendants") (collectively, "Parties") respective briefs regarding discovery disputes the Receiver raises. (Doc. Nos. 28, 29.) The Receiver seeks to compel Defendants' responses to certain requests for production of documents ("RFPs") the Receiver propounded. Defendants object on a variety of grounds to each of the RFPs at issue. The Court has reviewed and considered the entirety of the Parties' submissions. Having done so, the Court (1) SUSTAINS IN PART AND DENIES IN PART Defendants' objections to RFPs 23 through 26; (2) OVERRULES Defendants'

objections to RFPs 34 through 38; (3) SUSTAINS IN PART AND DENIES IN PART RFP 45; (4) SUSTAINS Defendants' objection to RFPs 46 and OVERRULES Defendants' objection to 47; and (5) OVERRULES RFPs 54 and 55 and elaborates below.

## I. PROCEDURAL BACKGROUND

This is action hinges on Receiver's allegations of fraud against Defendants. Between 2009 and 2018, Defendants provided banking services to Apex Capital Group, LLC and Triangle Media Corporation ("Enterprises"). (Doc. No. 1, ¶¶ 8, 140.) In 2018, the Federal Trade Commission sued the Enterprises for perpetuating financial fraud against consumers through so-called "free-trial" schemes. (Doc. No. 20, 1, 27-28.) Consequently, Thomas W. McNamara was appointed as the Receiver, and he initiated this litigation on July 8, 2021. (Doc. No. 1.) The Receiver brought 12 claims against Defendants for their role in facilitating the Enterprises' fraud. (*Id.*) Most of those claims survived Defendants' August 25, 2021 Motion to Dismiss. (Doc. No. 14.) In particular, on March 30, 2022, District Judge Larry Alan Burns issued his Order Granting in Part and Denying in Part Motion to Dismiss, finding the Receiver's claims for aiding and abetting (1) fraud; (2) breach of fiduciary duty; (3) conversion; and (4) fraudulent transfer as well as (5) civil conspiracy could proceed. (Doc. No. 20.) The discovery disputes pertinent to this Order followed.

Specifically, on July 1, 2022, this Court's Chambers convened an informal conference regarding five discovery disputes arising from Defendants' objections to the Receiver's RFPs. The Parties timely raised the disputes after exhaustively meeting and conferring and thus satisfied their obligations to comply with Rule 26.1(a) of this District's Civil Local Rules and Rule IV(C) of this Court's Civil Chambers Rules. On July 5, 2022, this Court issued its Order Setting Briefing Schedule on the disputes. (Doc. No. 26.) On July 11, 2022, Defendants timely filed their Discovery Brief. (Doc. No. 28.) On July 18, 2022, the Receiver timely filed his responsive Discovery Brief. (Doc. No. 29.) Thus, the discovery disputes have been fully briefed and are now ripe for this Court's adjudication.

/ / /

/ / /

## II. LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs this discovery dispute. Under Rule 26, a party may take discovery of "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance is the Court's threshold inquiry and turns on whether evidence (1) has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action. Fed. R. Evid. 401; *Finjan, LLC v. ESET, LLC*, 2021 WL 1541651, at *3 (S.D. Cal. Apr. 20, 2021). At all times, "District Courts have wide latitude in controlling discovery," including in determining relevancy for discovery purposes. *U.S. Fidelity and Guar. Co. v. Lee Investments, LLC*, 641 F.3d 1126, 1136 (9th Cir. 2011); *Facedouble, Inc. v. Face.com*, 2014 WL 585868, at *1 (S.D. Cal. Feb. 13, 2014).

Once the propounding party establishes relevance, the responding party bears the burden of substantiating its objections to show discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519. F.2d 418, 429 (9th Cir. 1975); *Cancino Castellar v. McAleenan*, 2020 WL 1332485, at *4 (S.D. Cal. Mar. 23, 2020) (quoting *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009) ("Once the propounding party establishes [relevance], the party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'"). Specific to document requests, a request for production of documents may relate to any matter that may be inquired into under Rule 26(b). Fed. R. Civ. P. 34(a)(1). For each request for production, the opposing party's "response must either state that inspection and related activities will be permitted as requested or state with *specificity* the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B); *see also Ins. King Agency, Inc. v. Digital Media Sols., LLC*, 2022 WL 2373357, at *2 (S.D. Cal. June 30, 2022) (emphasis added).

