**MCGUIREWOODS LLP**
DAVID C. POWELL SBN #129781
dpowell@mcguirewoods.com
ALICIA A. BAIARDO SBN #254228
abaiardo@mcguirewoods.com
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

**MCGUIREWOODS LLP**
MOLLY M. WHITE SBN #171448
mwhite@mcguirewoods.com
ANTHONY Q. LE SBN #300660
ale@mcguirewoods.com
1800 Century Park East
8th Floor
Los Angeles, CA 90067-1501
Telephone: 310.315.8200
Facsimile: 310.315.8210

*Attorneys for Defendants*
*Wells Fargo & Company and Wells Fargo Bank, N.A.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS W. MCNAMARA, as the Court-Appointed Receiver for Triangle Media Corporation, Apex Capital Group, LLC; and their successors, assigns, affiliates, and subsidiaries,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY, a corporation, WELLS FARGO BANK, N.A., a national banking association,<br><br>Defendants. | LEAD CASE NO. 3:21-cv-01245-TWR-DDL [Consolidated with 3:21-cv-01246-TWR-DDL]<br><br>Honorable Todd W. Robinson<br><br>**JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS**<br><br>**Date:** August 22, 2024<br>**Time:** 1:30 P.M.<br>**Courtroom:** 14A |

Pursuant to Local Rule 7.1(f)(1) of the United States District Court for the Southern District of California and Section 6 of District Judge Robinson's Standing Order in Civil Cases, Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. ("Wells Fargo") and Plaintiffs Thomas W. McNamara, as the Court–Appointed Receiver for Triangle Media Corporation, Apex Capital Group, LLC, and their successors and assigns, affiliates, and subsidiaries (the "Receiver"), Plaintiffs John McCraner, Sharon Stiansen, Janet Pollard, Michael Darlington, Susan Landreau, and John Tuffield ("Named Plaintiffs") submit this Joint Statement of Undisputed Material Facts in connection with Wells Fargo's Motions for Summary Judgment under Federal Rule of Civil Procedure 56, and the Parties agree that no dispute exists as to the following facts:

**The Tarr Enterprise**

1.  On October 3, 2017, the Federal Trade Commission ("FTC") brought an enforcement action against Corporate Defendants Tarr Inc., Ad Kings LLC, Apex Advertising LLC, Brand Development Corp., Coastal Ads LLC, Delux Advertising LLC, Diamond Ads LLC, Digital Nutra LLC, Exclusive Advertising LLC, Iron Ads, LLC, LeadKing Advertising LLC, Lead Seeker, LLC, Mints Marketing LLC, Onyx Ads, LLC, Product Center, LLC, Rebem, LLC, Supertiser LLC, Verticality Advertising, LLC, White Dog Marketing, LLC ("Tarr Defendants") and individual defendants Richard Fowler, Ryan Fowler, and Nathan Martinez ("Tarr Principals"). Wells Fargo's Request for Judicial Notice ("RJN") Ex. A[1] (Complaint, *FTC v. Tarr, Inc., et al.*, Case No. 3:17-cv-02024-KSC (S.D. Cal. Oct. 3, 2017) ("Tarr"), ECF No. 1 ("Tarr Action")).

2.  On November 14, 2017, the Tarr court entered a permanent injunction and stipulated judgment imposing equitable monetary relief against the Tarr

---

[1] All exhibits noted as "RJN Ex." refer to the exhibits attached to Wells Fargo's Request for Judicial Notice filed on June 10, 2024. ECF No. 305-10.

1  Principals and Tarr Defendants for $179,000,000. RJN Ex. B (Stipulated Order for
2  Permanent Injunction and Permanent Monetary Judgment Against All Defendants,
3  Tarr, ECF No. 7) at 27. Defendants were ordered to pay $6,381,245, with the
4  remainder of the judgment against these defendants suspended, with the suspension
5  of the judgment "to be lifted as to any Defendant if, upon motion by the Commission,
6  the Court finds that Defendant failed to disclose any material asset, materially
7  misstated the value of any asset, or made any other material misstatement or
8  omission in the financial representations identified above." *Id.* at 27-28 & 35.

