JONATHAN M. ROTTER (#234137)
  *jrotter@glancylaw.com*
MELISSA C. WRIGHT (#291120)
  *mwright@glancylaw.com*
GARTH SPENCER (#335424)
  *gspencer@glancylaw.com*
GREGORY B. LINKH (*pro hac vice*)
  *glinkh@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

*Attorneys for the Class Plaintiffs*
*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS W. MCNAMARA, as the Court-Appointed Receiver for Triangle Media Corporation, Apex Capital Group, LLC; and their successors, assigns, affiliates, and subsidiaries, | Lead Case No. 3:21-cv-1245-TWR-DDL [Consolidated with Case No. 3:21-cv-1246-TWR-DDL] |
| Plaintiff, | **CLASS PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| WELLS FARGO & COMPANY, a corporation, WELLS FARGO BANKS, N.A., a national banking association, | Date:    November 20, 2025 Time:    2:00 p.m. Crtrm.:   14A |
| Defendants. | |
| JOHN MCCRANER, SHARON STIANSEN, JANET POLLARD, MICHAEL DARLINGTON, SUSAN R. LANDREAU, JOHN N. TUFFIELD, individually and on behalf of all similarly situated, | Judge:   Todd W. Robinson |
| Plaintiffs, | |
| v. | |
| WELLS FARGO & COMPANY, a corporation, WELLS FARGO BANKS, N.A., a national banking association, | |
| Defendants. | |

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................1

II.   SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ...............3

    A.   Nature Of The Action ......................................................3

    B.   Underlying FTC Lawsuits, Plaintiffs' Investigation, And Pre-Litigation Mediation Efforts ...................................................4

    C.   Plaintiffs' Complaints, Defendants' Motions To Dismiss And The Consolidation Motion ..................................................5

    D.   Pre- And Post-Consolidation Fact And Expert Discovery ...................6

    E.   Pre- And Post-Consolidation Summary Judgment Motions, Class Certification, And Settlement .................................................7

III.  STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)....9

IV.   ARGUMENT ........................................................................10

    A.   The Settlement Is Fair, Reasonable, And Adequate In Light Of The Rule 23(e)(2) Factors And The Remaining *Hanlon* Factors .........................10

        1.   Class Plaintiffs And Class Counsel Adequately Represented The Class .........................................................10

        2.   The Settlement is the Result of Arm's-Length Negotiations .....11

        3.   The Settlement Is A Fair And Adequate Result Considering The Benefits Of The Settlement And The Risks Of Continued Litigation ........................................................12

            (a)   The Strength Of Class Plaintiffs' Case And The Risk Of Continued Litigation .............................................12

            (b)   Risks of Maintaining Class Action Status .........................13

        4.   Rule 23(e)(2)(C)(ii)-(iv) ...........................................14

        5.   The Settlement Treats All Class Members Equitably Relative To Each Other .....................................................16

i

6.    The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval ..........................................................16

B.    Class Certification is Appropriate for Settlement Purposes ................19

1.    The Class is Sufficiently Numerous ..........................................20

2.    Common Questions of Law or Fact Exist ..................................20

3.    Plaintiffs' Claims Are Typical Of Those Of The Class ............21

4.    Class Plaintiffs and Class Counsel Adequately Represented the Class..........................................................................................21

5.    The Predominance and Superiority Requirements Are Satisfied ......................................................................................22

6.    The Court Should Appoint GPM As Class Counsel ..................22

7.    The Court Should Approve the Proposed Form and Method of Notice..........................................................................................23

V.    PROPOSED SCHEDULE OF EVENTS .......................................................24

VI.    CONCLUSION .............................................................................................25

# **TABLE OF AUTHORITIES**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................19, 22

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  133 S. Ct. 1184 (2013)................................................................................21

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
  270 F.R.D. 488 (N.D. Cal. 2010) ...............................................................20

*Carlin v. DairyAmerica, Inc.*,
  380 F.Supp.3d 998 (E.D. Cal. 2019) ..........................................................15

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  258 F.R.D. 545 (N.D. Ga. 2007) ...........................................................15, 16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..............................................................*passim*

*Harris v. Palm Springs Alpine Ests., Inc.*,
  329 F.2d 909 (9th Cir. 1964) ......................................................................20

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018).............................................17

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
  2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ...............................................21

*In re Diamond Foods, Inc., Sec. Litig.*,
  295 F.R.D. 240 (N.D. Cal. 2013) ...............................................................21

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)......................................................14

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ........................................................................15

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015)................................................................16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. L*iab. Litig.,
229 F. Supp. 3d 1052 (N.D. Cal. 2017)..............................................................19

*In re Xcel Energy, Inc., Sec., Deriv. & "ERI*SA" Litig.,
364 F. Supp. 2d 980 (D. Minn. 2005)..................................................................13

*Jaffe v. Morgan Stanley & Co., Inc.*,
2008 WL 346417 (N.D. Cal. Feb. 7, 2008).........................................................19

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017).................................................................12

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) ...............................................10, 22

*Montera v. Premier Nutrition Corp.*,
111 F.4th 1018 (9th Cir. 2024)............................................................................13

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982)...............................................................................17

*Reid v. I.C. Sys. Inc.*,
795 F. App'x 509 (9th Cir. 2019).........................................................................15

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...............................................................................12

*Selk v. Pioneers Mem'l Healthcare Dist.*,
159 F. Supp. 3d 1164 (S.D. Cal. 2016) ...............................................................18

*Siemer v. Assocs. First Cap. Corp.*,
2001 WL 35948712 (D. Ariz. March 30, 2001)...................................................20

*Stewart v. Applied Materials, Inc.*,
2017 WL 3670711 (N.D. Cal. Aug. 25, 2017)......................................................18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .............................................................................19

iv

**STATUTES**

Cal. Penal Code § 496 .............................................................................. 3, 13

**RULES**

Federal Rule of Civil Procedure 23 ................................................ *passim*

# NOTICE OF UNOPPOSED[1] MOTION
## FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 20, 2025, at 2:00 p.m., in Courtroom 14A, or as soon thereafter as the matter may be heard, plaintiffs John McCraner, Janet Pollard, Sharon Stiansen, Michael Darlington, Susan R. Landreau, and John Tuffield (collectively "Class Plaintiffs") will and hereby move the Honorable Todd W. Robinson, United States District Judge, at the United States District Court for the Southern District of California, 333 W. Broadway, San Diego California, 92101, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing For Notice submitted herewith.

