EXHIBIT 1

1

2

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

3

4

5

6

THOMAS W. MCNAMARA, as the Court-
Appointed Receiver for Triangle Media
Corporation, Apex Capital Group, LLC; and
their successors, assigns, affiliates, and
subsidiaries,

Lead Case No. 3:21-cv-1245-TWR-DDL
[Consolidated with Case No. 3:21-CV-1246-
TWR-DDL]

**STIPULATION AND AGREEMENT OF**
**SETTLEMENT**

Plaintiff,

7

v.

8

9

WELLS FARGO & COMPANY, a
corporation, WELLS FARGO BANK, N.A., a
national banking association,

10

Defendants.

11

12

13

JOHN MCCRANER, SHARON STIANSEN,
JANET POLLARD, MICHAEL
DARLINGTON, SUSAN R. LANDREAU,
JOHN N. TUFFIELD, individually and on
behalf of all similarly situated,

14

15

Plaintiffs,

v.

16

17

WELLS FARGO & COMPANY, a
corporation, WELLS FARGO BANK, N.A., a
national banking association,

18

Defendants.

19

20

21

22

23

24

25

26

27

28

This Stipulation and Agreement of Settlement (the "Class Agreement"), dated June 25, 2025, is entered into between (a) plaintiffs John McCraner, Janet Pollard, Sharon Stiansen, Michael Darlington, Susan R. Landreau, and John Tuffield (collectively "Class Plaintiffs"), on behalf of themselves and the Class (defined below); and (b) defendants Wells Fargo & Company and Wells Fargo Bank, N.A. ("Defendants" or "Wells Fargo," and together with Plaintiffs, the "Parties"), and embodies the terms and conditions of the settlement of the above-captioned action.[1]

The Class Plaintiffs and Thomas W. McNamara, acting in his capacity as the Court-appointed Receiver for both Apex Capital Group, LLC, and related entities and Triangle Media Corporation and related entities ("Receiver" further defined below) are entering into two separate settlement agreements to globally resolve their respective claims against Wells Fargo; this Class Agreement is entered into contemporaneously with a settlement agreement between the Receiver and Wells Fargo ("Receiver Settlement Agreement," and together with this Class Agreement, the "Settlement Agreements").

As described more fully below, Wells Fargo is reaching a global settlement with the Receiver and Class Plaintiffs in return for a lump sum cash payment in the exact amount of thirty-three million dollars ($33,000,000) that fully resolves all claims brought by the Class Plaintiffs and the Receiver as set forth below. Subject to the approval of the Court and the terms and conditions expressly provided herein, this Class Agreement is intended to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice, *inter alia*, the Class Action (defined below) and all claims asserted therein.

**WHEREAS:**

A.     The Federal Trade Commission ("FTC") initiated separate enforcement actions against Tarr, Triangle, and Apex on October 3, 2017, June 25, 2018, and November 14, 2018, respectively. The FTC alleged, among other things, that Tarr, Triangle, and Apex each engaged in unfair and deceptive business practices related to selling nutraceutical products online, improperly

---

[1]  All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶ 1 below.

upsold unwanted products, employed obstacles to consumers seeking a refund or cancellation, and employed telemarketers to contact consumers who had yet to complete a purchase.

B.    Prior to Plaintiffs filing this Class Action, the Parties engaged in two separate private pre-litigation mediation sessions under the auspices of Hon. Daniel Weinstein (Ret.) of JAMS ADR Services on November 5, 2020 and April 29, 2021. Both sessions were unsuccessful at resolving the claims that are the subject of this Settlement.

C.    On July 8, 2021, Class Plaintiffs filed the above-captioned case, *McCraner et al. v. Wells Fargo & Co., et al*., No. 3:21-cv-1246-TWR-DDL (S.D. Cal.), a class action complaint (the "McCraner Action" or "Class Action") alleging that with the knowing assistance of Wells Fargo, the Apex Entities, Triangle Entities, and Tarr Entities (all defined below) deposited and laundered money they obtained from consumers' purchases of nutraceutical and other products, through accounts at Wells Fargo. Plaintiffs alleged the Apex Entities, Triangle Entities, and Tarr Entities defrauded consumers into monthly subscriptions for products, and Wells Fargo knowingly assisted them by opening business deposit accounts for their dozens of companies and transferring millions of dollars into their third-party bank accounts. McCraner Action, Dkt. 1.

D.    On July 8, 2021, the Receiver filed a complaint (the "McNamara Action") alleging, among other things, that the Triangle Entities and Apex Entities with the knowing assistance of Wells Fargo, defrauded consumers into purchasing monthly subscriptions for products, and Wells Fargo knowingly assisted them by opening business deposit accounts for their dozens of companies and transferring millions of dollars into their third-party bank accounts. McNamara Action, Dkt. 1.

E.    On August 25, 2021, Wells Fargo moved to dismiss the McNamara Action and requested judicial notice of 3 exhibits. McNamara Action, Dkt. 14. On October 8, 2021, the Receiver opposed both the motion to dismiss and request for judicial notice (McNamara Action, Dkt. 15-16). Also on August 25, 2021, Wells Fargo moved to dismiss the Class Action, strike nationwide class-action claims, and requested judicial notice of 7 exhibits. McCraner Action, Dkt. 12-14. Class Plaintiffs opposed Wells Fargo's motions to dismiss and strike, and also opposed the request for judicial notice (McCraner Action, Dkt. 15-17). On October 25, 2021, Wells Fargo filed its replies in both actions. McNamara Action, Dkt. 17-18; McCraner Action, Dkt. 18-20.

F.     On March 30, 2022, the Court in the McNamara Action entered its order granting in part Wells Fargo's motion to dismiss (Dkt. 20). That same day, the Court in the McCraner Action entered its order granting Wells Fargo's motion to dismiss in its entirety (Dkt. 22).

G.     On April 27, 2022, Wells Fargo filed its Answer to the Receiver Complaint. McNamara Action, Dkt. 24.

H.     Class Plaintiffs filed their Amended Class Complaint on April 20, 2022, which Wells Fargo moved to dismiss, strike nationwide class-action claims, and judicially notice 7 exhibits on June 3, 2022. McCraner Action, Dkt. 26-29. Class Plaintiffs filed their responses in opposition on July 15, 2022, to which Wells Fargo replied on August 1, 2022. McCraner Action, Dkt. 30-35.

I.     In conducting fact discovery, the Receiver and Wells Fargo produced voluminous documents and propounded multiple sets of written discovery. Additionally, the parties took a total of 30 depositions.

J.     In conducting expert discovery, on August 17, 2023, the Receiver proffered reports from three experts in the fields of forensic accounting and banking regulations. Wells Fargo deposed each of the Receiver's experts and then proffered two rebuttal reports from two experts. The Receiver deposed each of Wells Fargo's experts.

K.     While the Receiver and Wells Fargo conducted discovery, they participated in an Early Neutral Evaluation with Magistrate Judge William Gallo (Ret.), on July 26, 2022. The session ended without an agreement to settle, and the Receiver and Wells Fargo continued with litigation.

L.     On March 30, 2023, the Court in the McCraner Action entered its order granting in part Wells Fargo's motion to dismiss (Dkt. 40). On May 1, 2023, Wells Fargo filed its Answer to the Amended Class Complaint; Wells Fargo filed an Amended Answer on June 14, 2023. McCraner Action, Dkt. 44, 57.

M.     In conducting fact discovery, Class Plaintiffs and Wells Fargo produced voluminous documents and propounded multiple sets of written discovery. Class Plaintiffs produced nearly 10,000 pages of documents. Additionally, a total of 19 depositions were taken.

N.      While Class Plaintiffs and Wells Fargo conducted discovery, they participated in an Early Neutral Evaluation with Magistrate Judge Leshner, on July 18, 2023. The session ended without an agreement to settle.

O.      On November 13, 2023, Wells Fargo filed its motion for summary judgment, which included approximately 100 exhibits. McNamara Action Dkt. 187-189. On December 15, 2023, Wells Fargo moved to exclude the testimony of all three of the Receiver's experts. McNamara Action Dkt. 198-201, 203-205. The Receiver opposed Wells Fargo's motion for summary judgment on December 22, 2023, attaching approximately 195 exhibits.

P.      On January 4, 2024, the Court consolidated *Thomas McNamara v. Wells Fargo & Co., et al.*, Case No. 3:21-cv-01245-TWR-DDL, and *John McCraner et al. v. Wells Fargo & Co., et al.*, Case No. 3:21-cv-01246-TWR-DDL, for all pre-trial purposes (the "McNamara/McCraner Actions") and denied as moot Wells Fargo's motions for summary judgment and motions to exclude expert testimony. McNamara Action, Dkt. 220; McCraner Action, Dkt. 90.

Q.      The Parties participated in a Settlement Conference with Magistrate Judge Leshner on January 22, 2024. The conference ended without a settlement being reached.

R.      Following consolidation, Wells Fargo filed its motion for summary judgment in the McNamara/McCraner Actions on June 10, 2024, which included approximately 104 exhibits. McNamara Action, Dkt. 305-06. Plaintiffs filed their opposition to Wells Fargo's motion on July 8, 2024, which included approximately 200 exhibits. McNamara Action, Dkt. 309. On July 22, 2024, Wells Fargo filed its reply in further support of its motion for summary judgment. McNamara Action, Dkt. 319.

S.      On June 10, 2024, Plaintiffs moved to exclude two of Wells Fargo's experts. McNamara Action, Dkt. 302. Wells Fargo filed its opposition on July 8, 2024 and Plaintiffs filed their reply in further support of their motion on July 22, 2024. McNamara Action, Dkt. 308, 315.

T.      On September 5, 2024, Class Plaintiffs filed their motion for class certification, which Wells Fargo opposed on September 26, 2024. McNamara Action, Dkt. 334, 343. Class Plaintiffs filed their reply in further support of their class certification motion on October 23, 2024

4

as well as a motion to exclude certain opinions submitted by Wells Fargo's experts. McNamara Action, Dkt. 352, 351.

U.      On October 29, 2024, the Court held oral argument on Wells Fargo's motion for summary judgment, Class Plaintiffs' motion for class certification, and the Parties' motions to exclude certain opinions submitted by their respective experts.

V.      On October 30, 2024, the Parties participated in a Settlement Conference with Magistrate Judge Leshner. Though the session ended without an agreement to settle, over the course of the next several weeks, the Parties continued to work with Judge Leshner and achieved a settlement.

W.      Based upon their research and investigation, prosecution, and mediation of the case, Class Plaintiffs and Plaintiffs' Counsel have concluded that the terms and conditions of the Settlement as embodied in this Class Agreement are fair, reasonable, and adequate to Plaintiffs and the other members of the Class.

X.      This Class Agreement constitutes a compromise of matters that are in dispute between the Parties. Wells Fargo has denied and continues to deny each and every allegation of liability, wrongdoing, and damages, as it has substantial factual and legal defenses to all claims and class allegations asserted in the Class Complaint. Wells Fargo has always maintained, and continues to maintain, that it has acted in accordance with governing law. Similarly, this Class Agreement shall in no event be construed or deemed to be evidence of, or an admission or concession on the part of, any Class Plaintiff, of any infirmity in any of the claims asserted in the Class Complaint, or an admission or concession that any of Wells Fargo's defenses to liability had any merit.

Y.      This Class Agreement (together with the exhibits hereto) reflects the final and binding agreement between the Parties.

Z.      NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among Class Plaintiffs (individually and on behalf of all other members of the Class) and Wells Fargo, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Class Released Claims as against Wells Fargo Releasees and

all Wells Fargo Released Claims as against Class Releasees shall be settled and released, upon and subject to the terms and conditions set forth below.

**DEFINITIONS**

1. As used in this Class Agreement, the following capitalized terms have the meanings specified below:

a. "Action" means the action pending in the United States District Court for the Southern District of California entitled *John McCraner et al. v. Wells Fargo & Co., et al.*, Case No. 3:21-cv-01246-TWR-DDL (S.D. Cal. July 8, 2021).

b. "Apex" means Apex Capital Group, LLC, its principal owners Phillip Peikos and David Barnett, and Omni Group Limited, Capstone Capital Solutions Limited, Clik Trix Limited, Empire Partners Limited, Interzoom Capital Limited, Lead Blast Limited, Mountain Venture Solutions Limited, Nutra Global Limited, Rendezvous IT Limited, Sky Blue Media Limited, and Tactic Solutions Limited, including all of their successors, assigns, affiliates and subsidiaries, in their capacities as such.

c. "Apex Action" means the enforcement action styled *FTC v. Apex Capital Group, et al.*, No. 18-cv-9573-JFW-JPR (C.D. Cal.).

d. "Apex Entity" or collectively "Apex Entities" means Ace Media Group Ltd; Albright Solutions LLC; Alpha Corporate Ventures Ltd; Alpha Group LLC; Alpha Max Solutions LLC; Alpha Nutra Assets LLC; Apex Capital Group LLC; Apex Capital International Sarl; Apres Vous Media LLC; Apres Vous Media Ltd; Astro Solutions LLC; Asus Capital Solutions LLC; Based Capital LLC; Based Capital Ltd; Blizzard Solutions LLC; Bold Media LLC; Brandooza LLC; BrightGuard Inc; C.D.L. Developing Limited; Capstone Capital LLC; Capstone Capital Solutions Ltd; Cascade Canyon LLC; Clik Trix Limited; Confidential Holdings LLC; Cornice Group LLC; Creative Designs LLC; Crest Capital LLC; Crest Capital Ventures Ltd; Crest Hill Solutions LLC; Dataflow LLC; Digital Age LLC; Digital X Solutions Ltd; Digitley Solutions LLC; DMB Marketing LLC; Element Media Group LLC; Empire Partners Limited; Energy Tomorrow LLC; Energy Tomorrow Ltd; Exclusive Media Group Ltd; First Capital Startups LLC; First Startup Investments LLC; Fortune Ventures LLC; Fortune Ventures Ltd; Fox Creek Holdings LLC; Future Hold

6

Ventures Ltd; Future Holdings LLC; Future Precision Ltd; G Force Max Ltd; Global Products LLC; Global World Enterprises LLC; Grand Assets LLC; Grand Assets Ventures Ltd; Grand Vision Technology LLC; Grand Vision Technology LLC; Highpost Holdings Limited; Horizon Media LLC; Horizon Media Partners Ltd; Infocus Media Group LLC; Interzoom Capital Limited; Interzoom LLC; Jaci Holding LLC; Jaci PR LLC; Jaci LLC; Lead Blast Limited; Lead Blast LLC; Lion Capital LLC; Lion Capital Solutions Ltd; Macro Group LLC; Maverick Capital Solutions LLC; Maverick Pro Ltd; MD Plan LLC; Mineral Mask LLC; Mountain Range Ventures LLC; Mountain Solutions LLC; Mountain Venture Solutions Limited; Native Wise LLC; New Idea Group Ltd; New Ideas Management LLC; Next Level Solutions LLC; NextG Payments LLC; NextLevel Solutions LLC; Nutra First Limited; Nutra First LLC; Nutra Global Limited; Nutra Global LLC; Nutra Grand Ventures LLC; Old West Equity LLC; Omega Assets LLC; Omega Assets Ltd; Omni Group Limited; Omni Holding Company LLC; Omni Ventures LLC; Online Capital Products LLC; Online Pro Products LLC; Online Product Group Ltd; Online Products LLC; Poly Media Solutions LLC; Precision Labs Inc.; Pure Indoor Cycling; Quality Nutra Pro LLC; Quality Products LLC; Rendezvous IT Limited; Rendezvous IT LLC; Roundrock Venture Group LLC; Sestito Property Management LLC; Shadow Peak LLC; Sharp Media Group LLC; Singletrack Solutions LLC; Sky Blue Media Limited; Sky Media Group LLC; Snowdrift Solutions LLC; Spire Mountain LLC; Sure Science LLC; Swellcom LLC; Tactic Solutions Limited; Teton Pass LLC; Titan Alliance Investments LLC; Top Nutra Solutions LLC; Top Quality Goods LLC; Top Quality Group Ltd; Universal Publishing LLC; US Info Reports LLC; Virtual Media LLC; Virtual Media Solutions Ltd; Visitron Capital Ltd; Vortech LLC; Vortex Media Group LLC; Web Media Depot Ltd; Wonder Leads LLC; Wyoming Coastal Partners LLC; Wyoming Freedom Group LLC; Zoom Media LLC; and Zoom Media Ltd., including all of their successors, assigns, affiliates and subsidiaries, in their capacities as such.

       e.      "Authorized Claimant" means all persons who submit a Claim Form determined to be acceptable to the Settlement Administrator.

       f.      "Claimant" means all persons who submit a Claim Form determined to be acceptable to the Settlement Administrator.

g.      "Claim Form" means the form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, that a Claimant or Class Member must complete and submit if: (i) the Claimant or Class Member seek to share in a distribution of the Net Settlement Fund allocated to Tarr; or (ii) the Claimant or Class Member did not receive a prior distribution from the FTC in the Apex or Triangle Actions and seek to share in a distribution of the Net Settlement fund allocated to Apex or Triangle.

h.      "Class" means all persons who were enrolled in recurring billing by any of the Tarr Entities, Triangle Entities, or Apex Entities from 2009 to present. Excluded from the Class are Defendants and present and former officers and directors of Wells Fargo.

i.      "Class Complaint" means the First Amended Class Action Complaint filed in the McCraner Action on April 20, 2022 at Dkt. 23.

j.      "Class Counsel" means the law firm Glancy Prongay & Murray LLP.

k.      "Class Member" means a person or entity that is part of the Class.

l.      "Class Releasees" means (i) Class Plaintiffs, their respective attorneys, and all other Class Members, and (ii) each of their respective family members, and current and former officers, directors, partners, consultants, experts, agents, parents, subsidiaries, predecessors, assigns, assignees, employees, and attorneys, all in their capacities as such.

m.      "Class Released Claims" mean any and all claims, defenses, demands, actions, causes of action, offsets, setoffs, suits, damages, treble damages, penalties, interest, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages,  whether a known or Unknown Claims, whether arising under federal, state, common, or foreign law, whether suspected or unsuspected, whether contingent or vested, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that:  Class Plaintiffs or any other member of the Class (i) asserted in the Action; or (ii) could have asserted in any forum and that arise out of, relate to, or are based upon the allegations in the Class Complaint. Class Released Claims do not include: (i) any claims

relating to the enforcement of the Settlement; or (ii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

n. "Class Releasors" means (i) Class Plaintiffs; (ii) each and every Class Member, individually or together as the Class; and (iii) each and every one of their former, present, or future agents, predecessors, successors, heirs, legatees, executors, administrators, insurers, assigns, trustees, spouses, and domestic partners, all in their capacities as such.

o. "Class Representatives" and/or "Class Plaintiffs" mean John McCraner, Janet Pollard, Sharon Stiansen, Michael Darlington, Susan R. Landreau, and John Tuffield.

p. "Court" means the United States District Court for the Southern District of California.

q. "Defense Counsel" means Wells Fargo's counsel of record in the Action.

r. "Effective Date" means the first date when all the events and conditions specified in ¶35 of the Class Agreement have occurred and have been met or have been waived.

s. "Escrow Account" means an interest-bearing account established by the Escrow Agent at The Huntington National Bank, a financial institution into which the Settlement Amount shall be transferred and held, subject to the Court's supervisory authority and under the control of the Escrow Agent.

t. "Escrow Agent" means The Huntington National Bank.

u. "Escrow Agreement" means the agreement between Class Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account. Wells Fargo has received and approved the Escrow Agreement.