/ / /

/ / /

When analyzing the proportionality of a party's discovery requests, courts consider: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to the information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Proc. 26(b)(1). To that end, arguments against discovery – on the basis of proportionality or otherwise – must be supported by "specific examples or articulated reasoning." *Medimpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2021 WL 5605281, at *2 (S.D. Cal. July 15, 2021) (citing *U.S. E.E.O.C. v. Caesars Entm't.*, 237 F.R.D. 428, 432 (D. Nev. 2006).).

### III.   DISCUSSION

#### a.   Defendants' Objections to RFPs 23 through 26

RFPs 23 through 26 are the first set of discovery requests at issue. Respectively, the RFPs seek to obtain documents and communications (1) regarding Defendants' compliance and reporting efforts; (2) Defendants generated about the Enterprises to comply with Defendants' reporting policies; (3) regarding Defendants' due diligence or investigation of any actual, potential, alleged, or suspected suspicious activity involving the Enterprises; and (4) regarding the Enterprises concerning "actual, suspected, alleged, or potential violations of the Bank Secrecy Act, USA PATRIOT Act, FinCEN regulations, Customer and Enhanced Due Diligence rules, Customer Identification Program requirements, and/ore AML or KYC policies or laws." (Doc. No. 29, Exh. 1, 3:24-28; 5:7-12; 6:12-17; 7:20-26.)

Defendants assert the Suspicious Activity Report ("SAR") privilege to object to production of documents responsive to the Receiver's RFPs 23 through 26. Defendants argue the Bank Secrecy Act ("BSA") "prohibits [Defendants] from discover[ing] any information that would reveal whether it did or did not file a suspicious activity report." (Doc. No. 28, 2:8-9.) In doing so, Defendants emphasize the "prohibition is unqualified and cannot be waived" and string cite case law beyond this Court's jurisdiction in support thereof. Simultaneously, Defendants offer to produce documents that reveal "underlying

facts, transactions, and documents, such as account information, bank statements, and financial transactions" while also maintaining the Receiver's RFPs exceed this permissible scope. (*Id.*, 4: 1-5.) In response, Receiver adds color to Defendants' offer to compromise. Specifically, the Receiver notes that, during their meet and confer discussions, the Parties already agreed Defendants "[should] not produce a SAR [or] any information that would reveal the existence or non-existence of a SAR" but that Defendants could produce "the underlying facts, transactions, and documents upon which a SAR is based." (Doc. No. 29, 3:7-12.) Thus, the Court finds the trouble here is not whether documents should be produced to some extent. The dispute instead centers on which particular documents are discoverable and what the process governing such determinations should be.

As a foundational matter, the Court finds RFPs 23 through 26 are relevant to the Receiver's claims throughout this litigation. The Court agrees with the Receiver that the document requests "will show [Defendants] knowledge of the Enterprises' fraud, which is a key disputed element," particularly because the RFPs target Defendants' surveillance, compliance, reporting, and due diligence efforts. (Doc. No. 29, 2:26-28.) Although they do not expressly concede the matter, Defendants' repeated assertion of the SAR privilege is demonstrative of their agreement that what RFPs 23 through 26 seeks is indeed relevant to the Action.

Under the Annunzio-Wylie Anti-Money Laundering Act, banks are required to report suspicious transaction activities to the appropriate authorities through a SAR. *See* 31 U.S.C. § 5318 et seq. Further, 12 C.F.R. section 21.11 provides "no national bank, and no director, officer, employee, or agent of a national bank, shall disclose a SAR or any information that would reveal the existence of a SAR." *See also* 31 U.S.C. § 5318(g)(2)(A)(i). However, this bar on disclosure does not apply to "supporting" documentation, as long as such disclosure would not reveal the existence or contents of a SAR, which is in line with the agreement the Parties reached during their meet and confer efforts. *Erhart v. BofI Holding, Inc.*, 2018 WL 5994417, at *6 (S.D. Cal. Nov. 15, 2018) (citing, e.g., *United States v. Holihan*, 248 F. Supp. 2d 179, 187 (W.D.N.Y. 2003)

("Although in some cases the supporting documentation may disclose the existence of an SAR and its contents, thereby thwarting the regulation's intent, any supporting documentation which would not reveal either the fact that an SAR was filed or its contents cannot be shielded from otherwise appropriate discovery based solely on its connection to a[] SAR."); *Weil v. Long Island Sav. Bank*, 195 F. Supp. 2d 383, 389 (E.D.N.Y. 2001) ("The privilege is, however, limited to the SAR and the information contained therein; it does not apply to the supporting documentation.").