9        3.      No Receiver was appointed in the Tarr Action. *See generally* Docket,
10 *FTC v. Tarr Inc., et al.*, No. 3:17-cv-02024-KSC (S.D. Cal. Oct. 3, 2017).

11       4.      The docket in the Tarr Action does not have any filings from the FTC
12 attempting to lift the suspended judgments as to any Tarr Principal or Defendant.
13 *See id.*

14 **The Triangle Enterprise**

15       5.      On June 25, 2018, the FTC brought an enforcement action against Brian
16 Phillips and Devin Keer ("Triangle Principals"), as well as related companies,
17 including Triangle Media Corporation, Jasper Rain Marketing, LLC, Hardwire
18 Interactive, Inc., and Global Northern Trading Limited ("Triangle Defendants").
19 RJN Ex. C (Complaint, *FTC v. Triangle Media Corp., et al.*, Case No. 18–cv–1388–
20 LAB–LL (S.D. Cal. Jun. 25, 2018) ("Triangle"), ECF No. 1 ("Triangle Action")).

21       6.      The Triangle court appointed Thomas W. McNamara as the Receiver
22 over the "Receivership Entities" as defined in the Triangle TRO. RJN Ex. D (*Ex
23 Parte* Temporary Restraining Order ("Triangle TRO"), Triangle, ECF No. 11) at 4–
24 5, 8, 18–23, 25.

25       7.      The Triangle TRO sets forth the scope, duties, and authority of the
26 Receiver, including designating the Receiver with full powers of an equity receiver,

serving as the sole agent for the court, which asserted "exclusive jurisdiction" over the Receiverships' assets. Triangle TRO at 18–23, 25.

8.  In the Triangle TRO, the Court directed and authorized the Receiver "to sue for, collect, and receive, all Assets of the Receivership Entities and of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Entities." *Id*. at 19.

9.  In the Triangle Action, the court entered stipulated judgments against the defendants. Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips were ordered to pay the FTC $399,795.00, with the remainder of the judgment against these defendants suspended, with the suspension to be "lifted as to the Settling Defendant if, upon motion by the Commission, the Court finds that the Settling Defendant failed to disclose any material Asset, materially misstated the value of any Asset, or made any other material misstatement or omission in the financial representations identified above." RJN Ex. E ([Modified] Stipulated Order for Permanent Injunction and Monetary Judgment as to defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips Triangle Phillips Modified Stipulated Judgment, Triangle, ECF No. 126) at 12–15.

10.  Hardwire Interactive Inc., Global Northern Trading Ltd., and Devin Keer were ordered to pay the FTC $3,027,388.36, with the remainder of the judgment against these defendants suspended, with the suspension to be "lifted as to the Settling Defendant if, upon motion by the Commission, the Court finds that the Settling Defendant failed to disclose any material Asset, materially misstated the value of any Asset, or made any other material misstatement or omission in the financial representations identified above." RJN Ex. F ([Modified] Stipulated Order for Permanent Injunction and Monetary Judgment as to defendants Hardwire Interactive, Inc., Global Northern Trading Limited, and Devin Keer Triangle Keer Modified Stipulated Judgment, Triangle, ECF No. 127) at 11–13.

11. The Triangle Stipulated Judgments do not contain an admission of guilt by any of the settling parties, and they contain language that that the settling parties "neither admit[] nor den[y] the allegations in the FTC's Complaint, except as specifically stated in this Order." RJN Ex. E at 2; RJN Ex. F at 2.

12. The docket in the Triangle Action does not have any filings from the FTC attempting to lift the suspended judgments as to any Triangle Principal or Defendant. Baiardo Decl., Ex. 1[2] (Triangle Action Docket Report).

13. On October 22, 2019, the Receiver filed a motion in the Triangle action requesting permission to engage contingency counsel to pursue litigation against Wells Fargo. Memorandum of Points and Authorities in Support of Receiver's Motion for Authorization to Engage Contingent Fee Counsel at 1 ("Triangle Receiver's Motion to Engage Contingency Counsel"), Triangle, ECF No. 136–1.