As set forth in the memorandum of points and authorities, in accordance with Federal Rule of Civil Procedure 23(e), the proposed Settlement is fair, reasonable, and adequate, such that notice of the Settlement's terms is appropriate and may be disseminated to members of the proposed Class. Accordingly, Class Plaintiffs request that the Court: (i) grant preliminary approval of the proposed Settlement of this Action on the terms set forth in the Stipulation and Agreement of Settlement dated June 25,

---

[1] Wells Fargo does not oppose preliminary approval of the class settlement, but reserves its rights to respond, as needed and if at all, to Class Plaintiffs and the Receiver's forthcoming motion or application for attorneys' fees and litigation expenses after having an opportunity to review it.

2025 (the "Class Agreement");[2] (ii) certify the proposed Class;[3] (iii) approve the form and manner of giving notice of the proposed Settlement to the Class Members; and (iv) set a hearing date ("Final Approval Hearing") at which the Court will consider (a) final approval of the proposed Settlement and entry of the proposed Judgment Approving Class Action Settlement, (b) the Plan of Allocation of settlement proceeds, and (c) Class Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses.

---

[2] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Class Agreement, attached as Exhibit 1 to the accompanying Declaration of Jonathan M. Rotter in Support of Class Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Rotter Declaration"). Unless otherwise noted, all references to "Ex. __" are to exhibits to the Rotter Declaration and all references to "ECF __" are to *McNamara v. Wells Fargo & Co., et al.*, Case No. 3:21-cv-01245-TWR-DDL ("*McNamara* Action").

[3] The Class means all persons who were enrolled in recurring billing by any of the Tarr Entities, Triangle Entities or Apex Entities from 2009 to present. Class Agreement ¶1(h). Excluded from the Class are Defendants and present and former officers and directors of Wells Fargo. *Id.* Also excluded are any persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

After nearly four years of hotly-contested litigation, the Parties reached a global agreement to settle this Action and the consolidated *McNamara* Action for a non-reversionary cash payment of $33 million for the benefit of the Class and the Receivership estates in the Triangle Action and the Apex Action.[4] The Settlement is inherently fair, reasonable, and adequate because it: (i) is the product of good-faith, arms'-length negotiations between experienced counsel, facilitated by multiple mediators including Magistrate Judge Leshner, following extensive litigation, (ii) does not grant preferential treatment to Class Plaintiffs or any other Class Member, and (iii) confers a substantial recovery to Class Members.

If approved, the Settlement will resolve all claims brought by both Class Plaintiffs and the Receiver against Defendants in the consolidated cases, which, while partially overlapping, each asserted certain unique claims involving distinct evidence.[5] Both cases sought recovery to benefit consumers of Apex, Triangle, and Tarr in the Class Action and Apex and Triangle in the Receiver Action. While Class Plaintiffs and the Receiver achieved significant efficiencies by coordinating both cases pre- and post-consolidation, a significant amount of unique work was required in each.

The Settlement represents an excellent result for the Class and should be approved by this Court, especially given the risks, costs, and delays of continued litigation. Before signing the Class Agreement, Class Counsel had, *inter alia*:

---

[4] The Parties to the consolidated action include Class Plaintiffs, Thomas W. McNamara, acting in his capacity as the Court-appointed Receiver for both Apex and related entities and Triangle and related entities (the "Receiver"), and Defendants.

[5] On January 4, 2024, the Court consolidated the *McNamara* Action and *McCraner et al. v. Wells Fargo & Co., et al.*, Case No. 3:21-cv-01246-TWR-DDL ("*McCraner* Action"), for all pre-trial purposes. ECF 220.

- participated in pre-litigation mediation by exchanging substantial mediation statements and attending two all-day mediation sessions with two experienced and highly-respected mediators of complex class actions;

- conducted a comprehensive investigation into the alleged claims, which involved, *inter alia*, analyzing voluminous business records from two of the underlying fraudulent enterprises, and which culminated in two detailed complaints (*McCraner* Action, ECF 23, the "Class Complaint;" ECF 221, the "Receiver Complaint");

- opposed two motions to dismiss the *McCraner* Action, partially defeating one, opposed and defeated Defendants' motion to strike class allegations, and opposed a motion to consolidate the *McNamara* and *McCraner* Actions;

- vigorously pursued pre- and post-consolidation fact discovery, which included, among other things, serving and responding to written discovery, countless meet and confers and related correspondence, producing nearly 10,000 pages of documents from Class Plaintiffs in response to Defendants' discovery requests, reviewing and analyzing more than a million documents produced in the litigation, and taking approximately 21 depositions and defending the six Class Plaintiff depositions;

- engaged in motion practice on a variety of discovery issues including: (i) the applicability of the SAR privilege, (ii) applicability of the apex doctrine to three high-ranking Wells Fargo employees, (iii) scope and location of Rule 30(b)(6) depositions, (iv) document production disputes, (v) certain document disputes related to a Class Plaintiff, and (vi) length/scope of post-consolidation expert depositions, all of which resulted in frequent discovery conferences before Magistrate Judge Leshner;