v. "Exclusion/Objection Deadline" means the date identified in the Preliminary Approval Order by which Class Members must submit, in writing, (1) a request to be excluded from the Class, or (2) an objection to the Settlement. The Parties shall request that the Exclusion/Objection Deadline conform with the deadlines set forth in the Preliminary Approval Order.

w. "Final" with respect to the Judgment or any other court order, means the later of seven (7) days after the following: (i) if no appeal is filed, the expiration date of the time provided

9

for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs, expenses, Class Representative Service Awards; or (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified), shall not in any way delay or preclude a judgment from becoming Final.

x.    "Final Approval Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

y.    "Judgment" means the final judgment, either substantially in the form attached hereto as Exhibit B or otherwise revised by the Court, to be entered by the Court approving the Settlement.

z.    "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting, and settling the Action, for which Class Counsel intends to apply to the Court for reimbursement from the Settlement Fund.

aa.    "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses; (iv) Class Representative Service Awards awarded by the Court; and (v) any attorneys' fees awarded by the Court.

bb.    "Notice" means the Notice of (i) Pendency of Class Action, Certification of Class, and Proposed Settlement; (ii) Final Approval Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which shall be made available online at the Settlement Website, emailed to Class Members for which addresses are available, or mailed to potential Class Members upon request.

cc.    "Notice and Administration Costs" means the costs, fees and expenses that are incurred by the Settlement Administrator and/or Class Counsel in connection with: (i) providing notice to the Class; and (ii) administering the Settlement, including but not limited to the Claims process, as well as the costs, fees and expenses incurred in connection with the Escrow Account; and (iii) providing notice on behalf of Defense Counsel under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 et seq. ("CAFA").

dd.    "Parties" means Class Plaintiffs on behalf of themselves and the Class, Receiver, and Wells Fargo.

ee.    "Plaintiffs' Counsel" means all counsel of record for the Class Plaintiffs and the Receiver in this Action.

ff.    "Plan of Allocation" means the plan described in the Notice or any alternate plan approved by the Court for allocation of each Authorized Claimant's share of the Net Settlement Fund.

gg.    "Preliminary Approval Order" means an order to be executed and filed by the Court substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing notice of the Settlement be provided to the Class.

hh.    "Protective Orders" means the orders entered at Dkt. 63, 132 in the McCraner Action and Dkt. 32 in the McNamara Action.

ii.    "Publication Notice" means the notice, substantially in the form attached hereto as Exhibit 3 to Exhibit A to be published as set forth in the Preliminary Approval Order.

jj.    "Receiver" means Thomas W. McNamara as the Court-appointed Receiver over (i) Receivership Entities in the Triangle Action, including Triangle, Corporate Defendants, and related entities, and each of their subsidiaries, affiliates, and assigns a well as any other entity that has conducted any business related to their marketing of negative option offers, as detailed in the Receiver appointment order (Triangle Action, Dkt. 11), and (ii) Receivership Entities in the Apex Action, including Corporate Defendants, Wyoming Related Companies, UK Related Companies, and related entities, and each of their subsidiaries, affiliates, successors, and assigns, as well as any

11

1   other entity related to their marketing or sale of products with a negative option, as detailed in the

2   Receiver appointment order (Apex Action, Dkt. 40).

3           kk.     "Receiver Counsel" means Glancy Prongay & Murray LLP and Logan Smith

4   of McNamara Smith LLP.

5           ll.     "Receiver Complaint" means the First Amended Complaint filed in the

6   McNamara Action on January 5, 2024 at Dkt. 221.

7           mm.     "Releasees" collectively means "Wells Fargo Releasees" and "Class

8   Releasees."

9           nn.     "Released Claims" collectively means the Class Released Claims and Wells

10  Fargo Released Claims.

11          oo.     "Releasors" collectively means Class Releasors and Wells Fargo Releasors.

12          pp.     "Service Award" means such funds as may be awarded by the Court to the

13  Class Representatives in recognition of their time, effort, and service to the Class, expended in

14  pursuing the Action and in fulfilling their obligations and responsibilities as the Class

15  Representatives.

16          qq.     "Settlement" means the settlement terms set forth in this Class Agreement

17  and the Receiver Settlement Agreement.

18          rr.     "Settlement Administrator" means the firm retained by Plaintiffs and

19  Plaintiffs' Counsel, Epiq Class Action & Claims Solutions, or such other entity as the Court shall

20  appoint to provide all notices approved by the Court to potential Class Members and to administer

21  the Settlement.

22          ss.     "Settlement Amount" means thirty-three million U.S. dollars ($33,000,000)

23  in cash. Under no circumstances shall Wells Fargo's total payment obligation under the Agreement

24  exceed thirty-three million dollars ($33,000,000), which is inclusive of all the obligations noted

25  herein.

26          tt.     "Settlement Fund" means the Settlement Amount plus any and all interest

27  earned thereon. Under no circumstances shall Wells Fargo's total payment obligation under the

28

Agreement exceed thirty-three million dollars ($33,000,000), which is inclusive of all the obligations noted herein.

uu.    "Short-Form Notice" means a notice, substantially in the form attached hereto as Exhibit 4 to Exhibit A, containing a basic overview of the Settlement's terms with links to the Notice, Claim Form, and website dedicated to this Settlement, which will be emailed to Class Members for which addresses are available.

vv.    "Tarr" means Tarr Inc., Ad Kings LLC, Apex Advertising LLC, Brand Development Corp., Coastal Ads LLC, Delux Advertising LLC, Diamond Ads LLC, Digital Nutra LLC, Exclusive Advertising LLC, Iron Ads, LLC, Leadking Advertising LLC, Lead Seeker, LLC, Mints Marketing LLC, Onyx Ads, LLC, Product Center, LLC, Rebem, LLC, Supertiser LLC, Verticality Advertising, LLC, including all of their successors, assigns, affiliates and subsidiaries, and its principal owners Richard Fowler, Ryan Fowler, and Nathan Martinez, all in their capacities as such.

ww.    "Tarr Action" means the enforcement action styled *FTC v. Tarr, Inc., et al.*, No. 3:17-cv-02024-KSC (S.D. Cal.).

xx.    "Tarr Entity" or collectively "Tarr Entities" means Ad Kings LLC; Apex Advertising LLC; Brand Development Corp; Coastal Ads LLC; Delux Advertising LLC; Diamond Ads LLC; Digital Nutra LLC; Exclusive Advertising LLC; Iron Ads LLC; Lead Seeker LLC; Leadking Advertising LLC; Mints Marketing LLC; Onyx Ads LLC; Product Center LLC; Rebem LLC; Supertiser LLC; Tarr Inc; Verticality Advertising LLC; and White Dog Marketing LLC, including successors, assigns, affiliates and subsidiaries, all in their capacities as such.

yy.    "Triangle" means Triangle Media Corporation its principal owners, Brian Phillips, Jasper Rain Marketing, LLC, and Hardwire Interactive, Inc., including all of their successors, assigns, affiliates and subsidiaries, all in their capacities as such.

zz.    "Triangle Action" means the enforcement action styled *FTC v. Triangle Media Corp., et al*., No. 18-cv-1388-TWR-DLL (S.D. Cal.).

aaa.    "Triangle Entity" or collectively "Triangle Entities" means BH Wellness LLC; Bizway Services LLC; Blended Wellness Marketing LLC; Body & Wellness Marketing LLC;

Brand Junction Wellness LLC; Centered Energy Marketing LLC; Clear Option Wellness LLC; Concur Marketing Solutions LLC (formerly Clean Option Wellness LCC); Direct Access Products LLC; Endeavour Steel Marketing LLC; Everjoy Nutrition LLC; Fast Order Marketing LLC; Flat6 Development LLC; Global Northern Trading Ltd; Great Plains Nutrition LLC; Green Valley Wellness LLC; H1 Marketing LLC; Hardwire Interactive Distribution LLC; Hardwire Interactive Inc.; Jasper Rain Marketing LLC; Jester Youth Marketing LLC; Jet Time Marketing LLC; Joint Capital Marketing LLC; Jolt Line Marketing LLC; Kinetic Products Marketing LLC; Little Kite Wellness LLC; Mass Drift Marketing LLC; Mind Wellness Marketing LLC; Network DBS LLC; Rainbow Drop Wellness LLC; Real Vitality Marketing LLC; Rivers Edge Marketing LLC; Sierra Bay Nutrition LLC; Simple Gig Marketing LLC; Squads Services LLC (Squad6 Services LLC); Sunrise Pointe Wellness LLC; Sunset Orders Marketing LLC; Total Market Products LLC; Triangle Logistics Solutions LLC; Triangle Media Corp.; Turbid Elite Marketing LLC; Vital Global Marketing LLC; Zoom Standard Marketing LLC; and ZPHK Holdings LLC, including successors, assigns, affiliates, and subsidiaries, all in their capacities as such.

bbb.    "Taxes" means: (i) all federal, state, and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; and (ii) the expenses and costs incurred by Class Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants).

ccc.    "Unknown Claims" mean any Class Released Claims which Class Releasors do not know or suspect to exist in his, her, or its favor at the release of such claims, and any Wells Fargo Released Claims which any Wells Fargo Releasor does not know or suspect to exist in their favor at the time of the release of such claims, which if known by them might have affected their decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Class Plaintiffs and Wells Fargo shall expressly waive, and each of the other Releasors shall be deemed to have waived, and by operation of the Judgment shall have to the fullest extent allowed by law, any and all provisions, rights, and benefits conferred by any statute of any state or territory of the United States, or principle

14

of common law, or foreign law, which is similar comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Class Plaintiffs, Wells Fargo, and the other Releasors may hereafter discover facts in addition to or different from those which they now know or believes to be true with respect to the subject matter of the Released Claims, but the Parties stipulate and agree that, upon the Effective Date of the Settlement, Class Plaintiffs and Wells Fargo shall expressly waive, and each of the other Releasors shall be deemed to have waived, and by operation of the Judgment shall have, fully, finally, and forever settled and released to the fullest extent allowed by law, any and all Released Claims known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of fiduciary duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and each of the other Releasors shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material term of the Settlement of which this release is a part.

ddd.    "Valid Claim Form" means a claim form submitted to the Settlement Administrator that is approved by the Settlement Administrator.

eee.    "Wells Fargo" or "Defendants" means collectively defendants Wells Fargo & Company and Wells Fargo Bank, N.A.

fff.    "Wells Fargo Releasees" means (i) Wells Fargo; and (ii) each of Wells Fargo's past, present, or future parents, holding companies, subsidiaries, affiliates, vendors, agents, successors, assignors, assignees, and/or assigns and their respective subsidiaries, affiliates, vendors, agents, successors, assignors, assignees, and/or assigns, and each of their respective present, former,

or future officers, directors, shareholders, employees, representatives, consultants, accountants, and attorneys, all in their capacities as such.

ggg.    "Wells Fargo Released Claims" mean all claims and causes of action of every nature and description, whether a known claim or Unknown Claims, whether arising under federal, state. Common, or foreign law, whether suspected or unsuspected, whether contingent or vested, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against Wells Fargo. For the avoidance of doubt, any claims, causes of action, or other past, current, or future obligation or contracts between the Class Releasees and Wells Fargo that are not related to the claims in this case are excluded from Wells Fargo Released Claims ("Excluded Claims"). This includes any separate and continuing contractual or equitable obligations that may currently exist between or among the Class Releasees and Wells Fargo, including but not limited to, a Claimant's bank account, mortgage, automobile loan or personal loan that any Class Releasee has with Wells Fargo. Nothing in this Class Agreement shall be deemed or construed as a modification or release of or from any accounts, agreements, debts, loans, promissory notes, mortgages, security agreements, contracts, liabilities, or obligations Claimants now have or may have in the future (or any one of them, or any combination of them) that are not specifically and expressly released.

hhh.    "Wells Fargo Releasors" means (i) Wells Fargo; and (ii) each of Wells Fargo's past, present, or future parents, holding companies, subsidiaries, vendors, agents, successors, assignors, assignees, and/or assigns and their respective subsidiaries, vendors, agents, successors, assignors, assignees, and/or assigns, and each of their respective present, former, or future officers, directors, shareholders, employees, representatives, consultants, accountants, and attorneys, all in their capacities as such.

iii.    The plural of any defined term includes the singular, and the singular of any defined term includes the plural.

jjj.    Other terms are defined in the text of this Class Agreement and shall have the meaning given to those terms in the text.  In all documents related to the Settlement, capitalized terms shall have the meanings given to them in this Class Agreement.

### CLASS CERTIFICATION

2.    Solely for purposes of the Settlement and for no other purpose, Wells Fargo stipulates and agrees to: (a) certification of the Class pursuant to Fed. R. Civ. P. Rules 23(a) and 23(b)(3); (b) certification of Class Plaintiffs as class representatives for the Class; and (c) appointment of Class Counsel for the Class under Fed. R. Civ. P. 23(g). If the Court does not grant Final Approval of the Settlement, or if this Class Agreement is otherwise terminated or rendered null and void, the certification of the Class shall be automatically vacated and shall not constitute evidence of or any determination that the requirements for certification of a class for trial or other litigation purposes in this Action or any other action are satisfied; in such circumstances, Wells Fargo reserves all rights to challenge certification of any class or subclass for trial or other litigation purposes in the Action or in any other action on all available grounds as if no class had been certified in this Action for purposes of the Settlement.

### PRELIMINARY APPROVAL OF SETTLEMENT

3.    As soon as practicable after the Receiver's Settlement Agreement is approved by the courts in the Apex Action and the Triangle Action, Plaintiffs will move for preliminary approval of the Settlement, certification of the Class for settlement purposes only, and scheduling a hearing for final approval of the Settlement, which motion shall be unopposed by Defendants.  Concurrently with the motion for preliminary approval, Plaintiffs shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.  Defendants will not oppose the motion for preliminary approval of the Settlement or the scheduling of a hearing for final approval of the Settlement.

### RELEASE OF CLAIMS

4.    The obligations incurred pursuant to this Class Agreement are in consideration of: (i) the full and final disposition of the Action as against Defendants; and (ii) the Releases provided for herein.

5.      Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Class Releasors shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Class Released Claim against Wells Fargo Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Class Released Claims against any Wells Fargo Releasee. Class Releasors further covenant that this Class Agreement shall be a complete defense to any of the Class Released Claims against any of the Wells Fargo Releasees.  This release shall not apply to any person or entity who or which submits a request for exclusion from the Class that is accepted by the Court.

6.      After the Effective Date, Class Plaintiffs and all the other members of the Class, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Class Released Claims on behalf of the respective Class Member in such capacity only, further covenant not to sue, in any forum worldwide, for damages of any nature, any Wells Fargo Releasee on the basis of any Class Released Claim.  Class Plaintiffs further covenant not to assist any third party in commencing or maintaining any suit related to any Class Released Claim, provided however, that nothing in this paragraph shall prevent Plaintiffs from responding to any subpoena or valid legal process subject to the confidentiality agreement entered into by the Parties. This paragraph shall not apply to any person or entity who or which submits a request for exclusion from the Class that is accepted by the Court.

7.      After the Effective Date, Class Plaintiffs and all the other members of the Class, on behalf of themselves, and on behalf of any other person or entity that may have past, current, or future obligations or contracts between them and Wells Fargo not related to the claims in this case covenant and agree that (i) the terms governing those obligations or contracts remain valid, binding, and in full force and effect, (ii) nothing in this Class Agreement shall be deemed to impair, limit, reduce, or release in any manner whatsoever, any of their obligations with Wells Fargo, and (iii) nothing in this Class Agreement affects, or waives, any of Wells Fargo's rights or claims related to those obligations or contracts.

8.      Class Plaintiffs and Wells Fargo each represent and warrant that they have not

assigned or otherwise transferred any interest in any of the Released Claims against any Releasees, and further covenant that they will not assign or otherwise transfer any interest in any of the Released Claims. Class Plaintiffs and Wells Fargo further represent and warrant that, upon the Effective Date, they will have no surviving claim or cause of action against any of the Releasees with respect to any of the Released Claims. The Parties, and each of them on their own behalf only, represent and warrant that they are voluntarily entering into the Agreement as a result of arm's-length negotiations and mediation among their counsel and various third-party mediators including Judges Leshner, Gallo, and Weinstein; and that in executing the Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing the Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any party to the Agreement. Each of the Parties assumes the risk of mistake as to facts or law.

9.    Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Wells Fargo Releasors shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Wells Fargo Released Claim against Class Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Wells Fargo Released Claims against any Class Releasee. This release shall not apply to any person or entity who or which submits a request for exclusion from the Class that is accepted by the Court.

10.    The Receiver and Wells Fargo have provided each other with similar releases in the Receiver's Settlement Agreement.

11.    Notwithstanding ¶¶ 5 through 9 above, nothing in the Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of this Class Agreement, the Receiver's Settlement Agreement, or the Judgment.

## THE SETTLEMENT CONSIDERATION

12.    In consideration of the settlement of the Class Released Claims and Receiver Released Claims set forth in the Receiver's Settlement Agreement against Wells Fargo Releasees, Wells Fargo, on behalf of all Wells Fargo Releasees, shall pay or cause to be paid the Settlement Amount into the Escrow Account no later than thirty (30) days after the latter of: (a) the approval of the Receiver Settlement Agreement in the Apex Action; (b) the approval of the Receiver Settlement Agreement in the Triangle Action; (c) the date of entry by the Court of an order preliminarily approving this Class Agreement; and (d) Defense Counsel's receipt from Class Counsel of the information necessary to effectuate a transfer of funds to the Escrow Account, including wiring instructions that include the bank name and ABA routing number, account name and number, and a signed W-9 reflecting a valid taxpayer identification number for the qualified settlement fund in which the Settlement Amount is to be deposited. The Settlement Amount is an all-in settlement number, meaning that it includes all attorneys' fees, administrative costs, taxes, expenses, Class Member benefits, Service Awards, and costs of any kind associated with the resolution of this Action. Wells Fargo only shall pay, or be liable to pay, any part of the Settlement Amount. Under no circumstances shall Wells Fargo be required to pay more than the Settlement Amount pursuant to this Class Agreement.

## USE OF SETTLEMENT FUND

13.    The Settlement Fund shall be used to pay: (a) any Taxes; (b) any Notice and Administration Costs; (c) any court-approved Litigation Expenses and Class Representative Service Awards; and (d) any court-approved attorneys' fees. The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶21-31 below.

14.    Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Class Agreement and/or further order of the Court. The Escrow Agent shall invest any funds in the Escrow

Account exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury Bills, a U.S. Treasury Fund, or a bank account that is either: (a) fully insured by the Federal Deposit Insurance Corporation; or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Agent shall reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates. Wells Fargo shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Escrow Agent.

15. The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Class Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Class Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. Wells Fargo Releasees shall not have any liability or responsibility for any such Taxes. Upon written request, Wells Fargo will provide to Class Counsel the statement described in Treasury Regulation § 1.468B-3(e). Class Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

16. All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the

Settlement Fund as provided herein.  Wells Fargo makes no representations, and it is understood and agreed that Wells Fargo has made no representations, as to the taxability of the payment of any Attorneys' Fees and Expenses, or the payment of any Service Awards to the Class Representatives. Wells Fargo Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to or arising out of the determination, administration, calculation, investment, allocation, distribution, or payment of award amounts or distributions, the payment or withholding of taxes, or any losses incurred in connection therewith or for the acts or omissions of Class Counsel or its agents with respect to the payment of Taxes, as described herein.  Further, no opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Class Agreement.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member. No person shall have any claim against Wells Fargo Releasees, Class Counsel, or any other agent designated pursuant to this Class Agreement based upon the distributions made substantially in accordance with this Class Agreement or any order of Court.