Turning to which of the relevant documents are discoverable and the process that should govern such determinations, the Court notes this District's 2018 *Erhart* decision is instructive. There, the Court overruled defendants' SAR privilege objection and granted plaintiff's motion to compel responses to RFPs "subject to the prohibition that no SARs or documents that would reveal the existence of a SAR would be produced." *Erhart*, 2018 WL 5994417, at *6. Thus, the Court's finding aligned with the BSA and its regulatory provisions, providing "no national bank, and no director, officer, employee, or agent of a national bank, shall disclose a SAR or any information that would reveal the existence of a SAR." 31 U.S.C. § 5318(g)(2)(A)(i). Specific to this matter, the *Erhart* Court's finding aligns with the Parties' own agreement. Thus, the Court arrives to the same conclusion *Erhart* and the Parties here reached: at least some documents RFPs 23 through 26 implicate are discoverable, namely those that do not constitute a SAR itself or reveal the existence or non-existence of a SAR. As *Erhart* articulated, "producing responsive 'supporting' documents would not necessarily divulge information regarding whether an actual SAR was eventually filed." *Erhart*, 2018 WL 5994417, at *6.

The only remaining issue is how discoverability should be decided. The *Erhart* Court exclusively left it to the responding party, which is what the Receiver proposes here. This Court, however, is not so convinced the Receiver's proposal is workable. The Court is inclined to agree with Defendants that *in camera* review would help determine what is and is not within the scope of the SAR privilege and potentially bypass a deluge of resulting discovery disputes. While the Court heavily disfavors mediating discovery disputes by the

6

21-CV-1245-LAB-WVG

document, the delicate nature of what falls within the SAR privilege demands a non-traditional approach here. Accordingly, the Court SUSTAINS IN PART AND OVERRULES IN PART Defendants' objections to RFPs 23 through 26 and directs Defendants as follows.

**No later than 30 days from the date of this Order's issuance**, Defendants shall produce documents to the Receiver without the Court's involvement that is plainly outside of the SAR privilege and would reveal information regarding underlying facts, transactions, and documents upon which a SAR is based and not reveal the existence or non-existence of a SAR. On the other hand, where a document's discoverability is less than clear, the Court finds it appropriate for Defendants to produce a privilege log to the Receiver and subsequently engage in an exhaustive meet and confer. Should the Parties reach an impasse over the SAR privilege's applicability to a particular document, the Parties shall jointly contact this Court's Chambers within 30 days of the dispute arising and request this Court's *in camera* review.

### b. Defendants' Objections to RFPs 34 through 38

RFPs 34 through 38 are the second set of discovery requests at issue. Respectively, RFPs 34 through 37 seek to obtain documents and communications regarding (1) Defendants' account opening targets, incentives, goals, and metrics; (2) employee communications regarding account opening targets; (3) the number and type of new accounts Defendants opened each day; and (4) due diligence of customers who sought to open new accounts. (Doc. No. 29, Ex. 1, 9:21-24; 11:6-8; 12: 19-21; 14:4-7.) RFP 38 seeks to obtain documents and communications regarding Defendants' practice of "cross-selling business banking services and merchant processing services." (*Id.*, 5:17-20.)

The Receiver contends these RFPs are necessary to establish Defendants' knowledge of and motives to further the Enterprises' fraud. (Doc. No, 29, 5:14-16.) The Receiver explains these RFPs target records that will substantiate Defendants' efforts to cross-sell services to the Enterprises in violation of Defendants' own policies barring the solicitation of "merchant processing customers engaged in illegal businesses." (*Id.*, 5:20-25.)