**The Apex Enterprise**

14. On November 14, 2018, the FTC brought an enforcement action against defendants Phillip Peikos and David Barnett ("Apex Principals") and Apex Capital Group, LLC, Omni Group Limited, Capstone Capital Solutions Limited, Clik Trix Limited, Empire Partners Limited, Interzoom Capital Limited, Lead Blast Limited, Mountain Venture Solutions Limited, Nutra Global Limited, Rendezvous IT Limited, Sky Blue Media Limited, Tactic Solutions Limited ("Apex Defendants"). RJN Ex. G (Complaint, *FTC v. Apex Capital Group, LLC, et al.*, Case No. 18–cv–9573–JFW (JPRx) (C.D. Cal. Nov. 14, 2018) ("Apex"), ECF No. 1 ("Apex Action")).

15. The Apex Court appointed Thomas W. McNamara as the Receiver over the "Receivership Entities" as defined in the Apex TRO. RJN Ex. H (*Ex Parte*

---

[2] All exhibits noted as "Baiardo Decl." refer to the exhibits attached to the Declaration of Alicia A. Baiardo in support of Wells Fargo's Motion for Summary Judgment or Partial Summary Judgment filed on June 10, 2024. ECF No. 305-1.

4
JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS
CASE NO. 3:21–cv–01245–TWR–DDL

Temporary Restraining Order Ex. 1, Apex, ECF No. 16 ("Apex TRO")) at 4–5, 8, 18–19.

16. The Apex TRO sets forth the scope, duties, and authority of the Receiver, including designating the Receiver with full powers of an equity receiver, serving as the sole agent for the court, which asserted "exclusive jurisdiction" over the Receiverships' assets. *Id.* at 18–23, 26.

17. The Apex TRO directed and authorized the Receiver to: "Conserve, hold, manage, and prevent the loss of all Assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those Assets." It also ordered that the Receiver "shall have full power to sue for, collect, and receive, all Assets of the Receivership Entities and of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Entities. Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's debt to the Receivership Entities has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval." *Id.* at 19, 21.

18. On February 4, 2020, the Receiver filed a motion in the Apex Action requesting permission to engage contingency counsel to pursue litigation against Wells Fargo. Receiver's Notice of Motion and Motion for Authorization to Engage Contingent Fee Counsel at 1, Apex, ECF No. 144 ("Apex Receiver's Motion to Engage Contingency Counsel").

19. On March 9, 2020, the Apex court granted the Receiver's Motion for Authorization to Engage Contingent Fee Counsel in the Receiver's litigation against Wells Fargo and Company. Order Approving Receiver's Motion for Authorization to Engage Contingent Fee Counsel, Apex, ECF No. 153 ("Apex Order Authorizing Contingency Counsel").

20. In the Apex Action, the court entered stipulated judgments against the defendants. In the Apex Action, the monetary judgment in the amount of $47,300,000 against defendant David Barnett was partially satisfied with the remainder of the judgment suspended, and the suspension to be "lifted as to the Settling Defendant if, upon motion by the Commission, the Court finds that the Settling Defendant failed to disclose any material Asset, materially misstated the value of any Asset, or made any other material misstatement or omission in the financial representations identified above." RJN Ex. I (Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendant David Barnett, Apex, ECF No. 120) at 22–24.

21. In the Apex Action, the monetary judgment against defendants Philip Peikos, Apex Capital Group, LLC, Capstone Capital Solutions Limited, Clik Trix, Limited, Empire Partners Limited, Interzoom Capital Limited, Lead Blast Limited, Mountain Venture Solutions Limited, Nutra Global Limited, Omni Group Limited, Rendezvous IT Limited, Sky Blue Media Limited, and Tactic Solutions Limited in the amount of $60,300,000 was partially satisfied with the remainder of the judgment suspended, and the suspension to be "lifted as to the Settling Defendant if, upon motion by the Commission, the Court finds that the Settling Defendant failed to disclose any material Asset, materially misstated the value of any Asset, or made any other material misstatement or omission in the financial representations identified above." RJN Ex. K (Stipulated Order for Permanent Injunction and Monetary Judgment between the FTC and Defendants Philip Peikos, Apex Capital Group, et al., Apex, ECF No. 121) at 22–32.