- conducted pre- and post-consolidation expert discovery, which included proffering two rounds of opening and rebuttal reports from experts in forensic accounting, bank regulation, and consumer marketing, defending the depositions of all Plaintiffs' proffered experts, and taking the depositions of Defendants' experts;

- opposed two separate motions for summary judgment (one before and one after consolidation), and in connection with those oppositions, identified and submitted evidence, and prepared for, and participated in, a hearing on Defendants' second motion;

- filed and briefed Class Plaintiffs' motion for class certification and, in connection with that motion, defended the deposition of each proposed class representative, and prepared for, and participated in, a hearing in this Court on the class certification motion;

- engaged in additional extensive arms'-length negotiations with Defendants facilitated by the assigned Magistrate Judges, which included participating in two day-long mediation sessions that with Magistrate Judge Leshner's assistance, ultimately resulted in a settlement of the case for $33 million in December 2024; and

- negotiated and executed a global settlement that resolved the claims in both the Receiver Action and Class Action—a process that took nearly six months—as set forth in the Class Agreement and the Receiver Agreement.

Thus, the $33 million Settlement is the result of arm's-length negotiations conducted by experienced counsel, with the assistance of a well-respected private mediator, with the assistance of Judge Leshner, and with sufficient information to evaluate the Settlement in light of the risks and uncertainties of continued litigation. The Settlement as to the Receiver's claims has already been approved by Judge Walter in the Apex Action, and by this Court in the Triangle Action. As set forth herein, the Settlement as to Class Plaintiffs' claims warrants preliminary approval by this Court so that notice can be distributed to Class Members and a hearing can be scheduled to consider final approval of the Settlement as to the Class.

## II.    SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

### A.    Nature Of The Action

Class Plaintiffs asserted claims on behalf of the Class against Wells Fargo and allege that the bank (i) aided and abetted Apex Capital Group, LLC ("Apex"), Triangle Media Corporation ("Triangle"), and Tarr Inc. ("Tarr"), (ii) conspired with Apex, Triangle, and Tarr to commit fraud, and (iii) violated Cal. Penal Code § 496.

Class Plaintiffs allege that, with Defendants' assistance, Apex, Triangle, and Tarr, along with their related entities, deposited and laundered money they obtained from consumers through deceptive "sales" of, *inter alia*, nutraceutical products, through Wells Fargo accounts. Plaintiffs allege that while Apex, Triangle, and Tarr defrauded consumers into monthly subscriptions and products, Wells Fargo assisted the fraudulent enterprises by opening numerous business deposit accounts for dozens

of Apex-, Triangle-, and Tarr-related companies and transferring millions of wrongfully obtained dollars into their third-party bank accounts.

## B. Underlying FTC Lawsuits, Plaintiffs' Investigation, And Pre-Litigation Mediation Efforts

The FTC initiated separate enforcement actions against Tarr, Triangle, and Apex on October 3, 2017, June 25, 2018, and November 14, 2018, respectively.[6] The FTC alleged, among other things, that Tarr, Triangle, and Apex each engaged in unfair and deceptive business practices related to selling nutraceutical products online, improperly upsold unwanted products, employed obstacles to consumers seeking a refund or cancellation, and employed telemarketers to contact consumers who had yet to complete a purchase. While no receiver was appointed in the *Tarr* Action, the courts in both the *Triangle* Action and the *Apex* Action directed and authorized the Receiver to sue for, collect, and receive, all assets for Apex, Triangle, and their related entities. *Triangle* Action, ECF 11 at 19; *Apex* Action, ECF 41 at 19, 21.

As stated above, both the Class and the Receiver sought recovery to benefit consumers: the Class directly on behalf of Apex, Triangle, and Tarr consumers and the Receiver on behalf of Apex and Triangle consumers through the FTC's remediation programs.[7] For this reason and because each case asserted both overlapping and unique claims, Class Plaintiffs and the Receiver coordinated their efforts by, for example, utilizing the same counsel to prosecute both cases.

---

[6] *See FTC v. Tarr Inc., et al.*, No. 3:17-cv-02024-LAB (S.D. Cal.) ("*Tarr* Action"); *FTC v. Triangle Media Corp., et al.*, No. 3:18-cv-01388-TWR (S.D. Cal.) ("*Triangle* Action"); *FTC v. Apex Capital Grp., LLC, et al.*, No. 2:18-cv-09573-JFW (C.D. Cal.) ("*Apex* Action").

[7] The FTC remediation programs have already returned $2.5 million to Apex consumers, $8.46 million to Triangle consumers, and $5.88 million to Tarr consumers. *See* https://public.tableau.com/app/profile/federal.trade.commission/viz/Refunds_15797958402020/RefundsbyCase.

4

After conducting an extensive investigation into potential claims against Defendants by analyzing voluminous business records from two of the underlying fraudulent enterprises, Triangle and Apex, but before Class Plaintiffs filed the instant case, the Parties agreed to participate in private mediation before the Hon. Daniel Weinstein (Ret.). The Parties exchanged substantial mediation statements and participated in two separate full-day, in-person mediation sessions on November 5, 2020 and April 29, 2021. Both sessions ended without an agreement to settle.

### C.    Plaintiffs' Complaints, Defendants' Motions To Dismiss And The Consolidation Motion

On July 8, 2021, Class Plaintiffs initiated the *McCraner* Action in the United States District Court for the Southern District of California. *McCraner* Action, ECF 1. That same day, the Receiver initiated the *McNamara* Action in the United States District Court for the Southern District of California. ECF 1.