17.    The Settlement is a common fund, lump sum, non-reversionary settlement.  Upon the occurrence of the Effective Date, no Defendant, Wells Fargo Releasee, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of Valid Claim Forms by Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to authorized Claimants from the Net Settlement Fund, including, as outlined in the Receiver Settlement Agreement, the amounts paid through the delivery of funds through the Apex and Triangle receiverships to the FTC for the FTC's distribution in accordance with its existing process already established in the Apex Action and Triangle Action for making distributions to Apex and Triangle consumers, each of whom will be a Class Member.

18.     Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Class Counsel may pay from the Settlement Fund, without further approval from Wells Fargo or further order of the Court, all Notice and Administration Costs actually incurred and paid or payable, as well as any notice required under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 *et seq*.  In the event that the Settlement is terminated pursuant to the terms of this Class Agreement, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Wells Fargo, any of the other Wells Fargo Releasees, or any other person or entity who or which paid any portion of the Settlement Amount.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

19.     Plaintiffs' Counsel will seek court approval for a collective award of attorneys' fees to Plaintiffs' Counsel, including all of Receiver's Counsel and Class Counsel's fees, reimbursement of Litigation Expenses, and a request for Service Awards related to Class Plaintiffs' representation of the Class, all to be paid from (and out of) the Settlement Fund.  Wells Fargo Releasees shall not have any liability or responsibility whatsoever for any such attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel.  An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Class Agreement and is not a condition of the Settlement embodied herein.  Neither Plaintiffs nor Plaintiffs' Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees, Litigation Expenses, and/or Class Plaintiff Service Awards.  Plaintiffs' Counsel's application for an award of attorneys' fees Litigation Expenses, and Service Awards is not the subject of any agreement between Wells Fargo and Plaintiffs other than what is set forth in this Class Agreement and the Receiver Settlement Agreement.

20.     Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Plaintiffs' Counsel by the Settlement Administrator within fifteen (15) days of (i) the Court's entry of the Judgment finally approving the Settlement, or (ii) the Court's entry of an order approving Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, whichever is later, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject

to Plaintiffs' Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Class Agreement or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed and such order reducing or reversing the award has become Final. Plaintiffs' Counsel shall make the appropriate refund or repayment in full no later than thirty (30) days after: (a) receiving from Defense Counsel's notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees and/or Litigation Expenses has become Final. An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Class Agreement and is not a condition of the Settlement embodied herein. The procedure for, and the grant, denial, or disallowance by the Court of the application for Attorneys' Fees and Expenses is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to any application for Attorneys' Fees and Expenses, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Class Agreement, or affect or delay the Final Judgment approving the Agreement or Settlement. Neither Plaintiffs nor Plaintiffs' Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

**NOTICE AND SETTLEMENT ADMINISTRATION**

21. As part of the Preliminary Approval Order, Plaintiffs shall seek appointment of a Settlement Administrator. Plaintiffs seek to retain Epiq Class Action & Claims Solutions, with Wells Fargo's approval, as the Settlement Administrator. If Plaintiffs seek to retain, or the Court decides to appoint, a different Settlement Administrator, Wells Fargo shall have the right to object or oppose the appointment. The Settlement Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing and approving or denying Claims, and making the appropriate payments (as well as delivering amounts to the Receiver for the purpose of making distributions to the FTC through its existing distribution program to Apex and Triangle consumers). Neither Wells Fargo, nor any other Wells Fargo Releasee, shall have any involvement in or any

responsibility, authority, or liability whatsoever for the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Plaintiffs, any other Class Members or Plaintiffs' Counsel in connection with the foregoing, and the selection of the Settlement Administrator, and the Plan of Allocation. Defense Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

22. In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Plaintiffs' Counsel shall cause the Settlement Administrator to: (a) email the Notice to those members of the Class as may be identified through reasonable effort; (b) create the Settlement Website that will, among other things, allow Claimants to file Claims online; (c) have the Publication Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court; and (d) post the Notice, Claim Form, Complaint, Class Agreement and other relevant documents on the Settlement Website.

23. For the purposes of identifying and providing notice to the Class, the Settlement Administrator shall use two methods: (i) for Class Members who transacted with the Apex, Triangle, and Tarr Entities, the notice shall be by publication (since Plaintiffs do not have contact information for those Class Members); and (ii) for Class Members who transacted with Apex and Triangle Entities, the available business records (consisting of names and email addresses) will also be used to send email notifications to those Class Members. The Settlement Administrator shall determine whether each Claim submitted is valid in accordance with the Plan of Allocation (as set forth in the Notice attached hereto as Exhibit 1 to Exhibit A, or in such other plan of allocation as the Court approves).

24. The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Class Agreement and it is not a condition of the Settlement or of this Class Agreement that any particular plan of allocation be approved by the Court. Plaintiffs and Plaintiffs' Counsel may not cancel or terminate the Settlement (or this Class Agreement) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action. Wells Fargo and the other Wells Fargo Releasees shall not object in any way to the

Plan of Allocation (as described in the Notice attached as Exhibit A-1) or any other plan of allocation

in this Action.[2]  No Defendant, nor any other Wells Fargo Releasee, shall have any involvement

with or liability, obligation or responsibility whatsoever for the application of the Court-approved

plan of allocation.

25.    Any Class Member who (1) did not previously receive a distribution payment from

the FTC in the Apex or Triangle Actions; and (2) does not submit a Valid Claim Form, will not be

entitled to receive any distribution from the Net Settlement Fund, but will otherwise by bound by

all of the terms of this Class Agreement and this Settlement, including the terms of the Judgment.

26.    Any Class Member seeking to exclude him or herself from the Class must timely

submit proof of his/her membership in the Class by the Exclusion/Objection Deadline. The

Settlement Administrator shall provide copies of any requests for exclusion and/or objections to

Plaintiffs' Counsel and Defense Counsel within seven (7) days of receipt.  The Settlement

Administrator shall provide a complete and final list of exclusion requests and/or objections to

Plaintiffs' Counsel and Defense Counsel within seven (7) days of the Exclusion/Objection Deadline.

If the Settlement Administrator receives any objections and/or requests for exclusion after the

deadline for the submission of such requests, the Settlement Administrator shall promptly provide

Plaintiffs' Counsel and Defense Counsel with copies thereof.

27.    With respect to any requests for exclusion from the Class, Wells Fargo reserves all

legal rights and defenses, including, but not limited to, any defenses relating to whether the person

qualifies as a Class Member and/or has standing to bring any claim. Wells Fargo may challenge the

---

[2] If the Court does not approve the proposed Plan of Allocation (as described in the Notice attached as Exhibit A-1), the Parties agree to work cooperatively to modify the plan of allocation in any manner necessary to completely satisfy any concerns raised by the Court (including as to the distribution structure, claim process, plan administration, or any other aspect identified by the Court), and to cooperate in obtaining Court approval of any modified plan.  If the Court refuses to approve an initial or a subsequently modified plan of allocation using Plaintiffs' proposed structures, the Parties will continue to cooperate with one another and be open to considering all options necessary to obtain the Court's approval of a plan, including a structure where a single administrator will make pro-rata distributions to all class members who submit a timely and valid claim form without a distinction between the Apex, Triangle, and Tarr Entities, and without distributions through the Federal Trade Commission.  If the Parties reach an impasse, they agree to submit this issue to Magistrate Judge Leshner to decide how the Parties should proceed.

validity of any request for exclusion by filing a motion with the Court within fifteen (15) days after the Settlement Administrator provides Defense Counsel a complete and final list of exclusion requests and/or objections. The Court shall have jurisdiction to resolve any disputes regarding the validity of exclusion requests. Any decision by Wells Fargo not to dispute an exclusion request shall not be a waiver, determination, or preclusive finding against the Wells Fargo Releasees in any proceeding.

28. The Settlement Administrator shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval. Neither Plaintiffs' Counsel, or Wells Fargo Releasees, including Wells Fargo, shall be permitted to review, contest, or object to any Claim Form, or any decision of the Settlement Administrator with respect to accepting or rejecting any Claim for payment by a Class Member unless their assistance is requested by the Settlement Administrator to verify the validity of a Claim. The Settlement Administrator shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

29. For Class Members who previously received a payment from the FTC in the Apex or Triangle Actions, no Claim Form is necessary. Those Class Members will be sent another payment through the existing distribution mechanisms of the FTC.

30. For purposes of determining the extent, if any, to which a Class Member, who (1) was enrolled in recurring billing by a Tarr Entity, or (2) did not previously receive a payment from the FTC in the Apex or Triangle Actions, shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a) Each Class Member shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A.

b) All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice. Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Class Agreement (unless by Order of the Court such Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms

of this Class Agreement and the Settlement, including the terms of the Judgment, if applicable, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Wells Fargo Releasees with respect to any Class Released Claim or Receiver Released Claim. Provided that it is mailed or submitted by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

c)      Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine in accordance with this Class Agreement and the plan of allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

d)      Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Settlement Administrator shall communicate with the Claimant in writing, to (i) give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted and (ii) notifying the Claimant that they must cure deficiencies in the Claim Form within twenty (20) days of notice. Notwithstanding the foregoing, Class Counsel may, at its discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Class. The Settlement Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Settlement Administrator has rejected in whole or in part, the reasons for that rejection, and shall indicate in such notice that the Claimant, whose Claim is rejected, has the right to request review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below;

e)      If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the notice mailing date as required in subparagraph (d) above, serve upon the Settlement Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot

be otherwise resolved, Plaintiffs' Counsel shall thereafter present the request for review to the Court. Notwithstanding the foregoing, Class Counsel may, at its discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Class.

31.    Within thirty (30) Days of the Effective Date, the Settlement Administrator shall distribute to the Authorized Claimants related to Apex, Triangle, and Tarr. Any remaining funds in the Net Settlement Fund following distribution to Authorized Claimants related to Apex, Triangle, and Tarr (*e.g.*, uncashed checks or returned checks with no forwarding address available, *etc.*) shall be distributed as set forth in the Receiver Settlement Agreement.  Payment shall be final and conclusive against all Class Members.  All Class Members whose Claims are not approved by the Settlement Administrator for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Class Agreement and the Settlement, including the terms of the Judgment, if applicable, to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Wells Fargo Releasees with respect to any and all Class Released Claims.

32.    No Person or entity shall have any claim against Plaintiffs, Plaintiffs' Counsel, the Settlement Administrator or any other agent designated by Plaintiffs' Counsel, or Wells Fargo Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Class Agreement and the Receiver Settlement Agreement, the plan of allocation approved by the Court, or any order of the Court.  Class Plaintiffs and Wells Fargo, and their respective counsel, and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Settlement Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

33.    All proceedings with respect to the administration, processing, and determination of Claims, claims by Class Members, and payments to Class Members, and the determination of all

controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court. All Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## TERMS OF THE JUDGMENT

34.    If the Settlement contemplated by this Class Agreement is approved by the Court (after the Receiver has obtained Court approval in the Apex and Triangle Actions), Plaintiffs' Counsel and Defendant's Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

## CONDITIONS OF SETTLEMENT AND EFFECT OF
## DISAPPROVAL, CANCELLATION OR TERMINATION

35.    The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

a)    The court in the Apex Action has approved the Receiver's motion to approve the settlement;

b)    The court in the Triangle Action has approved the Receiver's motion to approve the settlement;

c)    the Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit A attached hereto, as required by ¶3 above;

d)    the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶12 above;

e)    Wells Fargo has not exercised its option to terminate the Settlement pursuant to the provisions of this Class Agreement;

f)    Plaintiffs have not exercised their option to terminate the Settlement pursuant to the provisions of this Class Agreement; and

g)    the Court has approved the Settlement as described herein, following notice to the Class and a hearing, and entered the Judgment and the Judgment has become Final, or the

Court has entered an  and none of the Parties seek to terminate the Settlement and the  has become Final.

36. Upon the occurrence of all of the events referenced in ¶35 above, any and all remaining interest or right of Wells Fargo in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

37. If (i) Wells Fargo exercises its right to terminate the Settlement as provided in this Class Agreement; (ii) Plaintiffs exercise their right to terminate the Settlement as provided in this Class Agreement; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then, unless otherwise agreed to by the Parties:

a) The Settlement and the relevant portions of this Class Agreement shall be canceled and terminated.

b) Plaintiffs and Wells Fargo shall revert to their respective positions in the Action as of October 30, 2024 and will ask the Court to rule on the motions declared moot on March 6, 2025.

c) The terms and provisions of this Class Agreement, with the exception of this ¶37 and ¶¶18, 20, 41, and 57 shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment, or order entered by the Court in accordance with the terms of this Class Agreement shall be treated as vacated, *nunc pro tunc*.

d) Within seven (7) days after joint written notification of termination is sent by Defense Counsel and Plaintiffs' Counsel to the Escrow Agent, the Settlement Fund (including accrued interest thereon and any funds received by Plaintiffs' Counsel consistent with ¶20 above), less any Notice and Administration Costs (as well as any costs of CAFA notice) actually incurred, paid or payable and less any Taxes paid, due or owing shall be refunded by the Escrow Agent to Defendant (or such other persons or entities as Defendant may direct).  In the event that the funds received by Plaintiffs' Counsel consistent with ¶20 above have not been refunded to the Settlement Fund within the seven days specified in this paragraph, those funds shall be refunded by the Escrow

Agent to Wells Fargo (or such other persons or entities as Wells Fargo may direct) immediately upon their deposit into the Escrow Account consistent with ¶20 above.

38.    It is further stipulated and agreed that Plaintiffs, provided they unanimously agree, and Wells Fargo shall each have the right to terminate the Settlement and this Class Agreement, by providing written notice of their election to do so ("Termination Notice") to the other Parties to this Class Agreement within thirty (30) days of: (a) the Court's final refusal to approve the Settlement in this Action, in the Apex Action or the in the Triangle Action or any material part thereof; (b) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; (c) the date upon which the Judgment is reversed in any material respect by an appellate court or the Supreme Court.  However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or reimbursement of Litigation Expenses or with respect to any plan of allocation shall not be considered material to the Settlement, shall not affect the finality of any Judgment, if applicable, and shall not be grounds for termination of the Settlement.

39.    In addition to the grounds set forth in ¶38 above, Wells Fargo shall have the unilateral right to terminate the Settlement in the event that certain conditions regarding requests for exclusion set forth in Wells Fargo's confidential supplemental agreement with Plaintiffs (the "Supplemental Agreement") are met.  The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court, and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until the Court otherwise directs or a dispute arises between Plaintiffs and Wells Fargo concerning its interpretation or application, in which event the Parties shall submit the Supplemental Agreement to the Court in camera and request that the Court afford it confidential treatment.

40.    In addition to the grounds set forth in ¶38 above, Plaintiffs shall also have the right to terminate the Settlement in the event that the Settlement Amount has not been paid as provided for in ¶12 above, but only if (a) Plaintiffs' Counsel has first notified Defense Counsel in writing of Plaintiffs' intent to terminate pursuant to this paragraph, and (b) the entire Settlement Amount is not

deposited in the Escrow Account within fifteen (15) days after Plaintiffs' Counsel has provided such written notice.

## **NO ADMISSION OF WRONGDOING**

41.     This Class Agreement (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Class Agreement, and any proceedings taken pursuant to or in connection with this Class Agreement and/or approval of the Settlement (including any arguments proffered in connection therewith):

a)      shall be governed by Federal Rule of Evidence 408 and any state-law equivalents and shall not be admissible, offered, or received into evidence in any suit, action, or other proceedings, except upon the written agreement of all of the Parties hereto, against any Wells Fargo Releasee as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any Wells Fargo Releasee with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any Wells Fargo Releasee or in any way referred to for any other reason as against any Wells Fargo Releasee, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Class Agreement;

b)      shall not be offered against any Class Releasee as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any Class Releasee that any of their claims are without merit, that any Well Fargo Releasee had meritorious defenses, or that damages recoverable under the Class Complaint or Receiver Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any Class Releasee, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Class Agreement;

33

c)  shall not be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however*, that if this Class Agreement is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement

## MISCELLANEOUS PROVISIONS

42.  All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Class Agreement and the terms of any exhibit attached hereto, the terms of the Class Agreement shall prevail.

43.  The Parties intend this Class Agreement and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Plaintiffs and any other Class Members against Wells Fargo Releasees with respect to the Class Released Claims.  Accordingly, Plaintiffs, Plaintiffs' Counsel, Wells Fargo, and Defense Counsel agree not to assert in any forum that this Action was brought by Plaintiffs or defended by Wells Fargo in bad faith or without a reasonable basis.  No Party shall assert any claims of any violation of Federal Rule of Procedure 11 relating to the institution, prosecution, defense, or settlement of this Action.  The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties, including through a mediation process supervised and conducted by Magistrate Judge Leshner (along with Judges Gallo (Ret.) and Weinstein (Ret.)) and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

44.  While retaining their right to deny that the claims asserted in the Action were meritorious, Wells Fargo and Defense Counsel, in any statement made to any media representative (whether or not for attribution) will not assert that the Action was commenced or prosecuted in bad faith, nor will they deny that the Action was commenced and prosecuted in good faith and is being

settled voluntarily after consultation with competent legal counsel. In all events, Plaintiffs, Plaintiffs' Counsel, Wells Fargo, and Defense Counsel shall not make any accusations of wrongful or actionable conduct by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged. Class Plaintiffs and Plaintiffs' Counsel shall not issue, or otherwise cause to be issued, any press release or advertisement, concerning the Action and/or the facts and circumstances that were the subject of, or disclosed in discovery in, the Action, excepting only such documents created and disbursed as part of the Class Notice. Class Plaintiffs and Plaintiffs' Counsel shall not seek media interviews concerning: (i) the Action; (ii) the facts and circumstances that were the subject of, or disclosed in discovery in the Action; and/or (iii) the Settlement of the Action, excepting only that such statements may be made to individual Class Members in one-on-one communications or as part of the Class Notice. Under no circumstance shall Plaintiffs or Plaintiffs' Counsel disclose to any third party (1) any confidentially designated discovery obtained from Wells Fargo in the Action and/or (2) any non-public information regarding the Parties' negotiation of this Settlement and/or this Class Agreement, except as may be otherwise permitted in this Class Agreement. Specifically, this paragraph does not preclude Plaintiffs' Counsel from identifying and describing the litigation in a fair and accurate way on their company website. If Wells Fargo has concerns about the fairness or accuracy of any such website description, Plaintiffs' Counsel will cooperate with Wells Fargo in good faith to address the concern. This paragraph does not alter the scope of any confidentiality provisions or provisions regarding the use of non-public information set forth in this Class Agreement.

45.     Plaintiffs and Plaintiffs' Counsel agree that they continue to be bound by the terms of the "Stipulation and Protective Order," entered in the Action (McNamara Action Dkt. 32 and McCraner Action Dkt. 63, 132), and further agree that in accordance with paragraph 23 of both Stipulation and Protective Orders, within sixty (60) days from the Effective Date, they will destroy all Designated Information (as defined in the Stipulation and Protective Order) and each Plaintiffs' Counsel that had possession of any Designated Information shall certify such destruction in writing to Defense Counsel by the aforementioned date.

46.     The terms of the Settlement, as reflected in this Class Agreement, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of both Plaintiffs and Wells Fargo (or their successors-in-interest).

47.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

48.     The administration and consummation of the Settlement as embodied in this Class Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of: (a) entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiffs' Counsel, and Service Awards to Class Plaintiffs; and (b) enforcing the terms of this Class Agreement, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court), and the distribution of the Net Settlement Fund to Class Members.

49.     The waiver by one Party of any breach of this Class Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Class Agreement.

50.     This Class Agreement and its exhibits and the Supplemental Agreement constitute the entire agreement among Plaintiffs and Wells Fargo concerning the Settlement and this Class Agreement and its exhibits.  All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party hereto concerning this Class Agreement, its exhibits or the Supplemental Agreement other than those contained and memorialized in such documents.