Defendants wholly disagree and object on relevance and proportionality grounds. Defendants specify "documents related to generic sales incentive programs" are not probative of Defendants' intent to facilitate fraud to any extent, including, but not limited to, the Enterprises' schemes. (Doc. No. 28, 4:23-25.) To that end, Defendants caution the RFPs are relevant only to uncovering employees' motives to meet sales goals rather than effectuate fraud. (*Id.*, 5:17-22.) Finally, Defendants add the Receiver's RFPs here amount to a fishing expedition that is disproportionate to this case's needs. (*Id.*, 6: 6-8.)

As a threshold matter, the Court finds RFPs 34 through 38 are relevant. The common thread binding the Receiver's claims against Defendants is that Defendants knew about the Enterprises' fraud and, in the face of such knowledge, chose to open accounts for the Enterprises in furtherance of their fraud. RFPs 34 through 38 call upon Defendants to provide documents illuminating Defendants' efforts to cross-sell services to the Enterprises' benefit. If any exists, evidence of Defendants' efforts to cater to the Enterprises would provide insight into Defendants' motives to (1) cross-sell their services *in spite of* the Enterprises' misconduct or (2) more aggressively pursue cross sales *because of* the potentially lucrative nature of the Enterprises' misconduct. In either scenario, the Receiver's RFPs will yield documents bearing on Defendants' knowledge of the Enterprises' business schemes as well as Defendants' willingness or motive to participate in such schemes, or entire lack thereof. In light of the claims the Receiver brings against Defendants, and, for that matter, the affirmative defenses Defendant has asserted, the Court can solely conclude that the discovery requests are relevant.

Further, the Receiver appropriately calls attention to District Judge Burns' March 30, 2022 Order, which concluded "the Receiver's allegations relating to account opening targets and cross-selling of merchant processing services support his claims." (Doc. No. 20, 8-9, 14.) Judge Burns specified "the Complaint allege[d] *extraordinary* business transactions, including knowingly opening accounts with straw owners contrary to industry practice… [and] the role that Wells Fargo played in that fraud as the bank that allegedly opened the accounts and concealed their connections to Triangle and Apex is obvious."

(*Id.*, 10:20-11:1.) Through the looking glass of Judge Burns' Order, the image comes into full view for the Parties' discovery purposes here. The RFPs seek insight into Defendants' knowledge of the Enterprises' fraud and Defendants' motives to not only open accounts for the Enterprises but also cross-sell additional services to them.

Finally, the Court turns to Defendants' objection on proportionality grounds. As the party objecting to discovery, Defendants bear the burden of substantiating how the Receiver's instant RFPs exceed the needs of the case, which requires a showing of (1) the importance of the issues at stake; (2) the amount-in-controversy; (3) the Parties' relative access to the information and documents sought; (4) the Parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the Receiver's proposed discovery outweighs the discovery's benefit. Fed. R. Civ. Proc. 26(b)(1). Defendants fail to meet their burden here. They have not offered insight into any of Rule 26(b)(1)'s enumerated considerations, including, but not limited to, an estimate as to the hours of labor, costs, and fees reasonably required to meet the demands of the Receiver's document requests. Without such insight, the Court is left with no means to sustain the objection in Defendants' favor. As noted, explaining objections with factual specificity, particularly when asserting a proportionality objection, is incumbent upon the party contesting an RFP. Fed. R. Civ. Proc. 26(b)(1); *Medimpact Healthcare Sys., Inc.*, 2021 WL 5605281, at *2. Defendants have not done so here. Accordingly, the Court OVERRULES Defendants' objections to RFPs 34 through 38 and ORDERS Defendants to make their requisite document production **no later than 30 days from the date of this Order's issuance**.

### c. Defendants' Objections to RFP 45

RFP 45 is the next discovery request at issue. The RFP asks for all "documents and communications concerning [Defendants'] employment and/or personnel files for each Enterprise Banker," inclusive of records concerning employees' employment status, including performance reviews and resignation and termination letters, and the reasons underlying Defendants' termination decisions from July 1, 2008 through the present. (Doc.