22. The Apex Stipulated Judgments do not contain an admission of guilt by any of the Defendants, and they contain language that the Settling Defendants "neither admit[] nor den[y] the allegations in the Complaint, except as specifically stated in this Order." RJN Ex. I at 2 RJN Ex. K at 2.

23. The Apex docket does not have any filings from the FTC attempting to lift the suspended judgments as to any Apex Defendant. Baiardo Decl., Ex. 3 (Apex Action Docket Report).

***Wells Fargo Moved to Intervene in the FTC Apex and FTC Triangle Case***

24. On January 18, 2022, Wells Fargo moved to intervene in the Apex Action to challenge the district court's order permitting the Receiver to pursue litigation against Wells Fargo. Apex, ECF No. 219. On November 10, 2021, Wells Fargo moved to intervene in the Triangle Action. Triangle, ECF No. 153. The court denied both motions. Apex, ECF No. 238; Triangle, ECF No. 176.

***Other Facts Regarding the Tarr, Triangle, and Apex Enterprises***

25. Pursuant to Civil Local Rule 40.1.f-g, the FTC Tarr, Triangle, and Apex Actions are related to the *McNamara* Action and *McCraner* Action and marked as related on the dockets. *McNamara* Action, ECF No. 2; *McCraner* Action, ECF No. 2.

26. All Named Plaintiffs received physical product(s) from one of the Enterprise Businesses. Baiardo Decl., Ex. 46 (April 27, 2023 Deposition of Janet Pollard) at 19:18–19; Baiardo Decl., Ex. 49 (April 13, 2023 Deposition of Sharon Stiansen) at 14:9–17; Baiardo Decl., Ex. 52 (April 17, 2023 Deposition of John McCraner) at 63:9–17; Baiardo Decl., Ex. 54 (January 18, 2024 Deposition of Tuffield) at 96:8–23; Baiardo Decl., Ex. 56 (January 19, 2024 Deposition of Darlington) at 75:4–11; Baiardo Decl., Ex. 57 (January 29, 2024 Deposition of Susan Landreau) at 45:1–22.

27. All Named Plaintiffs received at least a partial refund or chargeback of what they paid for the products. Baiardo Decl., Ex. 56 (Darlington Deposition Exhibit 1032) at 73:5–79:23; Baiardo Decl., Ex. 58 (January 29, 2024 Deposition of Susan Landreau) at 45:10–46:10; Baiardo Decl., Ex. 52 (April 17, 2023 Deposition of John McCraner) at 60:9–12, 60:13–25; Baiardo Decl., Ex. 46 (April 27, 2023

Deposition of Janet Pollard) at 95:25–96:13; Baiardo Decl., Ex. 51 (January 18, 2024 Deposition of Stiansen) at 54:23–58:2.

28. Devin Keer received coaching from a third party to avoid detection from VISA and MasterCard. Baiardo Decl., Ex. 64 (REC_0002098198–99).

29. JPMorgan Chase Bank's corporate designee testified that it is "not [n]ecessarily" an "unusual" practice of Chase customers to put initial deposits of $100 to open a business banking account and increase the balance within months. Baiardo Decl., Ex. 42-1 (Deposition of Eulalia Salgado) at 69:1–70:5.

30. JPMorgan Chase Bank's corporate designee testified that depending on the business of the Chase customer, such as having vendor suppliers outside the country, "for some people it could be normal" to wire money internationally, or to individuals, "depend[ing] on like the business – the type business that they're in, if that's mainly how they're paying their vendors." Baiardo Decl., Ex. 42-1 (Deposition of Eulalia Salgado) at 70:7–23.

31. JPMorgan Chase Bank's corporate designee testified that in her experience, it is not unusual "for the person who's the authorized signer on a demand deposit account to be different from the beneficial owner of that same account." Baiardo Decl., Ex. 42-1 (Deposition of Eulalia Salgado) at 80:7–11.