On August 25, 2021, Wells Fargo separately moved to dismiss both the Receiver and Class Actions. ECF 14; *McCraner* Action, ECF 12-14. On March 30, 2022, the Court in the *McNamara* Action entered its order denying in part and granting in part Wells Fargo's motion to dismiss (ECF 20), while the Court in the *McCraner* Action entered its order granting Wells Fargo's motion to dismiss in its entirety (*McCraner* Action, ECF 22). On April 27, 2022, Defendants filed their Answer to the Receiver Complaint. ECF 24.

Class Plaintiffs filed the Class Complaint on April 20, 2022, and Defendants again moved to dismiss and strike the class allegations. *McCraner* Action, ECF 26-29. Class Plaintiffs opposed both motions on July 15, 2022, and Defendants replied on August 1, 2022. *McCraner* Action, ECF 30-35. On March 30, 2023, the Court in the *McCraner* Action entered its order partially denying Defendants' motion to dismiss, and denying Defendants' motion to strike class allegations. *McCraner* Action, ECF 40. On May 1, 2023, Defendants filed their Answer to the Class Complaint, which they subsequently amended on June 14, 2023, in response to Class

5

Plaintiffs' motion to strike Defendants' affirmative defenses. *McCraner* Action, ECF 44, 57.

On May 6, 2023, Defendants moved to consolidate the *McNamara* and *McCraner* Actions, which Class Plaintiffs opposed on May 26, 2023. *McCraner* Action, ECF 46, 47. Defendants filed their reply in further support of consolidation on June 5, 2023. *McCraner* Action, ECF 50.

### D.    Pre- And Post-Consolidation Fact And Expert Discovery

Following the Court's partial denial of Defendants' motion to dismiss the Class Complaint on March 30, 2023, Class Plaintiffs vigorously pursued fact and expert discovery.[8] Initially, Defendants sought to narrow the scope of Class Plaintiffs' discovery to Tarr only while Defendants' motion to consolidate the *McNamara* and *McCraner* Actions was pending. However, after substantial and prolonged discussion/negotiation, Class Plaintiffs and Defendants, on July 13, 2023, submitted a joint proposal to the Court allowing for limited additional discovery related to Triangle and Apex, which the Court granted the next day. *McCraner* Action, ECF 71-72.[9]

Class Plaintiffs served and responded to numerous requests for production of documents, written interrogatories, and requests for admission. And Class Plaintiffs

---

[8] From March 2022 through June 2023, the Receiver, who was also represented by Class Counsel, conducted fact discovery related to the Apex and Triangle enterprises including: (i) propounding numerous requests for production of documents, written interrogatories, and requests for admission; (ii) serving many subpoenas on third parties; (iii) analyzing over a million documents produced in the litigation; (iii) taking or defending more than 25 depositions; and (iv) engaging in discovery disputes on various topics including the applicability of the SAR privilege and the scope and contours of Rule 30(b)(6) depositions, which resulted in numerous conferences and hearings before Magistrate Judge Leshner.

[9] While Class Plaintiffs and Defendants were conducting fact discovery, they participated in an Early Neutral Evaluation under the auspices of Magistrate Judge Leshner, on July 18, 2023. The session ended without an agreement to settle. Class Plaintiffs continued pursuing fact discovery.

served over 25 subpoenas on various third parties, including the principals of Tarr, credit card networks, and merchant processors, among others. Throughout fact discovery, Class Plaintiffs exchanged numerous meet and confer correspondence with Defendants on various discovery issues including discovery requests propounded on Defendants, the location of certain Rule 30(b)(6) depositions, and certain documents in one Class Plaintiff's possession. Class Plaintiffs prepared for and participated in discovery conferences before Magistrate Judge Leshner to resolve these and other discovery disputes.

In response to Defendants' documents requests, Class Plaintiffs produced nearly 10,000 pages of documents. Class Plaintiffs also each prepared for and sat for their depositions (some for the second time in their capacity as class representatives, as Defendants earlier subpoenaed them in the *McNamara* Action as fact witnesses). In preparation for fact depositions, Class Counsel reviewed and analyzed voluminous documents produced by the Receiver, Defendants, and third parties. Utilizing discovery from both the *McNamara* and *McCraner* Action, Class Counsel prepared for and took approximately 21 depositions.

While the Receiver had previously proffered three experts in the fields of forensic accounting and banking regulation, these opinions related only to Apex and Triangle, and not Tarr. Therefore, Class Plaintiffs' expert reports also addressed Tarr. Plaintiffs also proffered an expert in social computing to render opinions on the nature of the Apex, Triangle and Tarr marketing practices. Defendants also proffered three experts—in the fields of banking regulations, economics/damages, and class certification. Each of the proffered experts produced written reports and was deposed.

### E.    Pre- And Post-Consolidation Summary Judgment Motions, Class Certification, And Settlement

On November 13, 2023, Wells Fargo filed its motion for summary judgment against the Receiver, which included approximately 100 exhibits. ECF 187-89. On December 15, 2023, Wells Fargo moved to exclude the testimony of all three of the

Receiver's experts. ECF 201-05. The Receiver opposed Wells Fargo's motion for summary judgment on December 22, 2023 attaching approximately 195 exhibits.

On January 4, 2024, the Court consolidated the *McNamara* Action and the *McCraner* Action for all pre-trial purposes (the "Action") and denied Defendants' motions for summary judgment and to exclude expert testimony as moot. ECF 220; *McCraner* Action, ECF 90. On January 22, 2024, the Parties participated in an unsuccessful Settlement Conference with Magistrate Judge Leshner.

After further litigation and discovery, Defendants filed their motion for summary judgment in the consolidated case and filed motions to exclude Plaintiffs' three proffered experts on June 10, 2024, including approximately 104 exhibits. ECF 305-06. On July 8, 2024, Plaintiffs filed their opposition, citing to approximately 200 exhibits. ECF 309. On July 22, 2024, Wells Fargo filed its reply in further support of their motion for summary judgment and to exclude Plaintiffs' experts. ECF 319.