51.     This Class Agreement may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

52.     Each Party has cooperated in the drafting and preparation of this Class Agreement. Hence, in any construction to be made of the Class Agreement, the same shall not be construed against any Party.

53.     Plaintiffs' Counsel and Defense Counsel agree to cooperate fully with one another in seeking the necessary court approvals of the Preliminary Approval Order and the Settlement, as embodied in this Class Agreement, and to use best efforts to promptly agree upon and execute all

1    such other documentation as may be reasonably required to obtain final approval by the Court of

2    the Settlement.

3            54.    The Settlement Administrator shall provide the notices required by CAFA under 28

4    U.S.C. § 1715 to all appropriate federal and state officials within ten (10) days following the filing

5    of this Class Agreement with the Court, but in no event shall the Final Approval Hearing take place

6    prior to the provision of effective notices and the expiration of the statutory time. At least seven (7)

7    days before the Final Approval Hearing, Wells Fargo shall cause to be served on Plaintiffs' Counsel

8    and filed with the Court proof, by affidavit or declaration, regarding compliance with the notice

9    requirements of CAFA. The Judgment shall make a finding that 28 U.S.C. § 1715 was fully

10   complied with.

11           55.    If any Party is required to give notice to another Party under this Class Agreement,

12   such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand

13   delivery or email transmission, with confirmation of receipt.  Notice shall be provided as follows:

14           All notices to Plaintiffs' Counsel shall be sent to:

15           Jonathan Rotter
             Gregory Linkh
16           Melissa Wright
             Garth Spencer
17           GLANCY PRONGAY & MURRAY LLP
             1925 Century Park East, Suite 2100
18           Los Angeles, California 90067
             jrotter@glancylaw.com
19           glinkh@glancylaw.com
             mwright@glancylaw.com
20           gspencer@glancylaw.com

21           Logan Smith
             McNamara Smith LLP
22           655 West Broadway, Suite 900
             San Diego, California 92101
23           lmisth@mcnamarallp.com

24           All notices to Wells Fargo shall be sent to:

25           David Powell
             Alicia Baiardo
26           Todd Dressel
             MCGUIREWOODS LLP
27           Two Embarcadero Center Suite 1300
             San Francisco, CA 94111–3821
28           dpowell@mcguirewoods.com

1     abairado@mcguirewoods.com
      tdressel@mcguirewoods.com
2
      Molly White
3     Anthony Le
      MCGUIREWOODS LLP
4     1800 Century Park East
      8th Floor
5     Los Angeles, CA 90067–1501
      mwhite@mcguirewoods.com
6     ale@mcguirewoods.com

7        56.    Except as otherwise provided herein, each Party shall bear its own costs.

8        57.    All agreements made and orders entered during the course of this Action relating to

9   the confidentiality of information shall survive this Settlement.

10       **IN WITNESS WHEREOF**, the Parties hereto have caused this Class Agreement to be

11  executed as of June 25, 2025.

12
                                    CLASS REPRESENTATIVE
13                                  PLAINTIFF JOHN MCCRANER

14                                  _John McCraner_
15                                  _____
                                    JOHN MCCRANER
16

17                                  CLASS REPRESENTATIVE
                                    PLAINTIFF JANET POLLARD
18

19                                  _____
                                    JANET POLLARD
20

21                                  CLASS REPRESENTATIVE
                                    PLAINTIFF SHARON STIANSEN
22

23                                  _____
                                    SHARON STIANSEN
24

25
                                    CLASS REPRESENTATIVE
26                                  PLAINTIFF MICHAEL DARLINGTON

27
                                    _____
28                                  MICHAEL DARLINGTON

                                    38

abairado@mcguirewoods.com
tdressel@mcguirewoods.com

Molly White
Anthony Le
MCGUIREWOODS LLP
1800 Century Park East
8th Floor
Los Angeles, CA 90067–1501
mwhite@mcguirewoods.com
ale@mcguirewoods.com

56.    Except as otherwise provided herein, each Party shall bear its own costs.

57.    All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Class Agreement to be executed as of June 25, 2025.

CLASS REPRESENTATIVE
PLAINTIFF JOHN MCCRANER

_____
JOHN MCCRANER

CLASS REPRESENTATIVE
PLAINTIFF JANET POLLARD

_____
JANET POLLARD

CLASS REPRESENTATIVE
PLAINTIFF SHARON STIANSEN

_____
SHARON STIANSEN

CLASS REPRESENTATIVE
PLAINTIFF MICHAEL DARLINGTON

_____
MICHAEL DARLINGTON

abairado@mcguirewoods.com
tdressel@mcguirewoods.com

Molly White
Anthony Le
MCGUIREWOODS LLP
1800 Century Park East
8th Floor
Los Angeles, CA 90067–1501
mwhite@mcguirewoods.com
ale@mcguirewoods.com

56.    Except as otherwise provided herein, each Party shall bear its own costs.

57.    All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Class Agreement to be executed as of June 25, 2025.

CLASS REPRESENTATIVE
PLAINTIFF JOHN MCCRANER

_____
JOHN MCCRANER

CLASS REPRESENTATIVE
PLAINTIFF JANET POLLARD

_____
JANET POLLARD

CLASS REPRESENTATIVE
PLAINTIFF SHARON STIANSEN

_____
SHARON STIANSEN

CLASS REPRESENTATIVE
PLAINTIFF MICHAEL DARLINGTON

_____
MICHAEL DARLINGTON

abairado@mcguirewoods.com
tdressel@mcguirewoods.com

Molly White
Anthony Le
MCGUIREWOODS LLP
1800 Century Park East
8th Floor
Los Angeles, CA 90067–1501
mwhite@mcguirewoods.com
ale@mcguirewoods.com

56.    Except as otherwise provided herein, each Party shall bear its own costs.

57.    All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Class Agreement to be executed as of June 25, 2025.

CLASS REPRESENTATIVE
PLAINTIFF JOHN MCCRANER

_____
JOHN MCCRANER

CLASS REPRESENTATIVE
PLAINTIFF JANET POLLARD

_____
JANET POLLARD

CLASS REPRESENTATIVE
PLAINTIFF SHARON STIANSEN

_____
SHARON STIANSEN

CLASS REPRESENTATIVE
PLAINTIFF MICHAEL DARLINGTON

*Michael Darlington*
_____
MICHAEL DARLINGTON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS REPRESENTATIVE
PLAINTIFF SUSAN R. LANDREAU

_____
SUSAN R. LANDREAU


CLASS REPRESENTATIVE
PLAINTIFF JOHN TUFFIELD

_____
JOHN TUFFIELD


THOMAS W. MCNAMARA, NOT
INDIVIDUALLY, BUT SOLELY AS COURT-
APPOINTED RECEIVER IN THE APEX
ACTION AND TRIANGLE ACTION FOR THE
RECEIVERSHIP ENTITIES, AND THEIR
SUCCESSORS, ASSIGNS, AFFILIATES, AND
SUBSIDIARIES

_____
THOMAS W. MCNAMARA


DEFENDANTS WELLS FARGO & COMPANY
AND WELLS FARGO BANK, N.A.

_____

By: _____

Name:_____

Title: _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS REPRESENTATIVE
PLAINTIFF SUSAN R. LANDREAU


_____

SUSAN R. LANDREAU



CLASS REPRESENTATIVE
PLAINTIFF JOHN TUFFIELD

_____

JOHN TUFFIELD



THOMAS W. MCNAMARA, NOT
INDIVIDUALLY, BUT SOLELY AS COURT-
APPOINTED RECEIVER IN THE APEX
ACTION AND TRIANGLE ACTION FOR THE
RECEIVERSHIP ENTITIES, AND THEIR
SUCCESSORS, ASSIGNS, AFFILIATES, AND
SUBSIDIARIES


_____

THOMAS W. MCNAMARA




DEFENDANTS WELLS FARGO & COMPANY
AND WELLS FARGO BANK, N.A.


_____

By: _____

Name:_____

Title: _____

1

2          CLASS REPRESENTATIVE
           PLAINTIFF SUSAN R. LANDREAU

3
           _____
4          SUSAN R. LANDREAU

5

6          CLASS REPRESENTATIVE
           PLAINTIFF JOHN TUFFIELD
7

8          _____
           JOHN TUFFIELD
9

10

11         THOMAS W. MCNAMARA, NOT
           INDIVIDUALLY, BUT SOLELY AS COURT-
12         APPOINTED RECEIVER IN THE APEX
           ACTION AND TRIANGLE ACTION FOR THE
13         RECEIVERSHIP ENTITIES, AND THEIR
           SUCCESSORS, ASSIGNS, AFFILIATES, AND
14         SUBSIDIARIES

15
           _____
16         THOMAS W. MCNAMARA

17

18

19         DEFENDANTS WELLS FARGO & COMPANY
           AND WELLS FARGO BANK, N.A.
20

21         _____
                ┌─ Signed by:
22         By:  │ Saul Van Beurden
                └─ B3E75820884F4C5...
23
           Name:__Saul Van Beurden_____
24
           Title: _Senior Executive Vice President____
25

26

27

28

1  **APPROVED AS TO FORM:**

2                                   **GLANCY PRONGAY & MURRAY LLP**

3

4                   By: _____
                         Jonathan M. Rotter
5                        Gregory B. Linkh
                         Garth A. Spencer
6                        Melissa C. Wright
                         1925 Century Park East, Suite 2100
7                        Los Angeles, California 90067
                         Telephone: (310) 201-9150
8                        Email:  info@glancylaw.com

9                        *Attorneys for Plaintiffs*

10

11

12

13                               **MCNAMARA SMITH LLP**

14

15                   By: _____
                         Logan D. Smith
16                       655 West Broadway, Suite 900
                         San Diego, California 92101
17                       Telephone: 619-269-0400
                         Facsimile:619-269-0401 lsmith@mcnamarallp.com
18

19                       *Attorneys for Receiver*

20

21

22

23

24

25

26

27

28

                                          40

**MCGUIREWOODS LLP**

By: _____

DAVID C. POWELL SBN #129781
dpowell@mcguirewoods.com
ALICIA A. BAIARDO SBN #254228
abaiardo@mcguirewoods.com
TODD DRESSEL SBN #220812
tdressel@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

MOLLY M. WHITE SBN #171448
mwhite@mcguirewoods.com
ANTHONY Q. LE SBN #300660
ale@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: 310.315.8200;
Facsimile: 310.315.8210

*Attorneys for Defendants Wells Fargo & Company
and Wells Fargo Bank N.A*

1

2

3

EXHIBIT A

4

5

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

6   THOMAS W. MCNAMARA, as the
    Court-Appointed Receiver for Triangle
7   Media Corporation, Apex Capital
    Group, LLC; and their successors,
8   assigns, affiliates, and subsidiaries,

9                   Plaintiff,
            v.
10
    WELLS FARGO & COMPANY, a
11  corporation, WELLS FARGO BANK,
    N.A., a national banking association,
12
                    Defendants.
13

14

15  JOHN MCCRANER, SHARON
    STIANSEN, JANET POLLARD,
16  MICHAEL DARLINGTON, SUSAN
    R. LANDREAU, JOHN N.
17  TUFFIELD, individually and on behalf
    of all similarly situated,
18
                    Plaintiffs,
19          v.

20  WELLS FARGO & COMPANY, a
    corporation, WELLS FARGO BANK,
21  N.A., a national banking association,

22                  Defendants.

23

Lead Case No. 3:21-cv-1245-TWR-DDL
[CONSOLIDATED WITH CASE NO.
3:21-CV-1246-TWR-DDL]

**ORDER PRELIMINARILY
APPROVING SETTLEMENT AND
PROVIDING FOR NOTICE**

24

25

26

27

28

1  WHEREAS, this class action, *McCraner et al. v. Wells Fargo & Company et al.*, Case No. 3:21-cv-1246-TWR-DDL ("McCraner Action" or "Class Action"), is pending before this Court and consolidated under *McNamara v. Wells Fargo & Company et al.*, Lead Case No. 3:21-cv-1245-TWR-DDL (the "McNamara Action") (collectively, the "Action");

6  WHEREAS, (a) plaintiffs John McCraner, Janet Pollard, Sharon Stiansen, Michael Darlington, Susan R. Landreau, and John Tuffield (collectively "Class Plaintiffs"), on behalf of themselves and the Class (defined below), and (b) defendants Wells Fargo & Company and Wells Fargo Bank, N.A. ("Defendants" or "Wells Fargo," and together with Class Plaintiffs, the "Parties") have determined to settle all claims asserted against Defendants in this McCraner Action with prejudice on the terms and conditions set forth in the Stipulation and Agreement of Settlement dated June 25, 2025 (the "Class Agreement") subject to approval of this Court (the "Settlement");

15  WHEREAS, unless otherwise defined herein, all capitalized words contained herein shall have the same meaning that they have in the Class Agreement;

17  WHEREAS, Class Plaintiffs have made a motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with the Class Agreement, certifying the Class for purposes of the Settlement only, and allowing notice to Class Members as more fully described herein; and

22  WHEREAS, the Court has read and considered: (a) Class Plaintiffs' motion for preliminary approval of the Settlement; (b) the papers filed and arguments made in connection with Class Plaintiffs' motion for preliminary approval of the Settlement, including the Plan of Allocation and the release of claims; and (c) the Class Agreement and the exhibits attached thereto;

27  NOW THEREFORE, IT IS HEREBY ORDERED:

28

1

1.    **Nature of McCraner Action** – Class Plaintiffs allege that with the knowing assistance of Wells Fargo, the Apex Entities, Triangle Entities, and Tarr Entities deposited and laundered money they fraudulently obtained from consumers' purchases of consumer products, among others, through accounts at Wells Fargo. Wells Fargo denies all of Class Plaintiffs' claims, and contends that it has fully complied with all laws at issue in this McCraner Action.

2.    **Settlement Class** – Pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, the Court certifies, solely for purposes of effectuating the Settlement, a Class consisting of all persons who were enrolled in recurring billing by any of the Tarr Entities, Triangle Entities, or Apex Entities from 2009 to present (the "Class Period").  Excluded from the Class are Defendants and present and former officers and directors of Wells Fargo. Also excluded from the Class are any persons or entities that exclude themselves by submitting a request for exclusion that is accepted by the Court.

3.    **Class Findings** – Solely for purposes of the Settlement of this McCraner Action, the Court finds that each element required for certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met: (i) the members of the Class are so numerous that their joinder in the McCraner Action would be impracticable; (ii) there are questions of law and fact common to the Class which predominate over any individual questions; (iii) the Class Plaintiffs' claims in the McCraner Action are typical of the claims of the Class; (iv) Class Plaintiffs and Class Counsel have and will fairly and adequately represent and protect the interests of the Class; and (v) a class action is superior to other available methods for the fair and efficient adjudication of the McCraner Action.

4.    The Court hereby finds and concludes that pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, Class Plaintiffs John McCraner, Janet Pollard, Sharon Stiansen, Michael Darlington, Susan R. Landreau, and John Tuffield are adequate class representatives and certifies them

as Class Representatives for the Class.  The Court also appoints Glancy Prongay & Murray LLP as Class Counsel for the Class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

5.    **Preliminary Approval of the Settlement** – The Court hereby preliminarily approves the Settlement, as embodied in the Class Agreement, as being fair, reasonable and adequate to the Class, subject to further consideration at the Final Approval Hearing to be conducted as described below.  The Court finds on a preliminary basis that the Settlement as set forth in the Class Agreement falls within the range of reasonableness and was the product of informed, good-faith, arm's-length negotiations between the Parties and their counsel, and therefore meets the requirements for preliminary approval. The Court finds and concludes that the Parties' years of vigorous litigation and the assistance of a Magistrate Judge in the settlement process supports the finding that the Settlement is non-collusive.

6.    **Final Approval Hearing** – The Court will hold a Final Approval Hearing on _____, 2025 at __:__ _.m. in Courtroom 14A of the James M. Carter and Judith N. Keep United States Courthouse, 333 West Broadway, San Diego, CA 92101, for the following purposes: (i) to determine whether the proposed Settlement on the terms and conditions provided for in the Class Agreement is fair, reasonable and adequate to the Class, and should be approved; (ii) to determine whether a Judgment substantially in the form attached as Exhibit B to the Class Agreement should be entered to dismiss the McCraner Action with prejudice against Defendants; (iii) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable, and should be approved; (iv) to determine whether the motion by Class Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved; and (v) to consider any other matters that may properly be brought before the Court in connection with the Settlement.  Notice of the Settlement and the Final Approval Hearing shall be given to Class Members as set forth in paragraph 8 of this Order.

7.    The Court may adjourn the Final Approval Hearing without further notice to the Class, and may approve the Settlement with such modifications as the Parties may agree to, if appropriate, without further notice to the Class.

8.    **Retention of Settlement Administrator** – Class Counsel is hereby authorized to retain Epiq Class Action & Claims Solutions (the "Settlement Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as processing Claims as more fully set forth below. Notice of the Settlement and the Final Approval Hearing shall be given by Class Counsel as follows:

(a)    not later than thirty (30) days after the date of entry of this Order (the "Notice Date"), the Settlement Administrator shall cause a copy of Short-Form Notice, substantially in the form attached hereto as Exhibit 4, with links to the Notice and the Claim Form, substantially in the forms attached hereto as Exhibits 1 and 2, respectively (the "Notice Packet"), to be e-mailed to potential Class Members who transacted with Apex Entities and Triangle Entities at the e-mail addresses set forth in the available business records, or who otherwise may be identified through further reasonable effort;

(b)    contemporaneously with disseminating the Short-Form Notice, the Settlement Administrator shall establish a website, shall post on the website, and shall make available for download the Notice and the Claim Form, the Class Agreement and exhibits, and the operative Complaint;

(c)    not later than the Notice Date, the Settlement Administrator shall cause the Publication Notice, substantially in the form attached hereto as Exhibit 3, to be published as follows:

(i)    as a banner on various websites that offer products similar to those offered by the Apex Entities, the Triangle Entities, and the Tarr Entities;

4

> > (ii)   as a banner on various websites visited by individuals interested in products similar to those offered by the Apex Entities, the Triangle Entities, and the Tarr Entities;
> >
> > (iii)   as an ad on Facebook/Instagram and X (Twitter);
> >
> > (iv)   as a sponsored ad in search listings on Google, Yahoo, and Bing; and
> >
> > (v)   via *PR Newswire* (in English and Spanish).

(d)   not later than seven (7) days before the Settlement Hearing, Class Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such e-mailing and publication.

(e)   The Settlement Administrator has prepared the CAFA notice which has been made in conformity with 28 U.S.C. § 1715. The Court finds that Wells Fargo has satisfied its obligations under CAFA.

(f)   The Settlement Administrator shall otherwise carry out its duties as set forth in paragraphs 21-31 of the Class Agreement.

9.   **Approval of Form and Content of Notice** – The Court (a) approves, as to form and content, the Notice, the Claim Form, the Publication Notice, and the Short-Form Notice attached hereto as Exhibits 1, 2, 3, and 4 respectively, and (b) finds that the dissemination of the Notice and Claim Form and the publication of the Publication Notice in the manner and form set forth in paragraph 8 of this Order (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Class Members of (a) the pendency of the McCraner Action, (b) the effect of the proposed Settlement (including the Releases to be provided thereunder), (c) their right to object to the Settlement or exclude themselves from the Class, the Plan of Allocation, Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and Class Representative's request for Service Awards, and (d) their right to appear at the Final Approval Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons

and entities entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable laws and rules.  The date and time of the Final Approval Hearing shall be included in the Notice and Publication Notice before they are e-mailed and published, respectively.