No. 29, Exh. 1, 17:1-7.) The Receiver explains this discovery request is relevant because it will uncover evidence of Defendants' knowledge of the Enterprises' fraud and elucidate the extent of such knowledge. (Doc. No. 21, 7:19-24.) Defendants object to RFP 45 on three grounds, namely the request is (1) "extremely broad" as it would implicate hundreds of employees who had immaterial interactions with the Enterprises; (2) irrelevant as to documents not "specifically referenc[ing] compensation incentives or disciplinary action for assisting these specific Enterprise Entities and Individuals;" and (3) invasive of employees' privacy rights. (Doc. No. 28, 7:7-8; 24-26; 8:6-7.) The Court SUSTAINS IN PART AND OVERRULES IN PART Defendants' first and second objections and OVERRULES Defendants' third objection. In doing so, the Court first addresses the RFP's relevance and then examines each objection in turn.

As a foundational matter, the Court finds RFP 45 seeks relevant information. As discussed, Defendants' employees' knowledge of the Enterprises' fraud during the course of their employment with Defendants is directly pertinent to the Receiver's claims. Further, Defendants' awareness of their employees' assistance to the Enterprises for purposes of facilitating fraudulent business transactions would be reflected in disciplinary proceedings, up to and including termination, if any such proceedings took place. To that end, the records the Receiver seeks are relevant not only as to his claims against Defendants but also to Defendants' affirmative defenses, which include good faith conduct, contributory negligence, and comparative fault. (*See generally* Doc. No. 24.) Accordingly, the Court finds the Receiver has sufficiently demonstrated RFP 45's relevance to this litigation.

Notwithstanding the Court's finding of relevance, the Court concludes Defendants' first two objections are founded, albeit to varying extents. Accordingly, the Court SUSTAINS IN PART AND DENIES IN PART Defendants' overbreadth and relevance objections. As to Defendants' first objection regarding overbreadth, the Court agrees RFP 45 is overbroad as to which particular employees may be implicated in this request. As Defendants point out, the RFP conceivably encompasses employees who had one-time interactions with the Enterprises implicating immaterial subject matter; the personnel files

for such individuals would do nothing to advance the Receiver's claims or substantiate Defendants' affirmative defenses. Concurrently, however, the Receiver offers to limit the scope of RFP 45 to the 25 employees Defendants identified as document custodians and individuals who had the "most direct involvement with the Fraudulent Enterprises." (Doc. No. 29, 8:2-5.) The Court finds this proposed framework is consistent with both the relevance and proportionality considerations at play. The Receiver's willingness to limit the scope of the request to 25 employees who Defendants themselves identify as having the "most direct involvement" with the Enterprises strikes the right balance, as it aligns with Defendants' own determination regarding which specific employees had the most direct involvement with the Enterprises.

As to Defendants' second objection regarding relevance, the Court agrees RFP 45, as written, seeks to obtain the entirety of all personnel files for the employees who worked on the Enterprises' accounts. In doing so, the Court finds the RFP is inclusive of documents that would likely be irrelevant, such as copies of the employees' initial job applications and their medical records. Concurrently, and as explained, the bulk of the documents the Receiver seeks through RFP 45 is likely to illuminate what the employees directly involved with the Enterprises knew about the fraudulent schemes; Defendants' awareness of their employees' involvement, if any; and Defendants' responses to their employees' involvement, including, but not limited to, disciplinary action taken, if any. Accordingly, the Court ORDERS Defendants to produce personnel files for the 25 employees as discussed above, subject to the considerations outlined immediately below. Defendants shall produce the documents responsive to RFP 45 **<u>no later than 30 days from the date of this Order's issuance</u>**.

Finally, while it appreciates Defendants' privacy concerns over their employees' personal information as contained in their personnel files, the Court finds there is no basis to sustain Defendants' objection on such grounds. The Court's July 25, 2022 Order Granting the Parties' Joint Motion for Protective Order serves to assuage these concerns, particularly because the Parties' mutually fashioned and agreed to the Court's entry of their

proposed protective order. (Doc. No. 32.) Further, nothing stands in the way of Defendants to (1) apply redactions to sensitive employee information where appropriate, such as employees' social security numbers and information regarding their family members, or (2) entirely exclude from production certain documents that are plainly irrelevant to this litigation, such as medical records not related to any physical or mental health conditions that may have resulted from any employees' dealings with the Enterprises. The understanding that such limitations shall be imposed is reflected in the Receiver's briefing on this portion of the Parties' discovery dispute. (Doc. No. 29, 8:11-13.) Accordingly, the Court views this particular objection as one over a non-issue. As such, the Court OVERRULES Defendants' privacy objection.