32. JPMorgan Chase's Bank's corporate designee testified that a customer with an existing account would have to come into the bank in person to open a new account. Rotter Decl., Ex. 279 (Deposition of Eulalia Salgado) at 81:19-23.

33. JPMorgan Chase's Bank's corporate designee testified "[i]f somebody is a signer but they're not a member or manager and they are not present, then wouldn't be able to open the account" and a new owner would need "to come in and be physically present at Chase before they could be added as an owner" on an already existing account. Rotter Decl., Ex. 279 (Deposition of Eulalia Salgado) at 133:6-15; 134:16-135:1.

1   34.    JPMorgan Chase's Bank's corporate designee testified that "[s]igners
2  can't open LLC accounts if they're not a member manager, so a signer wouldn't be
3  able to." Rotter Decl., Ex. 279 (Deposition of Eulalia Salgado) at 138:2-3.

4   35.    "Section 314(b) of the USA PATRIOT Act…permits banks, other
5  financial institutions, and associations of financial institutions, located in the United
6  States, to transmit, receive, or otherwise share information with any other financial
7  institution or association of financial institutions regarding individuals…
8  [or]…entities…for purposes of identifying, and where appropriate, reporting
9  activities that the financial institution or association suspects may involve possible
10 ML [money laundering] or terrorist activity." Rotter Decl., Ex. 199 at 5 (July 2023
11 FFIEC BSA/AML Examination Manual, "Special Information Sharing Procedures
12 To Deter Money Laundering And Terrorist Activity") at 5.



26  38.    Ms. Witkowicki testified that she could withdraw funds from the Wells
27 Fargo accounts she was listed as the owner of, but that was not the "deal" she had

1  with Brian Phillips, pursuant to which her understanding was the money belonged
2  to Phillips. Baiardo Decl., Ex. 37 (Deposition Transcript of Brittany Witkowicki) at
3  77:13–19, 85:11–86:1, 145:18–146:12.

4    39.    Tarr Principal Richard Fowler testified that he estimated about $2.4
5  million was spent on Tarr call center employee's salaries in 2013. Baiardo Decl., Ex.
6  60 (Deposition of Richard Fowler) at 63:14-65:13.

DATED: July 22. 2024    **MCGUIREWOODS LLP**

By: */s/ Alicia A. Baiardo*
DAVID C. POWELL SBN #129781
dpowell@mcguirewoods.com
ALICIA A. BAIARDO SBN #254228
abaiardo@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111–3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

MOLLY M. WHITE SBN #171448
mwhite@mcguirewoods.com
ANTHONY Q. LE SBN #300660
ale@mcguirewoods.com
1800 Century Park East
8th Floor
Los Angeles, CA 90067–1501
Telephone: 310.315.8200
Facsimile: 310.315.8210

*Attorneys for Defendants*
*Wells Fargo & Company and Wells*
*Fargo Bank N.A.*

| | | |
|---|---|---|
| 1 | DATED: July 22. 2024 | **GLANCY PRONGAY & MURRAY LLP** |
| 2 | | |
| 3 | | By: */s/ Jonathan M. Rotter* |
| 4 | | Jonathan M. Rotter |
| | | Garth Spencer |
| 5 | | 1925 Century Park East, Suite 2100 |
| 6 | | Los Angeles, CA 90067 |
| | | Telephone: 310.201.9150 |
| 7 | | Facsimile: 310.201.9160 |
| 8 | | jrotter@glancylaw.com |
| | | gspencer@glancylaw.com |
| 9 | | |
| 10 | | MCNAMARA SMITH LLP |
| | | Logan D. Smith |
| 11 | | 655 West Broadway, Suite 900 |
| 12 | | San Diego, California 92101 |
| | | Telephone: 619–269–0400 |
| 13 | | Facsimile: 619–269–0401 |
| 14 | | lsmith@mcnamarallp.com |
| 15 | | *Attorneys for Receiver Thomas W. McNamara* |

# CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024 I electronically filed the foregoing document entitled **JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS** with the Clerk of the Court for the United States District Court, Southern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

*/s/ Alicia A. Baiardo*
Alicia A. Baiardo