On June 10, 2024, Plaintiffs moved to exclude expert reports from two of Wells Fargo's experts. ECF 302. Wells Fargo filed their opposition on July 8, 2024, and Plaintiffs filed their reply in further support of their motion on July 22, 2024. ECF 308, 315.

On September 5, 2024, Class Plaintiffs filed their motion for class certification, which Defendants opposed on September 26, 2024. ECF 334, 343. Class Plaintiffs filed their reply in further support of their class certification motion on October 23, 2024, as well as a motion to exclude certain opinions submitted by Defendants' experts. ECF 352, 351.

On October 29, 2024, the Court held oral argument on Wells Fargo's motion for summary judgment and Class Plaintiffs' motion for class certification.

On October 30, 2024, the Parties participated in a Settlement Conference with Magistrate Judge Leshner. Though the session ended without an agreement to settle, over the course of the next several weeks, the Parties continued to work with Judge Leshner, a process which resulted in a settlement of the Action for $33,000,000.

Over the next six months, the Parties negotiated and executed the Class and Receiver Agreements dated June 25, 2025, which subject to the Court's approval will release all claims asserted against Defendants in the Action in return for a non-reversionary cash payment by or on behalf of Defendants in the exact amount of $33,000,000 to the Class and Receiver. Following the execution of the Class and Receiver Agreements, the Receiver filed motions for approval of the Receiver Agreement in the *Apex* Action and the *Triangle* Action. *Apex* Action, ECF 270; *Triangle* Action, ECF 186. On September 5, 2025, the court in the *Apex* Action approved the Receiver Agreement. *Apex* Action, ECF 271. On September 8, 2025, this Court approved the Receiver Agreement in the *Triangle* Action. *Triangle* Action, ECF 189.

## III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

A. have the class representatives and class counsel adequately represented the class;
B. was the proposal negotiated at arm's length;
C. is the relief provided for the class adequate, taking into account:
   (i) the costs, risks, and delay of trial and appeal;
   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
   (iv) any agreement required to be identified under Rule 23(e)(3); and
D. does the proposal treat class members equitably relative to each other.

9

These factors are not exclusive, nor intended to displace the factors traditionally considered by the courts in the Ninth Circuit.[10]

As set forth below, the proposed Settlement satisfies the preliminary approval criteria under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Rule 23(e)(2) Factors And The Remaining *Hanlon* Factors[11]

#### 1.    Class Plaintiffs And Class Counsel Adequately Represented The Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Class Plaintiffs and Class Counsel adequately represented the Class both during the litigation of this Action and its settlement. Class Plaintiffs' claims are typical of and coextensive with the claims of the Class, and they have no antagonistic interests; rather, Class Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the other Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical

---

[10] The *Hanlon* factors are: (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

[11] The Court does not yet have the benefit of the Class's reaction as notice of the proposed Settlement has not commenced. There is no government participant.

of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Additionally, Class Plaintiffs have demonstrated their commitment to the litigation by, *inter alia*, overseeing the litigation and regularly communicating with their counsel; responding to document requests, producing documents, and sitting for deposition; and participating in settlement discussions with Class Counsel.

Class Plaintiffs also retained counsel who are highly experienced and have a long and successful track record of representing consumers in complex litigation. Class Counsel have successfully prosecuted consumer class actions and complex litigation in federal and state courts throughout the country. *See* Ex. 2 (GPM firm resume). Moreover, Class Counsel vigorously prosecuted the Class's claims throughout the litigation, including by: conducting an extensive investigation into the claims asserted against Defendants; participating in pre-litigation mediation, which included exchanging mediation statements and participation in multiple mediation sessions; drafting two complaints based on Class Counsel's investigation; briefing two motions to dismiss, and partially defeating one; engaging in extensive fact and expert discovery; briefing two motions for summary judgment; moving for class certification; engaging in arms-length settlement negotiations between the Parties, with the assistance of Judge Leshner; and negotiating and executing the Class Agreement and its exhibits.

**2.    The Settlement is the Result of Arm's-Length Negotiations**

Rule 23(e)(2)(B) requires procedural fairness, including that "the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B).[12] The Ninth Circuit, as well as courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement.

---

[12] Rule 23(e)(2)(A)-(B) overlaps with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, as detailed above, the Parties participated in a Settlement Conference and subsequent discussions with Magistrate Judge Leshner and, despite initially finding an agreement elusive, ultimately agreed to a settlement in the exact amount of $33,000,000. The arm's-length nature of the extensive settlement negotiations and the involvement of Judge Leshner as the mediator support the conclusion that the Settlement is fair and was achieved free of collusion.

### 3. The Settlement Is A Fair And Adequate Result Considering The Benefits Of The Settlement And The Risks Of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R. CIV. P. 23(e)(2)(C).[13] As discussed below, each of these factors supports the Settlement's approval.

### (a) The Strength Of Class Plaintiffs' Case And The Risk Of Continued Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance against the continuing risk of litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

As evident from the Court's Order dismissing Class Plaintiffs' claims in the initial class action complaint, the risk that Plaintiffs could potentially recover less than $33 million, even nothing at all, was very much real. *McCraner* Action, ECF 22. While Plaintiffs addressed the issues identified in the Court's previous dismissal

---

[13] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor) and; the risks of maintaining class action status through the trial (third factor). *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

order, the resulting Class Complaint was nevertheless partially dismissed, a strong indication of potential future risks Class Plaintiffs faced in continuing litigation. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder…litigation to assess the risks involved."). The serious risks to the Class's case are further shown by Defendants' arguments for summary judgment. ECF 305. Indeed, even if Plaintiffs certified the proposed Class and survived summary judgment, proceeding to trial would present "substantial litigation risks" including having to prove each of their three surviving claims—aiding and abetting fraud, conspiracy to commit fraud, and violation of California Penal Code § 496. Thus, Class Plaintiffs and their Class Counsel recognize that the risks of continued litigation presented considerable obstacles to any recovery at all, let alone one greater than the concrete recovery obtained here.