10.    **Participation in the Settlement and Claim Form** – Class Members who previously received payments from the FTC in the Triangle Action or the Apex Action do not need to submit a Claim Form to be eligible to receive a distribution from the Settlement. Class Members who did not previously receive a distribution payment from the FTC in the Apex Action or the Triangle Action, or who paid money to Tarr, must complete and submit a Claim Form in accordance with the instructions contained therein to participate in the Settlement and be eligible to receive a distribution from the Net Settlement Fund.  Unless the Court orders otherwise, all Claim Forms must be postmarked or submitted online no later than ninety (90) days after the Notice Date.  Notwithstanding the foregoing, the Settlement Administrator may, at its discretion, accept for processing late, properly completed Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Class.  By submitting a Claim, a person or entity shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim and the subject matter of the Settlement.

11.    Each Claim Form submitted must satisfy the following conditions: (i) it must be properly completed, signed and, submitted in a timely manner in accordance with the provisions of the preceding paragraph; (ii) if applicable, it must be accompanied by supporting documentation deemed adequate by the Settlement Administrator; (iii) if the person executing the Claim Form is acting in a representative capacity, a certification of his or her current authority to act on behalf of the Class Member must be included in the Claim Form to the satisfaction of the Settlement Administrator; (iv) the Claim Form must be complete and contain no

1  material deletions or modifications of any of the printed matter contained therein; and

2  (v) the Claim Form must be signed under penalty of perjury.

3        12.    Any Class Member who (i) did not previously receive a distribution

4  payment from the FTC in the Apex or Triangle Actions; and (ii) does not timely and

5  validly submit a Claim Form or whose Claim is not otherwise approved by the Court:

6  (a) shall be deemed to have waived their right to share in the Net Settlement Fund;

7  (b) shall be forever barred from participating in any distributions therefrom; (c) shall

8  be bound by the provisions of the Class Agreement and the Settlement and all

9  proceedings, determinations, orders, and judgments in the McCraner Action relating

10 thereto, including, without limitation, the Judgment, if applicable, and the Releases

11 provided for therein, whether favorable or unfavorable to the Class; and (d) shall be

12 barred from commencing, maintaining, or prosecuting any of the Class Released

13 Claims against each and all of the Wells Fargo Releasees, as more fully described in

14 the Class Agreement and Notice.  Notwithstanding the foregoing, late Claim Forms

15 may be accepted for processing as set forth in paragraph 10 above.

16       13.    **Exclusion From the Class** – Any member of the Class who wishes to

17 exclude themself from the Class must request exclusion in writing within the time and

18 in the manner set forth in the Notice, which shall provide that: (i) any such request for

19 exclusion from the Class must be mailed or delivered such that it is received no later

20 than twenty-one (21) days before the Final Approval Hearing, to:

21 _____, EXCLUSIONS, c/o _____, P.O. Box

22 _____, _____, __ _____-____, and (ii) each request for exclusion must:

23 (a) state the lead case name and number of *McNamara v. Wells Fargo Bank, N.A., et*

24 *al.*, Lead Case No. 3:21-cv-1245; (b) state the name, address, and telephone number

25 of the person or entity requesting exclusion; (c) contain a statement that indicates a

26 desire to be excluded from the Class, such as "I hereby request that I be excluded from

27 the Class"; (d) state the name of the product(s) involved; (e) provide adequate

28 supporting documentation to demonstrate membership in the Class; and (f) be signed

7

by the person, or an authorized representative of the entity requesting exclusion. A request for exclusion shall not be effective unless it provides all the required information and is received within the time stated above in this paragraph , or is otherwise accepted by the Court.

14. Any person who, and any entity which, timely and validly requests exclusion in compliance with the terms stated in this Order and is excluded from the Class shall not be a Class Member, shall not be bound by the terms of the Settlement or any orders or judgments in the McCraner Action, and shall not receive any payment out of the Net Settlement Fund.

15. Any Class Member who does not timely and validly request exclusion from the Class in the manner stated in this Order: (i) shall be deemed to have waived their right to be excluded from the Class; (ii) shall be forever barred from requesting exclusion from the Class in this or any other proceeding; (iii) shall be bound by the provisions of the Class Agreement, Settlement, and all proceedings, determinations, orders, and judgments in the McCraner Action, including, but not limited to, the Judgment, and the Releases provided for therein, whether favorable or unfavorable to the Class; and (iv) shall be barred from commencing, maintaining, or prosecuting any of the Class Released Claims against any of the Wells Fargo's Releasees, as more fully described in the Class Agreement and Notice.

16. **Appearance and Objections at Final Approval Hearing** – Any Class Member who does not request exclusion from the Class may enter an appearance in the McCraner Action, at his or her own expense, individually or through counsel of his or her own choice, by filing with the Clerk of Court and delivering a notice of appearance to both Class Counsel and Defendants' Counsel, at the addresses set forth in paragraph 17 below, such that it is received no later than twenty-one (21) days before the Final Approval Hearing, or as the Court may otherwise direct. Any Class Member who does not enter an appearance will be represented by Class Counsel.

8

17.    Any Class Member who does not request exclusion from the Class may file a written objection to the proposed Settlement, the proposed Plan of Allocation, Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and/or Class Plaintiffs' request for Service Awards, and appear and show cause, if that person or entity has any cause, why (i) the proposed Settlement should not be approved as fair, reasonable, and adequate; (ii) a Final Judgment should not be entered; (iii) the proposed Plan of Allocation should not be approved; (iv) Class Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses should not be approved; and/or (v) an award should not be made to the Class Representatives; *provided, however*, that no Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, the proposed Plan of Allocation, Class Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses, and/or Class Plaintiffs' request for Service Awards unless that person or entity has filed a written objection with the Court and served copies of such objection on Class Counsel, Defendants' Counsel, and the Settlement Administrator at the addresses set forth below such that they are received no later than twenty-one (21) days before the Final Approval Hearing.

| COURT | CLASS COUNSEL | DEFENDANTS' COUNSEL | SETTLEMENT ADMINISTRATOR |
|---|---|---|---|
| Clerk of Court United States District Court Carter-Keep Courthouse 333 W. Broadway Suite 420 San Diego, CA 92101 | Jonathan Rotter Gregory Linkh Melissa Wright Garth Spencer Glancy Prongay & Murray LLP 1925 Century Park East Suite 2100 Los Angeles, CA 90067 | David Powell Alicia Baiardo Todd Dressel McGuireWoods LLP Two Embarcadero Center Suite 1300 San Francisco, CA 94111  Molly White Anthony Le McGuireWoods LLP 1800 Century Park East 8th Floor Los Angeles, CA 90067 | *Free Trial, Recurring Billing Settlement* Settlement Administrator PO Box xxxx Portland, OR 972xx-xxxx |

18.     Any objections, filings, and other submissions by the objecting Class Member must: (i) state the case name and number of *McNamara v. Wells Fargo Bank, N.A.*, et al., Lead Case No. 3:21-cv-1245; (ii) state the name, address, and telephone number of the person or entity objecting to the Settlement; (iii) contain a statement of the Class Member's objection(s), and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention; (iv) state the name of the product(s) involved; (v) provide adequate supporting documents to prove membership in the Class; (vi) include a statement of whether the objector intends to appear at the Final Approval Hearing, either with or without counsel, and (vii) provide a signature by the person, or an authorized representative of the entity, requesting exclusion.  Objectors who enter an appearance and desire to present evidence at the Final Approval Hearing in support of their objection must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the hearing.

19.     Any Class Member who does not make an objection in the manner provided herein shall be deemed to have waived their right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and Class Plaintiffs' request for Service Awards, and shall be forever barred and foreclosed from objecting to, or from otherwise being heard on, the fairness, reasonableness or adequacy of the Settlement, the Plan of Allocation, Class Counsel's requested attorneys' fees and Litigation Expenses, or Class Plaintiffs' request for Service Awards in this or any other proceeding.

20.     **<u>Stay and Temporary Injunction</u>** – Until otherwise ordered by the Court, the Court stays all proceedings in the McCraner Action other than proceedings necessary to carry out or enforce the terms and conditions of the Class Agreement. Pending final determination of whether the Settlement should be approved, the Court

bars and enjoins Class Plaintiffs, and all other members of the Class, from commencing or prosecuting any and all of the Class Released Claims against each and all of the Wells Fargo Releasees.

21.    **Settlement Administration Fees and Expenses** – All reasonable costs incurred in identifying Class Members and notifying them of the Settlement as well as in administering the Settlement (including any costs of CAFA notice) shall be paid as set forth in the Class Agreement without further order of the Court.

22.    **Settlement Fund** – The contents of the Settlement Fund held by Huntington Bank (which the Court approves as the Escrow Agent), shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Class Agreement and/or further order(s) of the Court.

23.    **Taxes** – Class Counsel is authorized and directed to prepare any tax returns and any other tax reporting form for or in respect to the Settlement Fund, to pay from the Settlement Fund any Taxes owed with respect to the Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Class Agreement.

24.    **Termination of Settlement** – If any of the following occurs: (i) the Settlement is terminated as provided in the Class Agreement, (ii) the Settlement is not approved, or (iii) the Effective Date of the Settlement otherwise fails to occur, then this Order shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Class Agreement, and this Order shall be without prejudice to the rights of Class Plaintiffs, the other Class Members and Defendants, and the Parties shall revert to their respective positions in the McCraner Action as of October 30, 2024, as provided in the Class Agreement.

25.    **Use of this Order** – Neither this Order, the Class Agreement (whether or not consummated), including the exhibits thereto and the Plan of Allocation

contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Class Agreement, nor any proceedings taken pursuant to or in connection with the Class Agreement and/or approval of the Settlement (including any arguments proffered in connection therewith):  (i) shall be offered against any of the Wells Fargo Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Wells Fargo's Releasees with respect to the truth of any fact alleged by Class Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this McCraner Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Wells Fargo Releasees or in any way referred to for any other reason as against any of the Wells Fargo Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Class Agreement; (ii) shall be offered against any of the Class Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Class Releasees that any of their claims are without merit, that any of the Wells Fargo Releasees had meritorious defenses, or that damages recoverable under the Class Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Class Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Class Agreement; or (iii) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; *provided, however*, that if the Class Agreement is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to

12

effectuate the protections from liability granted thereunder or otherwise to enforce the terms of the Settlement.

26.     **Supporting Papers** – Class Counsel shall file and serve the opening papers in support of the proposed Settlement, the Plan of Allocation, Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and Class Plaintiffs' request for Service Awards no later than thirty-five (35) calendar days before the Final Approval Hearing; and responsive papers, if any, shall be filed and served no later than seven (7) calendar days before the Final Approval Hearing.

27.     **Continuance of Final Approval Hearing** – The Court reserves the right to continue the date of the Final Approval Hearing without further notice to the Class Members, and retains jurisdiction to consider all further applications arising out of, or connected with, the proposed Settlement.  The Court may approve the Settlement with such modifications as may be agreed to by the Parties, and if appropriate, without further notice to the Class.

28.     **No Merits Determination** – By entering this Order, the Court does not make any determination as to the merits of this McCraner Action.

29.     **Authority** – the Court hereby authorizes the Parties to take further steps as necessary and appropriate to establish the means necessary to implement the terms of the Class Agreement.

30.     **Jurisdiction** – The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

1    SO ORDERED this _____ day of _____, 2025.

2

3

4                                              _____
                                                        Todd W. Robinson
5                                               United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# If you were enrolled in a recurring billing program for certain consumer products from 2009 to present, you may be entitled to benefits from a Settlement.

**The consumer products included personal care products, electronic cigarettes, and dietary, health, or beauty supplements related to weight loss, muscle development, hair growth, skin care, sexual performance, and cognitive abilities.**

*A Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A $33 million global settlement has been reached in a pair of consolidated lawsuits brought against Wells Fargo & Company and Wells Fargo Bank, N.A. (together, "Defendants"), including a class action filed on behalf of consumers by various individuals and another lawsuit filed by a court-appointed receiver. The lawsuits allege that Defendants assisted the Apex Entities, Triangle Entities, and Tarr Entities (which misled consumers into monthly subscriptions and products), by opening bank accounts for dozens of related companies and transferring millions of dollars into their third-party bank accounts.  Defendants deny all claims and deny any wrongdoing or liability. Plaintiffs and Defendants have agreed to a settlement solely to eliminate the uncertainty, burden, and expense of further protracted litigation.

- The Class includes: all persons who were enrolled in recurring billing by any of the Tarr Entities, Triangle Entities, or Apex Entities from 2009 to present. A list of the Tarr Entities, Triangle Entities, Apex Entities and the products sold can be found below at section 3.

- If the Settlement is approved by the Court, and if you are a Class Member who does not exclude yourself from the Class, you may be eligible for the following Settlement benefits:

Class Members who previously received a payment from the Federal Trade Commission's (FTC) refund programs in connection with the FTC's prior lawsuits against the Triangle or Apex Entities do **not** need to submit a Claim Form to be eligible to receive Settlement benefits.  You are automatically eligible to receive an additional payment, which will be provided to you through the FTC's existing refund programs in their prior cases against Apex and Triangle, subject to any minimum thresholds for payments that may potentially be set by the FTC.

Class Members who (i) did **not** receive a payment from the FTC refund programs in connection with the FTC's prior lawsuits against the Triangle or Apex Entities, and/or (ii) were enrolled in recurring billing with a Tarr Entity **must** submit a timely and valid Claim Form to receive Settlement benefits:

<u>**With Documentation:**</u> If you were enrolled in recurring billing for any of the identified entities, you must submit a timely and valid Claim Form with documentation supporting your out-of-pocket losses to be eligible for a potential pro rata (a legal term meaning proportional share) cash payment based on your documented loss.

<u>**Without Documentation:**</u> If you were enrolled in recurring billing for any of the identified entities, but do not have documentation, you must submit a timely and valid Claim Form, certified under penalty of perjury, to be eligible to receive a flat cash payment of up to $20. Your cash payment may be subject to a pro rata reduction depending on the number of claims received.

**Questions? Visit www.XXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

Your documented loss payment or cash payment may be subject to a *pro rata* (a legal term meaning equal share) reduction depending on the number of claims submitted. For more information, please see the section "What Does This Settlement Provide?" below and the Plan of Allocation at www._____.com.

**This Notice may affect your rights. Please read it carefully.**

| Your Legal Rights & Options | | Deadline |
|---|---|---|
| **Submission of Claim Form Required** | If one or both of the following apply to you, you **must** submit a timely and valid Claim Form to be eligible to receive Settlement benefits:<br>1. You did not receive a payment from the FTC refund programs in connection with the FTC's prior lawsuits against the Triangle or Apex Entities.<br>2. You were enrolled in recurring billing with a Tarr Entity. | Submitted Online or Postmarked by: **MONTH DD, 20YY** |
| **Exclude Yourself** | Get no Settlement benefits. Keep your right to file your own lawsuit against the Releasees about the Released Claims that are released by the Settlement in this lawsuit. | Postmarked by: **MONTH DD, 20YY** |
| **Object to the Settlement** | Stay in the Settlement, but tell the Court why you do not agree with the Settlement. You will still be bound by the Settlement if the Court approves it. | Filed by: **MONTH DD, 20YY** |
| **Do Nothing** | If you (i) did not receive a payment from the FTC refund programs in connection with the FTC's prior lawsuits against the Triangle or Apex Entities, or if you (ii) were enrolled in recurring billing with a Tarr Entity, you will get no Settlement benefits.<br><br>If you previously received a payment from the FTC relating to Triangle or Apex, you will be eligible to receive a payment through the FTC's existing refund programs, subject to any minimum threshold set by the FTC.<br><br>You will give up your right to sue. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.
- The Court must decide whether to approve the Settlement, Class Counsel's requested attorneys' fees and expenses, and the requested Service Awards to the Class Representatives. No Settlement benefits will be provided to Class Members unless the Court approves the Settlement.

## BASIC INFORMATION

### 1. Why is this Notice being provided?

A court authorized this Notice because you have the right to know about the Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The Honorable Todd W. Robinson of the United States District Court for the Southern District of California is overseeing this class action and the related receiver action. This lawsuit is *John McCraner, et al. v. Wells Fargo & Co., et al.,* Case No. 3:21-cv-1246-TWR-DDL (the "McCraner

Action" or "Class Action"), which is consolidated with *Thomas McNamara v. Wells Fargo & Co., et al.*, Case No. 3:21-cv-01245-TWR-DDL (the "McNamara Action" or "Receiver Action"). The individuals who filed the class action lawsuit are called "Plaintiffs" and/or "Class Representatives" and the companies being sued, Wells Fargo & Company and Wells Fargo Bank, N.A., are called "Defendants" or "Wells Fargo."

## 2. What is this lawsuit about?

Plaintiffs filed this lawsuit against Defendants alleging Defendants assisted the Apex Entities, Triangle Entities, and Tarr Entities (which misled consumers into monthly subscriptions and products), by opening bank accounts for dozens of companies and transferring millions of dollars into their third-party bank accounts.

Defendants deny the legal claims and deny any wrongdoing or liability. The Court has not made any determination of any wrongdoing or violation of law by Defendants. Instead, Plaintiffs and Defendants have agreed to a settlement, subject to the Court's approval, to avoid the uncertainty, burden, and expense of further litigation.

## 3. Who are Apex, Triangle and Tarr and what were the consumer products?

Apex, Triangle, and Tarr are three groups of companies that deceptively marketed and sold certain consumer products online. They ran similar, but separate online risk-free trial offers of dozens of products, most of which were personal care products, electronic cigarettes, and dietary, health, or beauty supplements related to weight loss, muscle development, hair growth, skin care, sexual performance, and cognitive abilities. Consumers were offered "free" trials of the products for "just the cost of shipping and handling." Shortly after consumers signed up for the "trial," they were charged the full price of the product and enrolled in continuity plans with monthly charges of products without their consent. Cancelling or obtaining a refund was difficult.

### **Tarr Entities**

These entities include Tarr Inc., Ad Kings LLC, Apex Advertising LLC, Brand Development Corp., Coastal Ads LLC, Delux Advertising LLC, Diamond Ads LLC, Digital Nutra LLC, Exclusive Advertising LLC, Iron Ads, LLC, LeadKing Advertising LLC, Lead Seeker LLC, Mints Marketing LLC, Onyx Ads, LLC, Product Center, LLC, Rebem, LLC, Supertiser LLC, Verticality Advertising, LLC, White Dog Marketing, LLC, and their successors, assigns, affiliates and subsidiaries.

The Tarr Entities marketed products under names including Alpha Rush Pro, Beauty Labs, Bella Labs Instant Wrinkle Reducer, Biofinite, Brain Storm Elite, Cellublast, Crème del Mar, Dermarose Eye Serum, Dermarose Face Cream, Elite Test 360, Fat Burn X, Fat Shred X, Flawless Raspberry Ketone, Forskolin Belly Buster, Garcinia Cambogia Slim Fast, Green Coffee Fat Burn, Jacked Muscle X, La Crème Anti-Wrinkle Cream, Miracle Garcinia Cambogia, Miracle Green Coffee, Miracle Muscle, Miracle Phytoceramides, Miracle Saffron, Perfect Age Skin Care, Ripped Muscle X, Superior Muscle X, Superior Test X, The Memory Plus, Try Miracle Cleanse, and Ultimate Muscle Black Edition.

### **Apex Entities**

These entities include Apex Capital Group, LLC, Capstone Capital Solutions Limited, Clik Trix Limited, Empire Partners Limited, Interzoom Capital Limited, Lead Blast Limited, Mountain Venture Solutions Limited, Nutra Global Limited, Omni Group Limited, Rendezvous IT Limited, Sky Blue Media Limited, and Tactic Solutions Limited, and each of their subsidiaries, affiliates, successors, and assigns.