### d. Defendants' Objections to RFPs 46 and 47

RFPs 46 and 47 are the fourth set of discovery requests at issue. RFP 46 seeks documents and communications involving Defendants' Board and senior management and the Enterprises from July 1, 2008 through the present. (*Id*., Exh. 1, 18: 25-28.) RFP 47 seeks documents and communications concerning the Defendants' Board and committee meetings regarding the Enterprises. (*Id*., 20:19-25.) The Receiver explains the RFPs are, again, necessary to show Defendants' knowledge of the Enterprises' fraudulent business practices and motives to sustain such practices in light of Defendants' knowledge. Defendants object on grounds that the RFPs are premature and disproportionate to the needs of the case. As to their prematurity objection, Defendants explain the information from the documents requested may be readily obtained through taking discovery on lower-ranking employees. Defendants add "there has been no showing that any high-level executives or senior management possessed 'unique or personal knowledge' of the schemes." (Doc. No. 29, 8:19-28.) As to their proportionality objection, Defendants argue the RFPs supply "no nexus between high-level executives with the conduct or events at issue in this case" and the bankers who the Receiver purports opened accounts for the Enterprises. (Doc. No. 28, 8:21-25.)

/ / /

As a threshold matter, the Court finds RFPs 46 and 47 are relevant to this litigation. The Court is not persuaded by Defendants' contention that executive-level employees are immune from knowing Defendants furthered the Enterprises' fraudulent business objectives, simply because Defendants' C-Suite did not personally open the Enterprises' accounts as Defendants' bankers did. If Defendants' suggestion bears out, that is for the Receiver to uncover throughout discovery, rather than an assumption the Receiver must accept as true from the outset of discovery. *In Re Nat'l W. Life Ins. Deferred Annuities Litig.*, 2011 WL 1304587 at *3 (S.D. Cal. Apr. 6, 2011) (rejecting party's bald assertion that management-level witnesses lacked knowledge regarding opposing party's discovery requests and commenting "if these gentlemen in fact do not have the requisite knowledge, that is something plaintiffs are entitled to explore and discover on their own.") ("*In Re Annuities Litigation*").

Notwithstanding the above, the Court SUSTAINS Defendants' objection to RFP 46 and OVERRULES Defendants' objection to RFP 47. As to RFP 46, courts generally require a party to take discovery on other lower-level employees before permitting discovery on apex officials to avoid duplicative discovery. *Symantec Corp. v. Acronis, Inc.*, 2013 WL 12184286, at *1 (N.D. Cal. Oct. 10, 2013). Here, the Receiver has repeatedly asserted factual allegations of Defendants' knowledge of and participation in furthering the Enterprises' fraud. However, the Receiver has not yet pointed to any discovery taken thus far from a lower-level employee that attributes such knowledge or participation onto Defendants' senior management. This showing must be made first before opening the door to the broad range of documents and communications the RFP calls for. Of course, the present circumstance does not mean that the Receiver is forever precluded from taking discovery from Defendants' Board or executive-level employees. That additional discovery may prove warranted later in the lifespan of the Parties' discovery efforts here, subject to a fact-specific showing on the Receiver's part.

///

///

RFP 47 leads to a different outcome because of the more tailored nature of the documents it seeks. RFP 47 specifically endeavors to obtain documents and communications concerning the Defendants' Board and related committee meetings regarding the Enterprises. (Doc. No. 29, 20:19-25.) Board and related committee meetings are inherently distinct from meetings lower-ranking employees attend in any corporate environment. Thus, the Court finds Defendants' executive-level employees would possess unique knowledge about the Enterprises that would not otherwise materialize from discovery taken from lower-level employees who do not, by definition, participate in Board and related committee meetings. In other words, Defendants need not engage in the duplicative discovery they fear to meet RFP 47's demands. Nothing prevents Defendants from identifying documents that are unique to the Board and Board's committees' own understandings of the Enterprises' business dealings with Defendants because such documents would not overlap with any documents or communications involving lower-level employees. Accordingly, if they at all exist, documents responsive to RFP 47 shall be produced **no later than 30 days from the date of this Order's issuance**.