Finally, even if Plaintiffs prevailed on liability and the Class was awarded damages, Defendants would likely appeal the verdict and award. The appeals process would have likely spanned several years, involving at least an appeal to the Ninth Circuit, and, potentially, petitions for *en banc* review by the Ninth Circuit or for a writ of certiorari from the Supreme Court, or both. During this time, the Class would receive no distribution of any funds. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Class would receive no recovery even after having prevailed on their claims at trial.[14]

### (b)    Risks of Maintaining Class Action Status

While Class Plaintiffs and their Class Counsel are confident that the Class meets the requirements for certification, Sec. IV.B, *infra*, the Class has not yet been certified, and Class Plaintiffs are aware that there is a risk the Court could disagree.

---

[14] *See Montera v. Premier Nutrition Corp.*, 111 F.4th 1018 (9th Cir. 2024) ($91.43 million damages award following jury trial in consumer class action vacated).

Even if the Court were to certify the Class, there is always a risk that the Class could be decertified at a later stage in the proceedings. *See*, *e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification if the case reached that stage.

### 4.    Rule 23(e)(2)(C)(ii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate. FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). These factors weigh in support of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The methods for processing Class Members' claims and distributing relief are well-established and effective. Here, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Settlement Administrator selected by Class Counsel (subject to Court approval),[15] will process claims under the guidance of Class Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in consumer class action settlements.[16] In addition, funds will be distributed to certain Class Members through the FTC's established refund programs in the Triangle Action and the Apex Action, which have previously distributed millions of dollars to harmed

---

[15] If Plaintiffs seek to retain, or the Court decides to appoint, a different Settlement Administrator, Wells Fargo has the right to object or oppose the appointment. Class Agreement, ¶21.

[16] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Class Agreement, ¶17.

1    consumers, showing the effectiveness of the FTC's refund programs.

2        **Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Class Counsel will be

3    applying for a percentage of the common fund fee award in an amount not to exceed

4    33⅓% (the total attorney fee for the *McCraner* and *McNamara* actions), to

5    compensate them for the services rendered on behalf of the Class. A proposed

6    attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes

7    interest earned on the Settlement Amount) is reasonable in light of the work

8    performed and the results obtained. It is also consistent with awards in other complex

9    class action cases. *See*, *e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir.

10   1995) (approving fee equal to 33% of $12 million settlement fund); *Carlin v.*

11   *DairyAmerica, Inc.*, 380 F.Supp.3d 998 (E.D. Cal. 2019) (awarding 33.3% of $40

12   million settlement fund). Importantly, approval of Class Counsel's forthcoming fee

13   and expense application is separate from approval of the Settlement. *See* Class

14   Agreement, ¶19.

15       **Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement

16   (the "Supplemental Agreement") that establishes certain conditions under which

17   Defendants may unilaterally terminate the Settlement if certain conditions regarding

18   requests for exclusion are met. These agreements are standard in class action

19   settlements and have no negative impact on the fairness of the settlement. *See*, *e.g.*,

20   *Reid v. I.C. Sys. Inc.*, 795 F. App'x 509 (9th Cir. 2019) (example of termination

21   agreement in consumer class action); *see also Columbus Drywall & Insulation, Inc.*

22   *v. Masco Corp.*, 258 F.R.D. 545, 560 (N.D. Ga. 2007) ("plaintiffs have [not]

23   bargained away rights of the class in return for advantages of others" in agreeing to a

24   termination condition which provided "a point where defendants can unilaterally

25   terminate the agreement if the opt-outs reach a certain threshold"). The Supplemental

26   Agreement is available for the Court's *in camera* review.

27

28

**5. The Settlement Treats All Class Members Equitably Relative To Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive either: (i) a *pro rata* share of the Net Settlement Fund[17] based on his/her out of pocket losses (minus any refunds received), or (ii) a qualifying payment, subject to a *pro rata* reduction based on the number of Claimants, for claimants who lack adequate supporting documentation. Ex. 3 (proposed Plan of Allocation).

Class Members who previously received a distribution through the FTC refund programs for Triangle and Apex will be eligible to receive an additional distribution from the FTC refund program. *Id.* All Claimants are treated equitably in relation to each other; this type of equitable distribution is fair and reasonable. *See*, *e.g.*, *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993 (N.D. Cal. 2015) (final approval of nationwide consumer class action settlement granted where defendant had previously settled an FTC enforcement action as part of a global resolution of the class actions).

**6. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval**

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s factors.[18] These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

---

[17] Triangle, Apex, and Tarr consumers have been allocated a certain percentage of the Net Settlement Fund based on Class Counsel's evaluation of the strengths and weaknesses of the claims related to each of the underlying frauds. Ex. 3 (proposed Plan of Allocation).

[18] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

16

**The Amount Offered in Settlement:** "To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018). The $33 million Settlement Amount is well within the range of reasonableness under the circumstances warranting preliminary approval of the Settlement and the issuance of notice to the Class.

The $33 million recovery represents approximately 5.0% of a maximum combined compensatory damages of $658 million amount in the consolidated actions—assuming that: (i) the Court certified the Class, as defined; (ii) Plaintiffs survived summary judgment on each of their remaining claims ***and*** convinced a jury that liability was proven; (iii) the Court and jury accepted Plaintiffs' damages theories; and (iv) the Court and jury did not reduce the claimed damages due to overlap in Plaintiffs' various damages theories.[19] Of course, less than a complete victory on any aspect of these assumptions would decrease recoverable damages or eliminate them altogether, and Defendants strongly contested each element at issue as well as argued Class Plaintiffs and Receiver sought duplicative recovery.