The Apex Entities marketed products under names including Evermax, Virility, Testro, Biogenic, Celexas, NeuroXR, ElitePro, DermaC, NeuroSleep, TestoXR, Flawless, Follicure, FocusZX1, Rejuvius, Lumera, Sleepeze, Juveliere, Dermanique, Garcinia, Yacon, SlimBody, PureBody, and OptimalPet.

**Triangle Entities**

These entities include Triangle Media Corporation also doing business as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs; Jasper Rain Marketing LLC also doing business as Cranium Power and Phenom Health; Hardwire Interactive Inc. also doing business as Phenom Health, Beauty and Truth, and E-Cigs, and each of their subsidiaries, affiliates, successors, and assigns.

The Triangle Entities marketed products under names including Advanced Trim, BioSlim Burn, Body Boost Garcinia, Body Restore Cleanse, Cerebral X, Erase Repair HA, Eye-Fi, Garcinia Clean XT, Garcinia Lean Xtreme, Nature Renew Cleanse, NO Max Shred, OxyGenius, PhytoLyft, Rapid Lift FX, Renewing Serum, Synagen IQ, TextX Core, Triton Krill Oil, ultrapure Forskolin, Vitamood Plus, and Wrinkle Rewind.

| 4.  What were the FTC actions against Apex, Triangle and Tarr about? |
| --- |

The FTC initiated separate enforcement actions against Tarr, Triangle, and Apex on October 3, 2017, June 25, 2018, and November 14, 2018, respectively. The FTC alleged, among other things, that Tarr, Triangle, and Apex each engaged in unfair and deceptive business practices related to its marketing and sale of consumer products online, enrollment of consumers in continuity plans without consent, and creating difficulties for consumers seeking a refund or cancellation.

Additional information about the FTC's enforcement actions can be found online:

**Tarr**: www.ftc.gov/legal-library/browse/cases-proceedings/142-3236-x180001-tarr-inc

**Triangle**: www.ftc.gov/legal-library/browse/cases-proceedings/172-3108-triangle-media-corporation

**Apex**: www.ftc.gov/legal-library/browse/cases-proceedings/172-3189-apex-capital-group-llc

| 5.  Why is there a Settlement? |
| --- |

Plaintiffs and Defendants do not agree about the claims or allegations made in this lawsuit. The lawsuit has not gone to trial, and the Court has not decided whether Plaintiffs' claims have merit. Nor has the Court decided whether Plaintiffs or Defendants are right, or what, if any damages might be awarded if Plaintiffs are right.  Instead, Plaintiffs and Defendants have agreed to settle the lawsuit. Class Representatives and their lawyers believe the Settlement is best for the Class because of the benefits available and the risks, expense, and uncertainty associated with continuing the lawsuit.

| 6.  Why is this lawsuit a class action? |
| --- |

In a class action, one or more people (called class representatives) sue on behalf of all people who have similar legal claims. Together, all these people are called a class or class members. If the Court certifies a case as a class action, the Court resolves the issues for all class members, except for those class members who timely exclude themselves (opt-out) from the class.

# WHO IS INCLUDED IN THE SETTLEMENT?

| 7.  How do I know if I am included in the Settlement? |
| --- |

You are included in the Class if you are a person who was enrolled in recurring billing by any of the Tarr Entities, Triangle Entities or Apex Entities from 2009 to present. A list of the Tarr Entities, Triangle Entities, Apex Entities and the products sold can be found above at section 3.

## 8. Are there exceptions to being included in the Settlement?

Yes. Excluded from the Class are: Defendants and present and former officers and directors of Wells Fargo.

## 9. What if I am still not sure whether I am part of the Settlement?

If you are still not sure whether you are a Class Member, you may go to www.XXXXXXXXXXXX.com or call the Settlement Administrator toll-free at 1-XXX-XXX-XXXX.

# THE SETTLEMENT BENEFITS

## 10. What does this Settlement provide?

If you are a Class Member and previously received a payment from the FTC in connection with the FTC's lawsuit against Triangle or Apex, you do **not** need to submit a Claim Form to be eligible to receive Settlement benefits related to Triangle or Apex. However, if you were also enrolled in recurring billing with a Tarr Entity, you **must** submit a timely and valid Claim Form for the Tarr Entity only to be eligible to receive Settlement benefits related to Tarr.

If you are a Class Member who (i) did **not** receive a payment from the FTC, and/or (ii) was enrolled in recurring billing with a Tarr Entity, you **must** submit a timely and valid Claim Form to be eligible for the following Settlement benefits.

**With Documentation:** If you were enrolled in recurring billing for any of the identified entities, you must submit a timely and valid Claim Form with documentation supporting your out-of-pocket losses to be eligible for a potential *pro rata* (a legal term meaning equal share) cash payment based on your documented loss.

Examples of reasonable documentation include (but are not limited to): credit card statements, bank statements, and/or email receipts. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.

If you are submitting a Claim Form for a documented loss payment, you must confirm, certified under penalty of perjury, whether you received any refunds of charges you paid to Apex Entities, Triangle Entities, or Tarr Entities. If you received a refund, chargeback, or other form of reimbursement from the Apex Entities, Triangle Entities, Tarr Entities, or any other third-party (e.g. a bank, credit card issuer, payment processor, etc.), you must disclose the amount of the refund.

**Without Documentation:** If you were enrolled in recurring billing by a Tarr Entity, Apex Entity, or Triangle Entity, and do not have supporting documentation, you must submit a timely and valid Claim Form, certified under penalty of perjury, to be eligible to receive a flat cash payment of up to $20.

To be eligible for a flat cash payment, you must (i) briefly describe or name the product(s) involved, (ii) the date purchased, (iii) how you obtained the product(s), (iv) confirm enrollment in a recurring billing program, and (v) confirm you did not receive a refund, chargeback, or reimbursement of any

kind (including from FTC refund programs for Apex or Triangle, from a Triangle or Apex Entity, or from a credit card company), or disclose the amount of the refund.

The flat cash payments may be reduced proportionally such that: (i) flat cash payments related to Tarr Entities total only 50% of the amount allocated to Tarr Entities; (ii) flat cash payments related to Apex Entities total only 25% of the amount allocated to Apex Entities; and (iii) flat cash payments related to Triangle Entities total only 25% of the amount allocated to Triangle Entities.

All Claim Forms must be submitted under penalty of perjury and will be subject to a verification process. The Settlement Administrator will review all submitted Claim Forms and will implement several anti-fraud measures to validate claims. The Settlement Administrator may contact you for additional information. The Settlement Administrator will reject Claims if they, for example: (i) contain significant indicators of fraud, (ii) are untimely, or (iii) are incomplete, to ensure the integrity of the Claims Process.

The Net Settlement Fund will be allocated initially as follows: 45.17% for charges imposed by Triangle Entities, 32.26% for charges imposed by Apex Entities, and 22.57% for charges imposed by Tarr Entities. These allocations are based on the net losses, adjusted by Plaintiffs' assessment of the available causes of action and evidence associated with each enterprise. The payments made to Class Members are likely to be subject to a minimum threshold. A typical minimum threshold requires a Class Member to have a claim worth $10.00 or greater. This is routinely done by settlement administrators and the FTC, because it is not economically feasible to send checks for a lower amount (such as $10.00), and people often do not cash checks in these lower amounts. The Net Settlement Fund will be allocated among all Authorized Class Members/Claimants whose prorated payment is above the minimum threshold (e.g., $10.00). If the prorated payment to any Authorized Class Member/Claimant calculates to less than any threshold that is set, it will not be included in the calculation (i.e., the Recognized Claim will be deemed to be zero) and no distribution will be made to that Authorized Class Member/Claimant. Any prorated amounts of less than the threshold will be included in the pool distributed to those whose prorated payments are above the threshold. For more information about how the Net Settlement Fund will be distributed to Class Members, please see the Plan of Allocation at www. XXXXXXXXXXXX.com.

### 11. How do I know if I have previously received a payment from the FTC?

If you are not sure whether you have previously received a payment from the FTC in connection with the FTC's lawsuit against the Apex Entities, you may go to www.ftc.gov/enforcement/refunds.

For additional information about the FTC's Refund Programs, including the refund process and related frequently asked questions, you may visit the FTC's website at www.ftc.gov/enforcement/refunds.

### 12. What am I giving up to receive Settlement benefits or stay in the Class?

Unless you exclude yourself (opt-out), you are choosing to remain in the Class. If the Settlement is approved and becomes final, all Court orders and any judgments will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Releasees about the allegations and legal issues in this lawsuit that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

### 13. What are the Released Claims?

The Stipulation and Agreement of Settlement dated June 25, 2025 ("Class Agreement") describes the Releases, Released Claims, and Releasees at paragraphs 1 and 4-10, in necessary legal terminology,

so please read these paragraphs carefully. The Class Agreement is available online at www.XXXXXXXXXXX.com. For questions regarding the Releases, Released Claims, or Releasees and what the language in the Settlement Agreement means, you can also contact Class Counsel listed below for free, or you can talk to your own lawyer at your own expense.

## HOW TO GET BENEFITS FROM THE SETTLEMENT

### 14. How do I submit a Claim Form?

If you are a Class Member and (i) did not receive a payment from the FTC refund programs related to the FTC's prior lawsuits against the Triangle or Apex Entities or (ii) if you were enrolled in recurring billing with a Tarr Entity, you must submit a timely and valid Claim Form to be eligible to receive the Settlement benefits as described above. Your Claim Form must be submitted online at www.XXXXXXXXXX.com by **MONTH DD, 20YY**, or mailed to the Settlement Administrator at the address on the Claim Form, **postmarked** by **Month DD, 20YY**. Claim Forms are also available at www.XXXXXXXXXXXX.com, by calling 1-XXX-XXX-XXXX, or by writing to:

*Free Trial, Recurring Billing Settlement*
Settlement Administrator
PO Box 6397
Portland, OR 97228-6397

### 15. What happens if my contact information changes after I submit a Claim Form?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-XXX-XXX-XXXX, or writing to:

*Free Trial, Recurring Billing Settlement*
Settlement Administrator
PO Box 6397
Portland, OR 97228-6397

### 16. When will I receive my Settlement benefits?

The Settlement benefits will be provided after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.XXXXXXXXXXXXX.com for updates.

## EXCLUDE YOURSELF OR OPT-OUT OF THE SETTLEMENT

If you are a member of the Class and want to keep any right you may have to sue or continue to sue the Releasees on your own about the legal claims in this lawsuit or released by the Released Claims, then you must take steps to opt out of the Settlement. This is called excluding yourself from—or "opting-out" of—the Settlement.

### 17. How do I exclude myself (opt-out) of the Settlement?

To exclude yourself from the Settlement, you must mail a written request for exclusion, which includes the following:

1) The case name and number of *McNamara v. Wells Fargo Bank, N.A., et al.*, Case No. 3:21-cv-1245;

2) Your name, address, telephone number, and email address (if any) of the person or entity requesting exclusion;

3) The name of the product(s) involved;

4) Adequate supporting documentation to demonstrate your membership in the Class;

5) A statement that you want to be excluded from the Class, such as "I hereby request to be excluded from the Class"; and

6) Signature of the person, or authorized representative of the entity, requesting exclusion.

The exclusion request must be in writing and **mailed** to the Settlement Administrator at the following address, and be **postmarked** by **MONTH DD, 20YY**:

*Free Trial, Recurring Billing Settlement*
Settlement Administrator
PO Box 6397
Portland, OR 97228-6397

**You cannot exclude yourself (opt-out) by telephone or by email.**

"Mass" or "class" requests for exclusion filed by third parties, including on behalf of a "mass" or "class" of Class Members, or multiple Class Members, where the opt-out has not been signed by each and every individual Class Member will not be allowed.

### 18. If I exclude myself (opt-out) can I still get anything from the Settlement?

No. If you timely and validly opt-out, you will not be able to receive Settlement benefits, and you will not be bound by the Settlement or any judgments in this lawsuit. You can only get Settlement benefits if you stay in the Settlement. If you are a Class Member who (i) did not receive a payment from the FTC refund programs in connection with the FTC's prior lawsuits against the Triangle or Apex Entities, or (ii) were enrolled in recurring billing with a Tarr Entity, you must submit a timely and valid Claim Form to receive the Settlement benefits.

### 19. If I do not exclude myself (opt-out), can I sue the Defendants for the same thing later?

No. Unless you timely and validly opt-out, you give up any right to sue any of the Releasees for the legal claims this Settlement resolves and Releases relating to the lawsuit, and you will be bound by all the terms of the Settlement, proceedings, orders, and judgments in the lawsuit. You must opt-out of this lawsuit to start or continue your own lawsuit or be part of any other lawsuit against the Releasees. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECTING TO THE SETTLEMENT

### 20. How do I tell the Court I do not like the Settlement?

If you are a Class Member, you can tell the Court you do not agree with all or any part of the Settlement, Class Counsel's attorneys' fees and Litigation Expenses, and Service Payments.

To object, you must file your written objection with the Court as provided below by **MONTH DD, 20YY**, **and** mail it to Class Counsel, Defendants' Counsel, and the Settlement Administrator postmarked by or shipped by private courier (such as Federal Express) by **MONTH DD, 20YY**.

To file an objection, you cannot exclude yourself from the Class. Your objection must include all of the following information:

1) The case name and number of *McNamara v. Wells Fargo Bank, N.A., et al.*, Case No. 3:21-cv-1245;
2) Your full name, mailing address, telephone number, and email address (if any) of the person or entity objecting;
3) A statement of your objection(s), and the specific reasons for each objection, including any legal and evidentiary support known to you as the objector or your own lawyer;
4) A statement confirming whether you intend to personally appear and/or testify at the Final Approval Hearing;
5) Signature by the person, or an authorized representative of the entity, objecting (a lawyer's signature is not sufficient); and
6) Proof of your membership in the Class.

To object, you must file your timely written objection with the Court as provided below no later than **MONTH DD, 20YY**, **and** mail it to Class Counsel, Defendants' Counsel, and the Settlement Administrator postmarked by or shipped by private courier (such as Federal Express) by **MONTH DD, 20YY**, at the following addresses:

| COURT | CLASS COUNSEL | DEFENDANTS' COUNSEL | SETTLEMENT ADMINISTRATOR |
|---|---|---|---|
| Clerk of Court United States District Court Carter-Keep Courthouse 333 W. Broadway Suite 420 San Diego, CA 92101 | Jonathan Rotter Gregory Linkh Melissa Wright Garth Spencer Glancy Prongay & Murray LLP 1925 Century Park East Suite 2100 Los Angeles, CA 90067 | David Powell Alicia Baiardo Todd Dressel McGuireWoods LLP Two Embarcadero Center Suite 1300 San Francisco, CA 94111 <br><br> Molly White Anthony Le McGuireWoods LLP 1800 Century Park East 8th Floor Los Angeles, CA 90067 | *Free Trial, Recurring Billing Settlement* Settlement Administrator PO Box 6397 Portland, OR 97228-6397 |

### 21. What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Opting-out is telling the Court that you don't want to be part of the Class. If you exclude yourself (opt-out), you cannot object because you are no longer part of the Settlement.

## THE LAWYERS REPRESENTING YOU

### 22. Do I have a lawyer in the lawsuit?

The Court has appointed Jonathan Rotter, Gregory Linkh, Melissa Wright, and Garth Spencer from the law firm Glancy Prongay & Murray LLP as Class Counsel to represent the Class for the purposes of this Settlement. If you choose to participate in the Settlement, these lawyers will represent you as

a Class Member, unless you choose to hire your own lawyer at your own expense. You do not have to hire your own lawyer if you want to participate in the Settlement and want Class Counsel to represent you. You do not need a lawyer to exclude yourself from the Settlement.

## 23. How will Class Counsel be paid?

Class Counsel has been prosecuting the lawsuit on a contingent basis since before its filing in 2021, has not received any payment of attorneys' fees for representing the Class, and has advanced funds to pay expenses necessarily incurred to prosecute the lawsuit. Class Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund. In addition, Class Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution, and resolution of the claims against Defendants, in an amount not to exceed $2,967,000. Class Counsel will also ask the Court to approve Service Awards in an amount not to exceed $15,000 per Class Representative for his/her efforts in the lawsuit. If awarded by the Court, Class Counsel's attorneys' fees and Litigation Expenses, and the Class Representative's Service Awards will be paid from the Settlement Fund.

## THE FINAL APPROVAL HEARING

The Court will hold a "Final Approval Hearing" to decide whether to approve the Settlement. You may attend and you may ask to speak if you file an objection by the deadline, but you do not have to.

## 24. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on **MONTH DD, 20YY, at XX:XX a.m./p.m.** before the Honorable Todd W. Robinson at the Carter-Keep Courthouse, 333 W. Broadway, Courtroom 14A, San Diego, CA 92101. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's request for attorneys' fees, Litigation Expenses, and Service Awards to the Class Representatives.

If there are objections that were filed by the deadline, the Court will consider them. If you file a timely objection, and you would like to speak at the hearing, the Court, at its discretion, may listen to you or your lawyer speak at the hearing, if you so request.

**Note:** The date and time of the Final Approval Hearing are subject to change without further notice to the Class. The Court may also decide to hold the hearing by video conference or by telephone. You should check the Settlement Website www.XXXXXXXXXXXX.com to confirm the date and time of the Final Approval Hearing have not changed.

## 25. Do I have to attend the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you file an objection, you do not have to attend the Final Approval Hearing to speak about it. As long as you file your written objection by the deadline, the Court will consider it.

## 26. May I speak at the Final Approval Hearing?

Yes, as long as you do not exclude yourself (opt-out) and you do file a timely and complete written objection requesting to speak at the hearing, the Court may allow you to participate and speak for yourself at the Final Approval Hearing (though you are not required to do so). This is called making

an appearance. You can also request to have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed above and specifically include a statement whether you or your lawyer will appear at the Final Approval Hearing.

## GET MORE INFORMATION

| **27. How do I get more information about the Settlement?** |
| --- |

This Notice summarizes the Settlement. Complete details about the Settlement are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.XXXXXXXXXX.com. You may get additional information at www.XXXXXXXXXXXXX.com, by calling toll-free 1-XXX-XXX-XXXX, or by writing to:

*Free Trial, Recurring Billing Settlement*
Settlement Administrator
PO Box 6397
Portland, OR 97228-6397

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK OFFICE REGARDING THIS NOTICE.**

**Questions? Visit www.XXXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

11

**CLAIM FORM**
**Free Trial, Recurring Billing Settlement**
(*McNamara v. Wells Fargo et al.*, No. 3:21-cv-01245-TWR-DDL,
United States District Court for the Southern District of California)

**USE THIS FORM TO MAKE A CLAIM FOR A RECOGNIZED LOSS PAYMENT**

**The DEADLINE to submit this Claim Form online or postmarked: [Month Day, Year]**

**INSTRUCTIONS FOR COMPLETING A CLAIM FORM**

You are a Class Member if you are a person who was enrolled in recurring billing by any of the Tarr Entities, Triangle Entities, or Apex Entities from 2009 to present.[1] A list of the Tarr Entities, Triangle Entities, Apex Entities and the products sold can be found below.

If you are a Class Member who previously received a payment from the FTC in the Triangle Action or the Apex Action, you **do not** need to submit a claim form to be eligible to receive a distribution in the Settlement. If you are a Class Member who did not receive a payment from the FTC in the Triangle Action or the Apex Action or if you are a Class Member who paid money to a Tarr Entity, you need to submit a claim form to be eligible to receive a distribution in the Settlement.

**CLAIMANT INFORMATION**

By completing Section I, you consent to communications from the Settlement Administrator. If your Claimant Information changes prior to distribution of cash payments, you must notify the Settlement Administrator in writing at the address below.