### e. Defendants' Objections to RFPs 54 and 55

RFPs 54 and 55 are the last set of discovery requests at issue. RFP 54 seeks to obtain Defendants' document retention policies or procedures from July 1, 2008 through the present. (Doc. No. 29, Exh. 1, 23:1-7.) RFP 55 seeks to obtain documents and communications showing all means Defendants' employees "used to communicate relating to their work concerning the subject matter of this Action." (*Id*., 24:22-27.) The Receiver posits these RFPs are relevant because they will help identify sources of discoverable information germane to the Receiver's claims. Defendants counter the Receiver is not entitled to take "discovery on discovery" and cite to *Jensen* in support of their position.

As before, the Court begins with its relevance inquiry. In doing so, the Court finds both RFPs 54 and 55 are relevant to this litigation. The Receiver brings claims against Defendants for, most notably, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and aiding and abetting conversion. (*See generally* Doc. Nos. 1; 20.) The

relevance of establishing sources of information implicating the Receiver's claims cannot be overstated. Like any litigant who seeks to vindicate his claims, the Receiver needs to know where relevant documents may be found to define the boundaries of his search to prove his claims here. Defendants do not plainly address the matter. Instead, they shift their entire focus on *Jensen* in the hopes of salvation from these discovery requests.

The Court has studied *Jensen* and finds it does not help Defendants' cause. The *Jensen* discovery requests sought to obtain information "regarding [the defendant's] efforts to preserve relevant and discoverable information in this matter" as well as the defendant's "efforts to search for documents and information responsive to [the] plaintiff's discovery requests." *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. Jan. 15, 2019). Here, RFP 54 calls for Defendants' document retention policies. In turn, RFP 55 asks Defendants to identify sources of relevant information. Neither request seeks to pry into Defendants' document preservation or production efforts throughout the course of this litigation, which is what *Jensen*'s propounding party sought and what the *Jensen* court described as "discovery on discovery." (*Id.*) Thus, the *Jensen* discovery requests are markedly distinguishable from the Receiver's requests, and the Court finds no reason to sustain Defendants' objections to RFPs 54 and 55 on such basis.

To counter the Receiver's RFPs 54 and 55, Defendants asserted exclusively boilerplate objections, save their *Jensen* objection, and their briefing only addresses the *Jensen* objection. As discussed, the Court is unmoved by Defendants' "discovery on discovery" argument. Moreover, Defendants' other objections are not well taken. The Court strongly disfavors and has cautioned against its Rule IV and Appendixes A and B of the Court's Civil Chambers Rules and finds Defendants have made no effort, even during the briefing of this discovery dispute, to substantiate their blanket objections. The Court will not reward Defendants' failure to meet its obligations here. Accordingly, the Court OVERRULES Defendants' objections to the Receiver's RFPs 54 and 55.

/ / /

/ / /

### IV. CONCLUSION

Given the forgoing, the Court makes the following determinations:

- First, the Court SUSTAINS IN PART AND DENIES IN PART Defendants' objections to RFPs 23 through 26. **No later than 30 days from the date of this Order's issuance**, Defendants shall produce the documents and a privilege log in response to these RFPs.

- Second, the Court OVERRULES Defendants' objections to RFPs 34 through 38. **No later than 30 days from the date of this Order's issuance**, Defendants shall produce the documents responsive to this set of RFPs.

- Third, the Court SUSTAINS IN PART AND DENIES IN PART Defendants' overbreadth and relevance objections to the Receiver's RFP 45, and OVERRULES Defendants' privacy objection. **No later than 30 days from the date of this Order's issuance**, Defendants shall produce the 25 "directly involved" employees' personnel files subject to the protections discussed above.

- Fourth, the Court SUSTAINS Defendants' objection to RFP 46 and OVERRULES Defendants' objection to RFP 47. **No later than 30 days from the date of this Order's issuance**, Defendants shall produce documents responsive to RFP 47.

- Fifth, and finally, the Court OVERRULES RFPs 54 and 55. **No later than 30 days from the date of this Order's issuance**, Defendants shall produce documents responsive to both RFPs.

Consistent with the Court's guidance and instructions above, Defendants shall make their document and privilege log productions to the Receiver **no later than 30 days of the date of this Order's issuance**.

IT IS SO ORDERED.

Dated: July 29, 2022

Hon. William V. Gallo
United States Magistrate Judge