Especially in the light of these risks, the percentage of recovery is reasonable. Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).

---

[19] *See* ECF 305-8 at Ex. M, pp. 17-18 (Class Plaintiffs' supplemental initial disclosures detailing damages theories and amounts, including $294 million in compensatory damages); ECF 305-7 at Ex. 83, pp. 8-17 (Receiver's interrogatory responses detailing damages theories and amounts, including $264 million relating to FTC judgments and $100 million relating to fraudulent transfers). In addition to compensatory damages, Plaintiffs also argued for pre- and post-judgment interest, punitive damages, treble damages, attorney fees and costs, and recoupment of fees Defendants received from the Enterprises.

17

**The Stage of the Proceedings and Extent of Discovery Completed:** "The Court assesses the stage of the proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1177 (S.D. Cal. 2016). Here, at the time the Settlement was reached, Class Plaintiffs had conducted an extensive investigation culminating in two detailed complaints, opposed a motion to dismiss (twice), engaged in extensive fact and expert discovery, and fully briefed motions for summary judgment and class certification. *See* Sec. II., *supra*.

In sum, based on the foregoing substantial efforts to obtain documents, testimony, and other information, as well as the briefing on the motions to dismiss, motions for summary judgment, and for class certification, Class Plaintiffs were able to develop a thorough understanding of the strengths and weaknesses of the Action which supports the fairness of the Settlement. Thus, Class Plaintiffs and their counsel had sufficient information to evaluate the strengths and weaknesses of the case at the time of settlement. This factor supports preliminary approval.

**The Experience and Views of Counsel:** Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See*, *e.g.*, *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017). Here, Class Counsel has extensive experience in complex litigation and has obtained a thorough understanding of the merits and risks of the Action. Class Counsel's belief in the fairness and reasonableness of this Settlement supports preliminary approval. Defendants have been vigorously represented by McGuireWoods LLP throughout the Action and settlement negotiations. Counsel for Defendants is well-informed regarding the case, and their representation of Defendants was just as vigorous as Class Counsel's representation of the Class. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, preliminary approval is warranted.

## B.    Class Certification is Appropriate for Settlement Purposes

At the Final Approval Hearing, the Court will be asked to grant final approval to the Settlement on behalf of the Class. Thus, it is appropriate for the Court to consider, at the preliminary approval stage, and solely for purpose of the Settlement, whether certification of the Class appears to be appropriate. *Hanlon*, 150 F.3d at 1019. Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the Court must find that at least one of the three conditions of Rule 23(b) is satisfied. *Id.* Under subsection (b)(3), the Court must find the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.*; *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *7 (N.D. Cal. Feb. 7, 2008).

The proposed Class consists of "all persons who were enrolled in recurring billing by any of the Tarr Entities, Triangle Entities or Apex Entities from 2009 to present." Class Agreement, ¶1(h).[20] Class Plaintiffs believe this Action satisfies all the factors for certification of a class[21] and, if the Action were to proceed toward trial, class certification would be appropriate. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1061 (N.D. Cal. 2017), *enforcement granted*, 2017 WL 914066 (N.D. Cal. Mar. 6, 2017) ("The Ninth Circuit

---

[20] Excluded from the Class are Defendants and present and former officers and directors of Wells Fargo. Also excluded are any persons who exclude themselves by submitting a request for exclusion that is accepted by the Court. *Id.*

[21] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

19

maintains a strong judicial policy that favors class action settlements.") (internal quotes omitted).

### 1.    The Class is Sufficiently Numerous

To meet the requirement of numerosity, one need only show that it is difficult or inconvenient to join all members of the class. *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Id.* There are many thousands of Class Members. The threshold presumption of impracticability of joinder is thus easily exceeded. *See, e.g.*, *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 493 (N.D. Cal. 2010) *modified sub nom. Barnes v. AT & T Pension Ben. Plan-NonBargained Program*, 273 F.R.D. 562 (N.D. Cal. 2011) ("'As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement.'").

### 2.    Common Questions of Law or Fact Exist

There must be "questions of law or fact common to the class" to maintain a class action. FED. R. CIV. P. 23(a)(2). Commonality is satisfied if there is one issue common to the class members. *Hanlon*, 150 F.3d at 1019. Generally, courts liberally construe the commonality prerequisite, requiring only that "the named plaintiffs share at least one question of fact or law with the grievances of the proposed class." *Siemer v. Assocs. First Cap. Corp.*, 2001 WL 35948712, at *14 (D. Ariz. March 30, 2001). Not all questions of fact and law need be common to satisfy Rule 23(a)(2). *Hanlon*, 150 F.3d at 1019. This factor is "construed permissively, and '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.'" *Id.* at 1019. Rule 23(a)(2) is satisfied here because Class Plaintiffs assert several common law and state law claims against Defendants for, *inter alia*, facilitating Apex, Triangle, and Tarr's alleged fraud, which unquestionably raise issues of common questions of law and fact for the Class relating to Defendants' common course of conduct.

### 3. Class Plaintiffs' Claims Are Typical Of Those Of The Class

Like other Class Members, Class Plaintiffs allege that they were enrolled in recurring billing by any of the Tarr Entities, Triangle Entities, or Apex Entities from 2009 to present and were subsequently damaged due to Defendants' conduct. The other members of the Class were allegedly affected in the same way.