**TARR LOSSES**

If you are a Class Member who was enrolled in recurring billing by any of the Tarr Entities, you must timely submit a Claim Form. You have two options to be eligible for settlement benefits and must complete either Section II or Section III.

**Option #1 (Section II):** If you have documentation to support your out-of-pocket losses (e.g., credit card statements, bank statements, and/or email receipts), you must provide your documentation, and fill out Section II to identify (i) the amount of charges you paid to Tarr Entities, and (ii) the total amount of refunds, chargeback, or other reimbursement of any kind you received from third parties; or that you did not receive any refund, chargeback, or other reimbursement.

Under this option and if you meet these conditions, your Recognized Loss shall be your total documented charges, less the total refunds you received related to those charges ("Claimed Tarr Loss"). Distributions with respect to Claimed Tarr Losses shall be made *pro rata* from the available funds (the Initial Tarr Allocation less the Qualifying Tarr Payments Amount).

**Option #2 (Section III):** If you do not have documentation of your charges or cannot provide documentation, you must fill out Section III to provide the following information: (i) briefly describe or name the product(s)

---

[1] All capitalized terms used in this Claim Form that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 25, 2025 (the "Class Agreement"), and in the Notice of (I) Pendency of Class Action, Certification of Class, and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"). Copies of the Stipulation and the Notice are available at www._____.com. It is important that you read and understand the Notice, which contains important information about the Settlement.

involved, (ii) identify the date when you purchased the product(s), (iii) describe how you obtained the product(s), (iii) identify whether you received a refund, chargeback, or reimbursement of any kind from third parties; or that you did not receive any refund, chargeback, or other reimbursement, (iv) confirm enrollment in a recurring billing program; and (v) attest in a sworn statement under penalty of perjury to the truth of your statements.

Under this option and if you meet these conditions, you are eligible to make a claim for a payment of up to $20.00 (a "Qualifying Tarr Payment"), which may be reduced *pro rata* based on the number of claims for a Qualifying Tarr Payment that are received.

**Tarr Entities:** Tarr Inc., Ad Kings LLC, Apex Advertising LLC, Brand Development Corp., Coastal Ads LLC, Delux Advertising LLC, Diamond Ads LLC, Digital Nutra LLC, Exclusive Advertising LLC, Iron Ads, LLC, LeadKing Advertising LLC, Lead Seeker LLC, Mints Marketing LLC, Onyx Ads, LLC, Product Center, LLC, Rebem, LLC, Supertiser LLC, Verticality Advertising, LLC, White Dog Marketing, LLC, and their successors, assigns, affiliates and subsidiaries.

**Tarr Entities' Marketed Products:** Alpha Rush Pro, Beauty Labs, Bella Labs Instant Wrinkle Reducer, Biofinite, Brain Storm Elite, Cellublast, Crème del Mar, Dermarose Eye Serum, Dermarose Face Cream, Elite Test 360, Fat Burn X, Fat Shred X, Flawless Raspberry Ketone, Forskolin Belly Buster, Garcinia Cambogia Slim Fast, Green Coffee Fat Burn, Jacked Muscle X, La Crème Anti-Wrinkle Cream, Miracle Garcinia Cambogia, Miracle Green Coffee, Miracle Muscle, Miracle Phytoceramides, Miracle Saffron, Perfect Age Skin Care, Ripped Muscle X, Superior Muscle X, Superior Test X, The Memory Plus, Try Miracle Cleanse, and Ultimate Muscle Black Edition.

## APEX LOSSES

If you are a Class Member who was enrolled in recurring billing by an Apex Entity and <u>did not</u> previously receive a payment from the FTC's refund program for Apex in connection with the FTC's prior lawsuit against the Apex Entities, you must timely submit a Claim Form (such a Class Member is a "Apex Claimant"). You have two options to be eligible for settlement benefits and must complete either Section IV or Section V.

**Option #1 (Section IV):** If you <u>have documentation</u> to support your out-of-pocket losses (e.g., credit card statements, bank statements, and/or email receipts), you must provide your documentation, and fill out Section IV to identify (i) the amount of charges you paid to Apex Entities, and (ii) the total amount of refunds, chargeback, or other reimbursement of any kind you received from third parties; or that you did not receive any refund, chargeback, or other reimbursement.

Under this option and if you meet these conditions, your total Recognized Loss shall be your total documented charges, less the total refunds you received relating those charges ("Claimed Apex Loss"). Distributions with respect to Claimed Apex Losses shall be made *pro rata* from the Apex Claims Distribution Amount.

**Option #2 (Section V):** If you <u>do not have documentation</u> of your charges or cannot provide documentation, you must fill out Section V to provide the following information: (i) briefly describe or name the product(s) involved, (ii) identify the date when you purchased the product(s), (iii) describe how you obtained the product(s), (iii) identify whether you received a refund, chargeback, or reimbursement of any kind from third parties; or that you did not receive any refund, chargeback, or other reimbursement, (iv) confirm enrollment in a recurring billing program; and (v) attest in a sworn statement under penalty of perjury to the truth of your statements.

Under this option and if you meet these conditions, you are eligible to make a claim for a payment up to $20.00 (a "Qualifying Apex Payment"), which may be reduced *pro rata* based on the number of claims for a Qualifying Apex Payment that are received.

**Apex Entities:** Apex Capital Group, LLC, Capstone Capital Solutions Limited, Clik Trix Limited, Empire Partners Limited, Interzoom Capital Limited, Lead Blast Limited, Mountain Venture Solutions Limited, Nutra

Global Limited, Omni Group Limited, Rendezvous IT Limited, Sky Blue Media Limited, and Tactic Solutions Limited, and each of their subsidiaries, affiliates, successors, and assigns.

**Apex Entities Marketed Products:** Evermax, Virility, Testro, Biogenic, Celexas, NeuroXR, ElitePro, DermaC, NeuroSleep, TestoXR, Flawless, Follicure, FocusZX1, Rejuvius, Lumera, Sleepeze, Juveliere, Dermanique, Garcinia, Yacon, SlimBody, PureBody, and OptimalPet.

## TRIANGLE LOSSES

If you are a Class Member who was enrolled in recurring billing by a Triangle Entity and <u>did not</u> previously receive a payment from the FTC's refund program for Triangle in connection with the FTC's prior lawsuit against the Triangle Entities, you must timely submit a Claim Form (such a Class Member is a "Triangle Claimant"). You have two options to be eligible for settlement benefits and must complete either Section VI or Section VII.

**Option #1 (Section VI):** If you <u>have documentation</u> to support your out-of-pocket losses (e.g., credit card statements, bank statements, and/or email receipts), you must provide your documentation, and fill out Section VI to identify (i) the amount of charges you paid to Triangle Entities, and (ii) the total amount of refunds, chargeback, or other reimbursement of any kind you received from third parties; or that you did not receive any refund, chargeback, or other reimbursement.

Under this option and if you meet these conditions, your total Recognized Loss shall be your total documented charges, less the total refunds you received relating those charges ("Claimed Triangle Loss"). Distributions with respect to Claimed Triangle Losses shall be made *pro rata* from the Triangle Claims Distribution Amount.

**Option #2 (Section VII):** If you <u>do not have documentation</u> of your charges or cannot provide documentation, you must fill out Section VII to provide the following information: (i) briefly describe or name the product(s) involved, (ii) identify the date when you purchased the product(s), (iii) describe how you obtained the product(s), (iii) identify whether you received a refund, chargeback, or reimbursement of any kind from third parties; or that you did not receive any refund, chargeback, or other reimbursement, (iv) confirm enrollment in a recurring billing program; and (v) attest in a sworn statement under penalty of perjury to the truth of your statements.

Under this option and if you meet these conditions, you are eligible to make a claim for a payment up to $20.00 (a "Qualifying Triangle Payment"), which may be reduced *pro rata* based on the number of claims for a Qualifying Triangle Payment that are received.

**Triangle Entities:** Triangle Media Corporation also doing business as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs; Jasper Rain Marketing LLC also doing business as Cranium Power and Phenom Health; Hardwire Interactive Inc. also doing business as Phenom Health, Beauty and Truth, and E-Cigs, and each of their subsidiaries, affiliates, successors, and assigns.

**Triangle Entities Marketed Products:** Advanced Trim, BioSlim Burn, Body Boost Garcinia, Body Restore Cleanse, Cerebral X, Erase Repair HA, Eye-Fi, Garcinia Clean XT, Garcinia Lean Xtreme, Nature Renew Cleanse, NO Max Shred, OxyGenius, PhytoLyft, Rapid Lift FX, Renewing Serum, Synagen IQ, TextX Core, Triton Krill Oil, ultrapure Forskolin, Vitamood Plus, and Wrinkle Rewind.

## CERTIFICATION

You must review and complete Section VIII to certify under the penalty of perjury each of the following:

(i)     your eligibility to make a claim;

(ii)    the truth and accuracy of the information and documents you provided with the Claim Form;

(iii)   your understanding that you may be subject to audit, verification, and Court review;

(iv)     your understanding that the Settlement Administrator may require you to supplement this Claim or provide additional information; and,

(v)     your understanding that all claim payments are subject to the availability of settlement funds and may be reduced in part or in whole, depending on the type of claim, the determinations of the Settlement Administrator, and as otherwise ordered by the Court.

## <u>OTHER INSTRUCTIONS</u>

If you are a class member with multiple claimed losses (e.g., a Tarr Loss, Apex Loss, and Triangle Loss).  You may submit claims to be eligible for multiple payments related to the Tarr Entities, Apex Entities, or Triangle Entities.  However, you may only select one payment option for each of the Tarr Entities, Apex Entities, or Triangle Entities, as described further below.

***Your Claim Form and all submitted documentation will be reviewed, and must be deemed acceptable by the Settlement Administrator.  Your Claim Form is subject to verification and anti-fraud checks, and may be disallowed if they contain significant indicators of fraud, are untimely, or are incomplete.  The Settlement Administrator may contact you for additional information.***

This Claim Form may be submitted online at www._____.com or mailed to the address below by the deadline. Please type or legibly print all requested information, in blue or black ink. Mail your completed Claim Form, including any supporting documentation, if any, to:

Free Trial Recurring Billing Settlement
Settlement Administrator
PO Box 6397
Portland, OR 97228-6397

## I.    CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to distribution of cash payments, you must notify the Settlement Administrator in writing at the address above. This Claim Form is subject to verification and anti-fraud checks, and may be disallowed if they contain significant indicators of fraud, are untimely, or are incomplete.

First Name                                        M.I.    Last Name

Mailing Address, Line 1: Street Address/P.O. Box

Mailing Address, Line 2

City                                                        State        ZIP Code

Mobile Telephone Number                    Home Telephone Number

Email Address

Date of Birth (mm/dd/yyyy)                Unique ID Number Provided on Notice (if available)

## II.    TARR DOCUMENTED LOSS PAYMENT

If you <u>have documentation</u> to support your out-of-pocket losses for being enrolled in recurring billing for any of the Tarr Entities, you may claim your out-of-pocket losses to be eligible for a potential pro-rata cash payment. To proceed with this option, complete these steps:

(1) Identify the total amount of charges you paid to Tarr Entities;

Tarr Total Out-Of-Pocket Losses:    $ _____ . _____

(2) Identify either (i) the total amount of refunds you received from any third parties, which may include but are not limited to: the FTC's Tarr refund program, a Tarr Entity, a bank, credit card issuer, or payment processor; <u>OR</u> (ii) if you did not receive any refunds, please mark $0 for the refund amount and check the attestation box below.

Tarr Total Refund Amount:    $ _____ . _____

☐ By checking this box, I attest under penalty of perjury that I <u>did not receive</u> a refund of any money I paid to the Tarr Entities.

(3) Provide with this claim form the documentation to support your out-of-pocket losses. Reasonable documentation includes (but is not limited to): credit card statements, bank statements, and/or email receipts. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. If your documentation is found to be insufficient, the Settlement Administrator may request additional information and/or documentation to support your claim.

***If you completed this Section II, you cannot claim the charges imposed by any of the Tarr Entities if you also completed Section III for a Tarr Qualifying Payment.***

Questions? Go to www._____.com or call 1-XXX-XXX-XXXX

### III.    TARR QUALIFYING PAYMENT

If you <u>do not have documentation</u> to support your out-of-pocket losses for being enrolled in recurring billing for any of the Tarr Entities, you must provide additional information to be eligible to receive a distribution of up to $20. To proceed with this option, provide all of the information requested in this section.

(1) Describe or name the product(s) involved: _____

_____

_____

_____

_____

_____

(2) Identify the date you purchased the product(s): _____

_____

_____

_____

_____

(3) Describe how you obtained the product(s): _____

_____

_____

_____

_____

_____

_____

(4) Did you receive a refund, chargeback, or reimbursement of any kind (including from an FTC refund programs for Tarr, a Tarr Entity, a bank, a credit card issuer, or a payment processor):

☐ By checking this box, I attest under penalty of perjury that I <u>received</u> a refund, chargeback, or reimbursement for $\boxed{\$~~~~~~~.~~~}$ related to the products I purchased from a Tarr Entity.

**OR**

☐ By checking this box, I attest under penalty of perjury that I <u>did not receive</u> a refund, chargeback, or reimbursement of any kind.

(5) Review the following attestation and check the box if you agree.

☐ By checking this box, I attest under penalty of perjury that I (i) obtained the products described above, (ii) in the manner described above, (iii) was enrolled in a recurring billing program for the products obtained.

***If you completed this Section III, you cannot claim the charges imposed by any of the Tarr Entities if you also completed Section II for a Tarr Documented Loss Payment.***

## IV.    APEX DOCUMENTED LOSS PAYMENT

If you <u>have documentation</u> to support your out-of-pocket losses for being enrolled in recurring billing for any of the Apex Entities, you may claim your out-of-pocket losses to be eligible for a potential pro-rata cash payment. To proceed with this option, complete these steps:

(1) Identify the total amount of charges you paid to Apex Entities;

Apex Total Out-Of-Pocket Losses:      $ \boxed{\$\ |\ |\ |\ |\ |\ .\ |\ |\ }$

(2) Identify either (i) the total amount of refunds you received from any third parties, which may include but are not limited to: the FTC's Apex refund program, an Apex Entity, a bank, credit card issuer, or payment processor; <u>OR</u> (ii) if you did not receive any refunds, please mark $0 for the refund amount and check the attestation box below.

Apex Total Refund Amount:      $ \boxed{\$\ |\ |\ |\ |\ |\ .\ |\ |\ }$

☐  By checking this box, I attest under penalty of perjury that I <u>did not receive</u> a refund of any money I paid to the Apex Entities.

(3) Provide with this claim form the documentation to support your out-of-pocket losses. Reasonable documentation includes (but is not limited to): credit card statements, bank statements, and/or email receipts. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. If your documentation is found to be insufficient, the Settlement Administrator may request additional information and/or documentation to support your claim.

***If you completed this Section IV, you cannot claim the charges imposed by any of the Apex Entities if you also completed Section V for an Apex Qualifying Payment.***

[Remainder of this Page Left Intentionally Blank]

## V.    APEX QUALIFYING PAYMENT

If you do not have documentation to support your out-of-pocket losses for being enrolled in recurring billing for any of the Apex Entities, you must provide additional information to be eligible to receive a distribution of up to $20. To proceed with this option, provide all of the information requested in this section.

(1) Describe or name the product(s) involved: _____

_____

_____

_____

_____

_____

_____

(2) Identify the date you purchased the product(s): _____

_____

_____

_____

_____

(3) Describe how you obtained the product(s): _____

_____

_____

_____

_____

_____

_____

(4) Did you receive a refund, chargeback, or reimbursement of any kind (including from an FTC refund programs for Apex, an Apex Entity, a bank, a credit card issuer, or a payment processor):

☐ By checking this box, I attest under penalty of perjury that I received a refund, chargeback, or reimbursement for **$ ⬚ ⬚ ⬚ ⬚ . ⬚ ⬚** related to the products I purchased from an Apex Entity.

**OR**

☐ By checking this box, I attest under penalty of perjury that I did not receive a refund, chargeback, or reimbursement of any kind.

(5) Review the following attestation and check the box if you agree.

☐ By checking this box, I attest under penalty of perjury that I (i) obtained the products described above, (ii) in the manner described above, (iii) was enrolled in a recurring billing program for the products obtained.

*If you completed this Section V, you cannot claim the charges imposed by any of the Apex Entities if you also completed Section IV for an Apex Documented Loss Payment.*

## VI.     TRIANGLE DOCUMENTED LOSS PAYMENT

If you <u>have documentation</u> to support your out-of-pocket losses for being enrolled in recurring billing for any of the Triangle Entities, you may claim your out-of-pocket losses to be eligible for a potential pro-rata cash payment. To proceed with this option, complete these steps:

I.   Identify the total amount of charges you paid to Triangle Entities;

Triangle Total Out-Of-Pocket Losses:      $ [ ] [ ] [ ] [ ] . [ ] [ ]

II.   Identify either (i) the total amount of refunds you received from any third parties, which may include but are not limited to: the FTC's Triangle refund program, an Triangle Entity, a bank, credit card issuer, or payment processor; <u>OR</u> (ii) if you did not receive any refunds, please mark $0 for the refund amount and check the attestation box below.

Triangle Total Refund Amount:      $ [ ] [ ] [ ] [ ] . [ ] [ ]

[ ]   By checking this box, I attest under penalty of perjury that I <u>did not receive</u> a refund of any money I paid to the Triangle Entities.

III.   Provide with this claim form the documentation to support your out-of-pocket losses. Reasonable documentation includes (but is not limited to): credit card statements, bank statements, and/or email receipts. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.

*If you completed this Section VI, you cannot claim the charges imposed by any of the Triangle Entities if you also completed Section VII for a Triangle Qualifying Payment.*

[Remainder of this Page Left Intentionally Blank]

## VII.    TRIANGLE QUALIFYING PAYMENT

If you <u>do not have documentation</u> to support your out-of-pocket losses for being enrolled in recurring billing for any of the Triangle Entities, you must provide additional information to be eligible to receive a distribution of up to $20. To proceed with this option, provide all of the information requested in this section.

(1) Describe or name the product(s) involved: _____

_____

_____

_____

_____

_____

_____

(2) Identify the date you purchased the product(s): _____

_____

_____

_____

_____

(3) Describe how you obtained the product(s): _____

_____

_____

_____

_____

_____

_____

(4) Did you receive a refund, chargeback, or reimbursement of any kind (including from an FTC refund programs for Triangle, a Triangle Entity, a bank, a credit card issuer, or a payment processor):

☐ By checking this box, I attest under penalty of perjury that I <u>received</u> a refund, chargeback, or reimbursement for $\boxed{\$\ \ \ \ \ \ \ .\ \ }$ related to the products I purchased from a Triangle Entity.

**OR**

☐ By checking this box, I attest under penalty of perjury that I <u>did not receive</u> a refund, chargeback, or reimbursement of any kind.

(5) Review the following attestation and check the box if you agree.

☐ By checking this box, I attest under penalty of perjury that I (i) obtained the products described above, (ii) in the manner described above, (iii) was enrolled in a recurring billing program for the products obtained.

*If you completed this Section VII, you cannot claim the charges imposed by any of the Triangle Entities if you also completed Section VI for an Apex Documented Loss Payment.*

## VIII.   CERTIFICATION

By submitting this Claim Form, I certify that I am eligible to make a claim in this settlement and that the information provided in this Claim Form and any attachments are true and correct. I declare under penalty of perjury that the foregoing is true and correct. I understand that this claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require supplementation of this Claim or additional information from me. I also understand that all claim payments are subject to the availability of settlement funds and may be reduced in part or in whole, depending on the type of claim, the determinations of the Settlement Administrator, and as otherwise ordered by the Court.