Similarly, the interest of Class Plaintiffs in obtaining a fair, reasonable, and adequate settlement of the claims asserted is identical to the interests of the remaining Class Members. Under the proposed Plan of Allocation, Class Plaintiffs will receive the same *pro rata* share of the Settlement Fund as similarly-positioned Class Members. Accordingly, the typicality requirement is met. *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### 4. Class Plaintiffs and Class Counsel Adequately Represented the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class. The adequacy inquiry also 'factors in competency and conflicts of class counsel.'" *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

As explained in Sec. IV.A.1, *supra*, Class Plaintiffs and Class Counsel are adequate representatives. First, Class Plaintiffs and Class Members were enrolled in recurring billing by one or more of the Tarr, Triangle, or Apex Entities, and were all injured by Defendants' alleged facilitation of the Entities' fraud. If Class Plaintiffs were to prove their claims at trial, they would also prove the Class's claims. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013) (class "will prevail or fail in unison" because claims are based on common underlying

conduct by defendants). Thus, the interests of Class Plaintiffs and other members of the Class are aligned, as they share the common objective of maximizing their recovery from Defendants. *PPG*, 2019 WL 3345714, at *3 ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Second, Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel. Class Counsel has extensive experience and expertise in complex class action litigation. *See* Ex. 2 (GPM firm resume).

### 5. The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Here, the proposed Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or fact common to the members of the Class predominate over any questions affecting individual members. Moreover, damages suffered by members of the Class are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' alleged violations of federal law. *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.]"). Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 6. The Court Should Appoint GPM As Class Counsel

A court that certifies a class must also appoint class counsel. *See* FED. R. CIV. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in

identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

Since the filing of both the Class and Receiver Complaints, GPM has devoted substantial time, effort, and resources to identifying, investigating, litigating, and settling the claims in this matter. Moreover, as explained in Sec. IV.A.1, *supra*, GPM has substantial experience prosecuting complex consumer class actions. For these reasons, among others, Plaintiffs respectfully request that the Court appoint GPM to serve as Class Counsel.

### 7.    The Court Should Approve The Proposed Form And Method Of Notice

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Settlement Administrator[22] will email URL links to the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Class Members who can be identified with reasonable effort, including through the records maintained by underlying Triangle and Apex Enterprises. Preliminary Approval Order ¶8(a). Simultaneously, the Settlement Administrator will conduct an extensive publication notice program utilizing methods that target an audience comprised of potential Class Members. *See* Azari Decl., ¶¶23-37.

Class Counsel will cause the Settlement Administrator to: (a) email the Short-Form Notice to those members of the Class as may be identified through reasonable

---

[22] Class Plaintiffs request the Court approve retention of Epiq, as the Settlement Administrator for this case. Epiq has successfully administered numerous complex class action settlements similar to the instant case, including: *In Re: Zoom Video Communications, Inc. Privacy Litigation*, 3:20-cv-02155 (N.D. Cal.); *In re U.S. Office of Personnel Management Data Security Breach Litigation* MDL No. 2664, 15-cv-01394 (D.D.C.); and *In re: fairlife Milk Products Marketing and Sales Practices Litigation*, 1:19-cv-03924 (N.D. Ill.). *See* Ex. 4 (Declaration of Cameron R. Azari, Esq. Regarding Notice Plan ("Azari Decl.")) at ¶5.

effort; (b) create the Settlement Website that will, among other things, allow Claimants to file Claims online; (c) have the Publication Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court; and (d) post the Notice, Claim Form, Class Complaint, Class Agreement and other relevant documents on the Settlement Website.

For the purposes of identifying and providing notice to the Class, the Settlement Administrator shall use two methods: for Class Members who transacted with the Tarr Entities, the notice shall be by publication (since Plaintiffs do not have contact information for those Class Members); for Class Members who transacted with Apex and Triangle Entities, the available business records (consisting of names and email addresses) will be used to send email notifications to those Class Members in addition to providing notice by publication. Azari Decl., ¶18. The Settlement Administrator shall determine whether each Claim submitted is valid in accordance with the Plan of Allocation (or in such other plan of allocation as the Court approves). Ex. 3 (proposed Plan of Allocation).

The proposed form and manner of providing notice to the Class satisfy the requirements of due process and Rule 23.

## V.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for emailing and publication of the Short-Form Notice and Publication Notice, and deadlines for submitting claims or for objecting to the Settlement.  The Parties respectfully propose the following schedule for the Court's consideration, which are set forth in the proposed Preliminary Approval Order ("Prelim. Appr. Order"):

| Event | Proposed Timing |
| --- | --- |
| Deadline for emailing the Short-Form Notice to Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶8(a)) | Not later than 30 calendar days after entry of Prelim. Appr. Order |

| Event | Proposed Timing |
|-------|-----------------|
| Deadline for publishing the Publication Notice (Prelim. Appr. Order ¶8(c)) | The Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Class Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶26) | Not later than 35 calendar days prior to the Final Approval Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶¶13, 17) | Not later than 21 calendar days prior to the Final Approval Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶26) | 7 calendar days prior to the Final Approval Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶10) | 90 calendar days after the Notice Date |
| Final Approval Hearing | Not earlier than 150 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

Class Plaintiffs request that the Court schedule the Final Approval Hearing for a date 150 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  As this motion is unopposed, Class Plaintiffs request that the Court consider this motion for preliminary approval on the papers at this time.

## VI.   CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request that the Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order.

1   DATED:  October 2, 2025      **GLANCY PRONGAY & MURRAY LLP**

2

3

4                            By:   */s/ Jonathan M. Rotter*

5                         Jonathan M. Rotter

6                         Garth Spencer
                            Melissa C. Wright

7                         Greg B. Linkh

8                         1925 Century Park East, Suite 2100
                            Los Angeles, California 90067

9                         Telephone:  (310) 201-9150
                            Email:  info@glancylaw.com

10

11                        *Attorneys for the Class Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On October 2, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 2, 2025, at Los Angeles, California.

<u>*/s/ Jonathan M. Rotter*</u>
Jonathan M. Rotter