_____          Date:_____
Signature:

_____
Print Name or Authorized Representative (if applicable)

_____
Business Name (if applicable)

_____
Title (if applicable)

## IX.     PAYMENT METHOD SELECTION

Please select **one** of the following payment options, which will be used should you be eligible to receive a settlement payment:

☐ **PayPal** - Enter your PayPal email address:

☐ **Venmo** - Enter the mobile number associated with your Venmo account:

☐ **Zelle -** Enter the mobile number or email address associated with your Zelle account:

Mobile Number:

or Email Address:

☐ **Physical Check -** Payment will be mailed to the address provided above.

*McNamara v. Wells Fargo*

## Banner Advertisement

**Frame 1:** If you were enrolled in a recurring billing program for certain consumer products from 2009 to present,

**Frame 2:** you may be entitled to benefits from a Settlement.  Learn more.

Frame 1 (Visible 10 seconds):                    Frame 2 (Visible 8 seconds):

  

Frame 1 (Visible 10 seconds):                    Frame 2 (Visible 8 seconds):

  

*McNamara v. Wells Fargo*

# Social Media Text

<u>Facebook Newsfeed</u>
Headline (30 characters including spaces): **Consumer Products Settlement**
Description (125 characters including spaces): **If you were enrolled in a recurring billing program for certain consumer products, you may be entitled to benefits.**

<u>Facebook Right Hand Side</u>
Headline (30 characters including spaces): **Consumer Products Settlement**

<u>Instagram Newsfeed</u>
Description (85 characters including spaces): **Recurringly billed for certain consumer products? You may be entitled to benefits.**

<u>X Feed</u>
Description (280 characters including spaces): **If you were enrolled in a recurring billing program for certain consumer products from 2009 to present, you may be entitled to benefits from a Settlement. Find out how you are affected.**

<u>Reddit Feed</u>
Description (300 characters including spaces): **If you were enrolled in a recurring billing program for certain consumer products from 2009 to present, you may be entitled to benefits from a Settlement. Find out how you are affected.**

Exhibit A-4

FROM: EMAIL ADDRESS

TO: EMAIL ADDRESS

RE: FREE TRIAL, RECURRING BILLING SETTLEMENT – COURT ORDERED NOTICE OF CLASS ACTION
SETTLEMENT

<<Unique ID>>

United States District Court for the Southern District of California
*Thomas McNamara v. Wells Fargo & Co., et al.*

# If you were enrolled in a recurring billing program for certain consumer products from 2009 to present, you may be entitled to benefits from a Settlement.

**The consumer products included personal care products, electronic cigarettes, and dietary, health, or beauty supplements related to weight loss, muscle development, hair growth, skin care, sexual performance, and cognitive abilities.**

*A Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

**You can file your Claim Form here.**

A $33 million global settlement has been reached in a pair of consolidated lawsuits against Wells Fargo & Company and Wells Fargo Bank, N.A. (together, "Defendants"), including a class action filed on behalf of consumers by various individuals and another lawsuit filed by a court-appointed receiver. These lawsuits allege that Defendants assisted the "Apex Entities," "Triangle Entities," and "Tarr Entities" (which misled consumers into monthly subscriptions and products), by opening bank accounts for dozens of companies and transferring millions of dollars into their third-party bank accounts. Defendants deny all of the claims in the lawsuits and deny any wrongdoing or liability.

<u>**Why is There a Settlement?**</u>

Plaintiffs and Defendants do not agree about the claims or allegations made in this lawsuit. The lawsuit has not gone to trial, and the Court has not decided whether Plaintiffs' claims have merit, and has not decided whether Plaintiffs or Defendants are right, or what, if any damages might be awarded if Plaintiffs are right. Plaintiffs and Defendants have agreed to a settlement, subject to the Court's approval, to avoid the uncertainty, burden, and expense of further protracted litigation.

The purpose of this Notice is to inform you of the class action and the settlement so you may decide whether to file a Claim Form, opt-out (exclude yourself), object, or do nothing.

**Am I a Class Member?**

Records show you are a potential member of the Class, defined as: all persons who were enrolled in recurring billing by any of the Tarr Entities, Triangle Entities, or Apex Entities from 2009 to

present. A list of the Tarr Entities, Triangle Entities, Apex Entities and the products sold can be found here.

**How Do I Participate in the Settlement?**

Class Members who previously received a payment from the Federal Trade Commission's ("FTC") refund program in connection with the FTC's prior lawsuits against the Triangle or Apex Entities do **not** need to submit a Claim Form to be eligible to receive Settlement benefits. You are eligible to receive an additional payment, which may be provided to you through the FTC's existing refund programs in their prior cases against Apex and Triangle.

Class Members who (i) did **not** receive a payment from the FTC refund programs in connection with the FTC's prior lawsuits against the Triangle or Apex Entities, and/or (ii) were enrolled in recurring billing with a Tarr Entity, **must** submit a timely and valid Claim Form to be eligible to receive Settlement benefits.

**What Does the Settlement Provide?**

If the Settlement is approved by the Court, and you do not exclude yourself from the Class, you may be eligible for the following Settlement benefits.

> **With Documentation:** If you were enrolled in recurring billing for any of the identified entities, you must submit a timely and valid Claim Form with documentation supporting your out-of-pocket losses to be eligible for a potential pro rata (a legal term meaning proportional share) cash payment based on your documented loss.

> **Without Documentation:** If you were enrolled in recurring billing for any of the identified entities, but do not have any supporting documentation, you must submit a timely and valid Claim Form, certified under penalty of perjury, to be eligible to receive a flat cash payment of up to $20. Your cash payment may be subject to a pro rata reduction depending on the number of claims received.

You must submit your Claim Form online here or by mail postmarked by **MONTH DD, 20YY**.

The Settlement Administrator will implement anti-fraud measures to validate claims. The Settlement Administrator will reject claims if they, for example: (i) contain significant indicators of fraud, (ii) are untimely, or (iii) are incomplete (Class members will have an opportunity to provide complete information), to ensure the integrity of the Claims Process.

**What Are My Other Options?**

> (1) **Request to Exclude Yourself** - If you do not want to be legally bound by the Settlement, you must submit a request to exclude yourself from the Class **postmarked** by **MONTH DD, 20YY**. If you do not opt-out, you will give up the right to sue and will release the Defendants and the Releasees from the legal claims in this lawsuit. The Long Form Notice on the Settlement Website explains how to exclude yourself.

> (2) **Object to the Settlement -** If you do not opt-out, you may object to the Settlement, Class Counsel's attorneys' fees and Litigation Expenses, and Service Payments by **MONTH DD, 20YY**. The Long Form Notice on the Settlement Website explains how to object.

> (3) **Do Nothing** - If you do nothing and (i) you did not receive a payment from the FTC in connection with Triangle or Apex, or (ii) you were enrolled in recurring billing with a Tarr Entity, you will get no Settlement benefits, and you will be bound by the Settlement and

any judgments and orders. If you do nothing and you previously received a payment from the FTC in connection with the FTC's prior lawsuits against the Triangle or Apex Entities, you are eligible to receive Settlement benefits and you will be bound by the Settlement and any judgments and orders.

**Who Represents Me?**

The Court has appointed lawyers from Glancy Prongay & Murray LLP to serve as Class Counsel. They will request to be paid legal fees and expenses in pursuing these lawsuits. You may hire your own lawyer at your expense if you so choose. You or your lawyer may attend and ask to appear at the hearing if you object, but you are not required to do so.

**What Happens Next?**

The Court will hold a Final Approval Hearing on **MONTH DD, 20YY**, at _____, at Carter-Keep Courthouse, 333 W. Broadway, Courtroom 14A, San Diego, CA 92101. At that hearing, the Court will hear any objections concerning the fairness of the Settlement and decide whether to approve Class Counsel's requested attorneys' fees and expenses, and the requested service awards to the Class Representatives. The date of the hearing may change without further notice.

**This Notice is a summary.** Learn more about the Settlement here, or by calling toll free 1-XXX-XXX-XXXX.

1

**EXHIBIT B**

2

3

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

4

5

6

7

8

THOMAS W. MCNAMARA, as the Court-Appointed Receiver for Triangle Media Corporation, Apex Capital Group, LLC; and their successors, assigns, affiliates, and subsidiaries,

Plaintiff,

v.

9

10

WELLS FARGO & COMPANY, a corporation, WELLS FARGO BANK, N.A., a national banking association,

11

Defendants.

12

13

14

15

16

17

JOHN MCCRANER, SHARON STIANSEN, JANET POLLARD, MICHAEL DARLINGTON, SUSAN R. LANDREAU, JOHN N. TUFFIELD, individually and on behalf of all similarly situated,

18

Plaintiffs,

v.

19

20

WELLS FARGO & COMPANY, a corporation, WELLS FARGO BANK, N.A., a national banking association,

21

Defendants.

22

23

24

25

26

27

28

Lead Case No. 3:21-cv-1245-TWR-DDL [CONSOLIDATED WITH CASE NO. 3:21-CV-1246-TWR-DDL]

**FINAL JUDGMENT AND ORDER APPROVING CLASS ACTION SETTLEMENT AND DISMISSAL WITH PREJUDICE**

WHEREAS, this class action, *McCraner et al. v. Wells Fargo & Company, et al.*, Case No. 3:21-cv-1246-TWR-DDL (the "McCraner Action" or "Class Action"), is pending before this Court and consolidated under *McNamara v. Wells Fargo & Company et al.*, Lead Case No. 3:21-cv-1245-TWR-DDL (the "McNamara Action") (collectively, the "Action");

WHEREAS, (a) plaintiffs John McCraner, Janet Pollard, Sharon Stiansen, Michael Darlington, Susan R. Landreau, and John Tuffield (collectively "Class Plaintiffs"), on behalf of themselves and the Class (defined below), and (b) defendants Wells Fargo & Company and Wells Fargo Bank, N.A. ("Defendants" or "Wells Fargo," and together with Class Plaintiffs, the "Parties") have entered into a Stipulation and Agreement of Settlement dated June 25, 2025 (the "Class Agreement"), that provides for a complete dismissal with prejudice of the claims asserted against Defendants in the McCraner Action on the terms and conditions set forth in the Class Agreement, subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Class Agreement;

WHEREAS, by Order dated _____ __, 2025 (the "Preliminary Approval Order"), this Court: (a) preliminarily approved the Settlement; (b) certified the Class solely for purposes of effectuating the Settlement; (c) ordered that notice of the proposed Settlement be provided to potential Class Members; (d) provided Class Members with the opportunity either to exclude themselves from the Class or to object to the proposed Settlement; and (e) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Class;

WHEREAS, on _____, Class Plaintiffs filed their motion for final approval of the Settlement.

WHEREAS, the Court conducted a hearing on _____ __, 2025 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and

1

1 | conditions of the Settlement are fair, reasonable, and adequate to the Class, and should
2 | therefore be approved; and (b) whether a judgment should be entered dismissing the
3 | McCraner Action with prejudice as against Defendants; and

4 |       WHEREAS, the Court has read and considered: (a) Class Plaintiffs' motion for
5 | final approval of the Settlement; (b) the papers filed and arguments made in
6 | connection with Class Plaintiffs' motion for final approval of the Settlement, and (c)
7 | the Class Agreement and the exhibits attached thereto;

8 |       IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

9 |     1.    **<u>Jurisdiction</u>** – The Court has jurisdiction over the subject matter of the
10 | McCraner Action, and all matters relating to the Settlement, as well as personal
11 | jurisdiction over all of the Parties and each of the Class Members.

12 |     2.    **<u>Incorporation of Settlement Documents</u>** – This Judgment incorporates
13 | and makes a part hereof documents filed with the Court on _____, 2025,
14 | including but not limited to: (a) the Class Agreement; (b) the proposed order on
15 | preliminary approval, (c) the Long-Form Notice, (d) the Claim Form, (e) the
16 | Publication Notice, (f) the Short-Form Notice, and (g) the proposed Final Judgment
17 | and Order Approving Class Action Settlement and Dismissal with Prejudice.

18 |     3.    **No Merits Determination**.  By entering this Judgment, the Court does
19 | not make any determination as to the merits of this case.

20 |     4.    **<u>Class Certification for Settlement Purposes</u>** – The Court hereby
21 | affirms its prior determinations in the Preliminary Approval Order certifying, for the
22 | purposes of the Settlement only, the McCraner Action as a class action pursuant to
23 | Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the
24 | Class consisting of all persons who were enrolled in recurring billing by any of the
25 | Tarr Entities, the Triangle Entities, or the Apex Entities from 2009 to present (the
26 | "Class Period").  Excluded from the Class are (i) Defendants, (ii) present and former
27 | officers and directors of Wells Fargo. [Also excluded from the Class are the  persons
28 | or entities listed on Exhibit 1 hereto, which is a complete list of all persons who, and

entities which, have timely and validly requested exclusion from the Class, and accordingly, such persons or entities shall neither share in, nor be bound by, this Judgment.]  This will become the final order of the Court.

5.    **Designation of Class Representatives and Class Counsel** – Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby affirms its prior determinations in the Preliminary Approval Order certifying Class Plaintiffs as Class Representatives for the Class and appointing Glancy Prongay & Murray LLP as Class Counsel for the Class.  Class Plaintiffs and Class Counsel have fairly and adequately represented the Class in litigating the McCraner Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

6.    **Notice** – The Court finds that the dissemination of the Notice and the publication of the Publication Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of the McCraner Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, Class Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses, and Class Representatives' request for Service Awards; (v) their right to exclude themselves from the Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable law and rules.

3

7.    **Class Action Fairness Act (CAFA) Notice** – The Settlement Administrator has prepared the CAFA Notice and it has been made in conformity with 28 U.S.C. §1715.  The Court finds that Wells Fargo has provided notification through the Settlement Administrator to all appropriate federal and state officials regarding the Settlement as required by 28 U.S.C. § 1715.

8.    **Final Settlement Approval and Dismissal With Prejudice of Claims** – Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Class Agreement in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted against Defendants in the McCraner Action), and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Class.  The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Class Agreement.

9.    The McCraner Action and all claims asserted against Defendants in the McCraner Action by Class Plaintiffs and the other Class Members are hereby dismissed with prejudice.  The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Class Agreement.

10.    **Binding Effect** – The terms of the Class Agreement and of this Judgment shall be forever binding on and have res judicata and preclusive effect on Defendants, Class Plaintiffs, and all other Class Members (regardless of whether or not any individual Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), including their respective successors and assigns, in all pending and future lawsuits or other proceedings encompassed by the Released Claims.  [The persons and entities listed on Exhibit 1 hereto are excluded from the Class pursuant to request and are not bound by the terms of the Class Agreement or this Judgment.]

4

11.    **Releases and Permanent Injunction** – The Releases set forth in paragraphs 5 to 9 of the Class Agreement, together with the definitions contained in paragraph 1 of the Class Agreement relating thereto, are expressly incorporated herein in all respects.  The Releases are effective as of the Effective Date.  Accordingly, this Court orders that:

a.    Without further action by anyone, and subject to paragraph 17 below, upon the Effective Date of the Settlement, (i) Class Plaintiffs and all other Class Members (whether or not such Class Members execute and deliver the Proof of Claim or share in the Net Settlement Fund), (ii) each and every one of their former, present, or future agents, predecessors, successors, heirs, legatees, executors, administrators, insurers, assigns, trustees, spouses, and domestic partners in their capacities as such, and (iii) any other person or entity legally entitled to bring Class Released Claims on behalf of any Class Member, in their capacity as such, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Class Released Claim against Wells Fargo and the other Wells Fargo Releasees, and shall forever be enjoined from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction for any or all of the Class Released Claims against any of the Wells Fargo Releasees.  This Release shall not apply to any of the Excluded Claims (as that term is defined in paragraph 1([_]) of the Class Agreement).

b.    Without further action by anyone, and subject to paragraph 18 below, upon the Effective Date of the Settlement, Wells Fargo, on behalf of themselves, and each of their past, present, or future parents, holding companies, subsidiaries, affiliates, vendors, agents, successors, assignors, assignees, and/or assigns and their respective subsidiaries, affiliates, vendors, agents, successors, assignors, assignees, and/or assigns, and each of their respective present, former, or future officers, directors, shareholders, employees, representatives, consultants,

5

accountants, and attorneys in their capacities as such, and any other person or entity legally entitled to bring Wells Fargo Released Claims on behalf of any Defendant, in their capacity as such, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Wells Fargo Released Claim against Class Plaintiffs and the other Class Releasees, and shall forever be enjoined from prosecuting any or all of the Wells Fargo Released Claims against any of the Class Releasees. For the avoidance of doubt, any claims, causes of action, or other past, current, or future obligation or contracts between the Class Releasees and Wells Fargo that are not related to the claims in this case are excluded from Wells Fargo Released Claims ("Excluded Claims"). This includes any separate and continuing contractual or equitable obligations that may currently exist between or among the Class Releasees and Wells Fargo, including but not limited to, a Claimant's bank account, mortgage, automobile loan or personal loan that any Class Releasee has with Wells Fargo. Nothing in the Class Agreement shall be deemed or construed as a modification or release of or from any accounts, agreements, debts, loans, promissory notes, mortgages, security agreements, contracts, liabilities, or obligations Claimants now have or may have in the future (or any one of them, or any combination of them) that are not specifically and expressly released. [This Release shall not apply to any person or entity listed on Exhibit 1 hereto.]

12.     Notwithstanding paragraphs 11(a) – (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Class Agreement or this Judgment.

13.     **Rule 11 Findings** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the McCraner Action.

14.    **No Admissions** – Neither this Judgment, the Class Agreement (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Class Agreement, nor any proceedings taken pursuant to or in connection with Class Agreement, and/or approval of the Settlement (including any arguments proffered in connection therewith):

a.    shall be offered against any of the Wells Fargo Releasees as evidence of, or construed as, or deemed to be evidence of, any presumption, concession, or admission by any of the Wells Fargo Releasees with respect to the truth of any fact alleged by Class Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this McCraner Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Wells Fargo Releasees or in any way referred to for any other reason as against any of the Wells Fargo Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Class Agreement;

b.    shall be offered against any of the Class Releasees, as evidence of, or construed as, or deemed to be evidence of, any presumption, concession or admission by any of the Class Releasees that any of their claims are without merit, that any of the Wells Fargo Releasees had meritorious defenses, or that damages recoverable under the Class Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Class Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Class Agreement; or

7

c.    shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; provided, however, that the Parties and the Releasees and their respective counsel may refer to this Judgment and the Class Agreement to effectuate the protections from liability granted hereunder and thereunder, or otherwise to enforce the terms of the Settlement.

15.    **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses by Class Counsel in the McCraner Action that will be paid from the Settlement Fund; and (d) the Class Plaintiffs and Class Members for all matters relating to the McCraner Action.

16.    Separate orders shall be entered regarding Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and Class Plaintiffs' request for Service Awards.  Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

17.    **Modification of the Agreement of Settlement** – Without further approval from the Court, Class Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Class Agreement or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Class Members in connection with the Settlement.  Without further order of the Court, Class Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

8

18.    **Termination of Settlement** – If the Settlement is terminated as provided in the Class Agreement or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Class Agreement, and this Judgment shall be without prejudice to the rights of Class Plaintiffs, the other Class Members and Defendants, and the Parties shall revert to their respective positions in the McCraner Action as of October 30, 2024, as provided in the Class Agreement.

19.    **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

SO ORDERED this _____ day of _____, 2025.

_____
Todd W. Robinson
United States District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# __Exhibit 1__

**[List of Persons Excluded from the Class Pursuant to Request]**